9

Nov-02-2009  02:50pm  From-Winstead PC                    +                T-474  P.002/020  F-441

## CAUSE NO. 2006-76157

| | | |
|---|---|---|
| **UNIVERSITY OF HOUSTON SYSTEM** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| | § | |
| **V.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **SWINERTON BUILDERS,** | § | |
| **A CALIFORNIA CORPORATION and** | § | |
| **HELLMUTH, OBATA + KASSABAUM, L.P.** | § | **334TH JUDICIAL DISTRICT** |

## SECOND AMENDED PETITION

Plaintiff University of Houston System (the "University") files its Second Amended Petition complaining of Defendants Swinerton Builders, a California Corporation ("Swinerton") and Hellmuth, Obata + Kassabaum, L.P. ("HOK").

### I.
### DISCOVERY

1.      Discovery is being conducted under Level 2 in accordance with Rule 190.3 of the Texas Rules of Civil Procedure.

### II.
### PARTIES

2.      Plaintiff University of Houston System is a coeducational institution of higher education created under Chapter 111 of the Texas Education Code and entitled to the benefits of all general laws of Texas applicable to state institutions of higher education.

3.      Defendant Swinerton is a California Corporation with its principal office at 260 Townsend Street, Fourth Floor, San Francisco, California 94107.  Swinerton has appeared in this lawsuit and may be served though its attorney of record.

4.      Defendant HOK is a Texas limited partnership with its principal office at 211 North Broadway, Suite 700, St. Louis, Missouri 63012.  HOK has appeared in this lawsuit and may be served through its attorney of record.

## III.
## JURISDICTION AND VENUE

5.      All parties to this litigation are citizens of the State of Texas or are otherwise qualified to do business and doing business in the State of Texas. The amount in controversy exceeds the minimum jurisdictional limits of this Court. Accordingly, this Court has jurisdiction of all parties to this litigation.

6.      Venue is proper in this Court under TEX. CIV. PRAC. & REM. CODE ANN. § 15.002, because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County, Texas.

## IV.
## FACTS

7.      This is a construction dispute relating to design and construction defects at the University's project known as the University of Houston - Clear Lake Student Services/Classroom Building located at 2700 Bay Area Boulevard, Houston, Texas 77058 (the "Project").

## The University contracts with HOK and Swinerton to design and build a $28 million building.

8.      The University entered into a "turn-key" Project Agreement with HOK pursuant to which HOK, as the Project architect, was to provide complete professional services to the University for the design and delivery of a complete Project (the "HOK Contract").

9.      The University then entered into a Construction Manager-At-Risk Agreement with Swinerton under which Swinerton, as the Project construction manager, agreed to provide the University pre-construction phase services and construction phase services for the construction of the Project (the "Swinerton Contract"). Swinerton acknowledged that the University entered the Swinerton Contract in reliance upon Swinerton's special and unique

SECOND AMENDED PETITION                                              Page 2

abilities, and Swinerton expressly accepted this relationship of trust and confidence. The pre-construction phase services Swinerton agreed to provide the University included, among other things, general coordination of the Project and coordination of design and construction contract documents for the Project. Under their contracts, HOK and Swinerton were obligated to work together to ensure the Project's success.

**The building envelope leaks.**

10.     The Project has significant design and construction problems and therefore does not function as intended or as agreed to by Swinerton and HOK. The most significant problem involves the metal panel cladding and the integration of dissimilar building materials that Defendants improperly designed and constructed, causing significant and continuous water infiltration into the building, which has damaged other parts of the building. During most rain events the building leaks. Cleaning crews have to be dispatched throughout the building to mop up rain water and try to block the infiltrating water with towels. Also, and not surprisingly, given that HOK and Swinerton have not properly repaired the leaks as promised for several years, the leaks have caused unacceptable levels of mold to develop that will require remediation once the source of the leaks is finally addressed. In addition to the significant and pervasive problems with the building envelope, the Project has several other problems that are discussed below.

**Swinerton tried to hid its own expert's report condemning the leaky building.**

11.     Despite repeated demands by the University that the defects and deficiencies be corrected in accordance with the Defendants' contractual responsibilities, the defects and deficiencies have not been corrected to date. Swinerton and HOK had full knowledge of the building's problems for years but refused to adequately fix the problems. Swinerton purported to

"fix" some issues by drilling holes through the metal panels to act as make-shift weep holes and by caulking the exterior of the building. Swinerton's attempted fix proved ineffective as the water infiltration problems at the Project persisted, and persist to this day. Initially, Swinerton agreed on or about April 29, 2005, to hire an independent inspector at Swinerton's expense to assess the building's water infiltration problems. Months after stating its intention to hire an outside consultant, Swinerton hired Wiss, Janney, Elstner Associates, Inc. to inspect the Project. Wiss Janney later began its investigation but did not have an initial report until November 2005, seven months after Swinerton had acknowledged the problems and pledged to remedy the building's leak problems. After Wiss Janney conducted its inspection, the parties were to meet to discuss the problems and how to fix them.

12.     Despite the University's requests for the Wiss Janney report, Swinerton delayed giving a copy of the report to the University. When the University finally received the report, it became clear why Swinerton tried to hide it. Wiss Janney, Swinerton's own independent consultant, confirmed problems with the design and construction of the building envelope, among other things.

**The University was forced to hire its own experts.**

13.     After receiving the Wiss Janney report and observing the lackluster repairs attempted by Swinerton, the University hired two separate independent consultants, both of whom HOK confirmed were competent, qualified professionals before they were hired. Both consultants concluded the problems with the building envelope are systemic and require comprehensive repairs. Among other things, the experts concluded the metal panel system needs to be removed, re-designed and replaced. These expert reports have been provided to Swinerton and HOK.

### Swinerton and HOK refuse to fix the leaky building.

14. The University and its independent consultants met with HOK, Swinerton and its consultants, and several of Swinerton's subcontractors at the Project on August 11, 2006, at Swinerton's request. At the meeting, HOK, Swinerton, Swinerton's consultant and Swinerton's subcontractors were given an opportunity to fully question University personnel and the University's independent consultants regarding problems with the building, testing methods and results, and conclusions identified in the consultants' reports. The parties inspected the Project and agreed to submit proposals by the end of August for repair of the Project's problems. For more than a year after that meeting, neither Swinerton nor HOK provided the University with a proposal to eliminate the water intrusion. Not until March 2008, did HOK and Swinerton send the University a conceptual plan with potential ideas to possibly fix the leaky building. After so many years, the University came to the inevitable conclusion that, having been abandoned by its contractor and architect to begin with, the University could not rely on them now to actually fix the Project so that it functioned as originally intended. Accordingly, the University at its own expense, prepared the plans needed to actually repair the Project.

### The Project suffers from many other defects in design and workmanship.

15. The security system does not work properly and does not conform with the contract specifications.

16. The building has several ADA and/or TAS compliance issues. HOK has admitted that parts of its design are not code compliant as required by its contract.

17. The handrail system on the walkways was improperly designed and improperly built. An inspection revealed that part of the handrail system had only been secured together by

staples. The University, after Swinerton and HOK acknowledged the problem but failed to follow through with a repair, paid to have the handrail tested and repaired.

18.    The concrete slab that supports the emergency generator is shifting and settling. Apparently Swinerton failed to properly compact the soil under the slab.

19.    Proper drainage was not provided at the sidewalks causing flooding problems.

20.    Utility lines and drains that traverse a utility tunnel under the new building are deflecting, indicating potential serious problems.

21.    The ten-foot doors and frames on the second floor of the Bayou Building, Section 2500, were incorrectly machined. No available escutcheons can reasonably cover the holes, and door replacement is the only option. Further, the door frames and hinges are apparently inadequate to support the weight of the doors and many doors do not function properly as a result.

22.    The water feature was not properly waterproofed. The epoxy coating bubbled up and separated from the concrete. The University ultimately had to tile the fountain after failed attempts to repair the epoxy. Also, the water feature has previously been inoperable because the vault with the internal electrical controls and pumps flooded.

23.    The ramp at the back of the lecture hall has inadequate drainage. During substantial rainstorms, water has backed up and floods the lecture hall through the back door causing sections of the flooring to lift from the slab and float away.

24.    The University has also recently discovered significant problems with the elevators at the Project caused by the improper installation of the elevators. The elevator jack assembly and piston were installed incorrectly, causing severe oil drainage and damage to the jack assembly and piston. Further, the secondary containment for the elevator was not installed

in accordance with the contract specifications and was not adequately backfilled.  In addition, the jack assembly was not secured properly and the shaft assembly was out of plumb.  Because of these problems the University had to replace the jack assembly and piston.  Due to the failure of this elevator and the discovery of the improperly backfilled assembly, the University will likely need to investigate the condition of the second elevator and potentially repair it.  Thus, the University has incurred and may be forced to incur additional expenses.

25.    There are also several installation issues with the roof at the Project.  These issues include, without limitation, lack of flashing, improper attachment of lightning rods, sleepers, and cables to the roof, improper patches and lapping of the roofing membrane, inadequate drainage that has led to ponding on the roof, the improper use of a modified composite metal panel instead of properly fabricated sheet metal coping, and poor installation of scuppers.  These defects must be corrected to achieve a roof that functions as intended to provide a long-term service life with normal maintenance, and that complies with applicable building codes and acceptable design standards.

## V.
## BREACH OF CONTRACT/BREACH OF WARRANTY

26.    The Swinerton Contract and the HOK Contract each contained provisions through which Swinerton and HOK warranted and guaranteed that their work would be performed in a good and workmanlike manner in accordance with generally accepted industry standards for contractors and design professionals, respectively, free from defects and deficiencies, fit, safe and sufficient for the purpose intended and in strict compliance with the plans and specifications.  The Swinerton contract contains many other provisions aimed at ensuring the success of the Project, including without limitation, requirements that Swinerton notify the owner of known or perceived problems with the construction documents, prepare and provide the University as-built

Nov-02-2009  02:52pm   From-Winstead PC                        +                    T-474   P.009/020   F-441

documents reflecting the actual construction of the Project, monitor and coordinate the work of the subcontractors, and ensure work performed and materials submitted comply with the contract documents.  Likewise, the HOK contract contains many provisions to ensure a successful Project, including without limitation, requirements that HOK provide sufficiently detailed drawings for the construction of a functioning building, make recommendations to repair problems, employ any necessary consultants, staff the project with adequately trained employees, provide plans that comply with all applicable building codes, conduct and document field inspections, and notify the University of known problems.  As set forth above, and as will be shown at trial, Swinerton and HOK breached their contractual agreements with the University.

27.     HOK and Swinerton's improper design and construction of the Project and failure to remedy known problems constitute material breaches of their respective contracts, as a result of which the University has been damaged.  The University is entitled to recover from Swinerton and HOK the cost and expense associated with remedying the defects and deficiencies with the Project, and all other damages to which the University is entitled, whether contractually or otherwise.

28.     The contracts as well as Chapter 38 of the Texas Civil Practice and Remedies Code provide for the recovery of attorneys' fees, costs of court, and expenses of litigation incurred by the University.  It was necessary for the University to retain the undersigned counsel to protect its interests herein and to bring this action to recover the damages arising from Defendants' breach of their contractual obligations.  Accordingly, the University is entitled to recover its reasonable attorneys' fees, costs of court, and expenses of litigation incurred and to be incurred in this action, including any appeal hereof.

## VI.
## NEGLIGENCE

29.     Swinerton and HOK each owed the University a duty to exercise the degree of care, skill and judgment normally exercised by other contractors and design professionals in this area engaged in the same scope of work.  Swinerton and HOK breached this standard of care and committed negligence in a number of ways, including their failure to create a leak-free building. Attached to this Second Amended Petition as **Exhibit A** is a certificate of merit, sworn to by a licensed, professional architect and outlining instances of HOK's negligence as required by Texas Civil Practice and Remedies Code § 150.002.  As a result of Swinerton's and HOK's negligence, each of them is jointly liable to the University for damages.  These damages are the direct and proximate consequence of such negligence.

## VII.
## BREACH OF FIDUCIARY DUTY

30.     Swinerton contractually agreed to a relationship of trust and confidence expressly based on the University's reliance upon Swinerton's expertise.  Swinerton breached its fiduciary duty in order to further its own interests and also by failing to disclose material information to the University.  Swinerton's breach of fiduciary duty has damaged the University, and the University seeks to recover such damages.

## PRAYER

The University prays that judgment be entered against Defendants Swinerton and HOK and in favor of the University for actual damages as determined by the trier of fact, together with prejudgment and post-judgment interest, costs and attorneys' fees to the fullest extent allowed by law, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

**WINSTEAD PC**
401 Congress Avenue,
Suite 2100
Austin, Texas 78701
(512) 370-2800 (Telephone)
(512) 370-2850 (Fax)

By: _____
     G. Stewart Whitehead      SBN 00789725
     Elliot Clark              SBN 24012428

**ATTORNEYS FOR PLAINTIFF**
**UNIVERSITY OF HOUSTON SYSTEM**

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served pursuant to the Texas Rules of Civil Procedure on the 2nd day of November, 2009 upon the following counsel of record:

| | |
|---|---|
| *Counsel for Defendant*<br>*Swinerton Builders, a California*<br>*Corporation*:<br>Gregory Cokinos<br>Charles W. Getman<br>Cokinos, Bosien & Young<br>1221 Lamar, 16th Floor<br>Houston, TX 77010<br><br>Lawrence J. West<br>T. Christopher Trent<br>Johnson, Spalding, Doyle, West & Trent, LLP<br>919 Milam, Suite 1700<br>Houston, Texas 77002 | *Counsel for Third Party Defendant*<br>*Mid-Continental Restoration, Inc.*:<br>Denise L. Nestel<br>Porter & Hedges, L.L.P.<br>1000 Main Street, 36th Floor<br>Houston, TX 77002-6336 |
| *Counsel for Defendant*<br>*Hellmuth, Obata + Kassabaum, L.P.*:<br>Matthew J. Mussalli<br>Law Office of Matthew J. Mussalli<br>9595 Six Pines Drive, Ste. 8210<br>The Woodlands, TX 77380 | *Counsel for NOW Specialties, Inc.*:<br>Curtis Hubbard<br>Stewart Shurtleff<br>Griffith Nixon Davison, P.C.<br>Two Lincoln Centre<br>5420 LBJ Freeway, Suite 900<br>Dallas, TX 75240 |

| | |
|---|---|
| ***Counsel for B&B Glass, Inc.:***<br>Gregory W. Marcum<br>Kroger Myers Frisby<br>3100 Weslayan, Ste. 300<br>Houston, TX  77027 | ***Counsel for Pyramid Waterproofing, Inc.***<br>Michael B. Gerstle<br>Gerstle, Minissale & Snelson, L.L.P.<br>5005 Greenville Avenue<br>Suite 200<br>Dallas, TX 75206 |
| ***Counsel for The Ken Gurry Corporation:***<br>David P. Benjamin<br>Dan Vana<br>O'Connell & Benjamin, LLP<br>13750 San Pedro, Suite 500<br>San Antonio, TX 78232-4375 | ***Counsel for Electronic Technologies Corp:***<br>Robert D. Brown<br>Donato, Minx & Brown, P.C.<br>3200 Southwest Freeway, Ste. 2300<br>Houston, TX  77027 |
| ***Counsel for Excel Plumbing, Inc.***<br>Percy L. "Wayne" Isgitt<br>C. Zan Turcotte<br>Isgitt, Dees & Turcotte<br>800 Sawyer Street<br>Houston, TX  77007 | |

Elliot Clark

Nov-02-2009 03:22pm From-Winstead PC 5124574265 T-483 P.013/020 F-441

CAUSE NO. _____

| | | |
|---|---|---|
| UNIVERSITY OF HOUSTON SYSTEM | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| V. | § | HARRIS COUNTY, TEXAS |
| | § | |
| SWINERTON BUILDERS, A | § | |
| CALIFORNIA CORPORATION and | § | |
| HELLMUTH, OBATA + KASSABAUM, L.P. | § | \_\_\_\_\_ JUDICIAL DISTRICT |

### AFFIDAVIT OF BRUCE R. WEIR, AIA

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Bruce R. Weir, who being known to me, and who, being duly sworn upon his oath, stated as follows:

1.    My name is Bruce R. Weir. I am over the age of eighteen (18) years of age and am fully competent in all respects to make this Affidavit. I have personal knowledge of the facts and matters contained herein, and they are all true and correct based upon my personal knowledge, information and belief.

2.    I am and have been a registered architect in the State of Texas since 1990 (License No. 13384). My education and experience are correctly listed on my curriculum vitae, a copy of which is attached hereto as <u>Exhibit 1</u>. I am currently a Principal Consultant with McGinty Architectural Consultants, L.L.P. I am engaged in the practice of architecture. I am providing this Affidavit in connection with the above-entitled litigation as it concerns Hellmuth, Obata + Kassabaum, L.P. ("HOK") and the University of Houston - Clear Lake Student Services/Classroom Building located at 2700 Bay Area Boulevard, Houston, Texas 77058 (the "Project").

3.    In connection with this Affidavit, I have reviewed HOK's drawings for the Project. I have also examined shop drawings, correspondence relating to the Project, and HOK's

Page 1


EXHIBIT A

contract with the University. In addition, I personally observed and inspected the Project and have had the opportunity to discuss the Project with representatives of the University of Houston-Clear Lake and the University of Houston System. In the event further information becomes available in the future through discovery or otherwise, I reserve the right to supplement or amend my opinion as stated in this affidavit.

4.      In my role as an architect, I am routinely called upon to examine architectural plans, project manuals, specifications, shop drawings, submittals, and building codes in order to prepare construction documents and/or to express an opinion as to the constructability of a project (or an element thereof).

5.      The UHCL Student Services/Classroom Building is a steel-framed, three-story structure. The exterior cladding of the building consists of a combination of pre-cast concrete panels, composite metal panels, curtain walls, and punched windows. The building was designed by HOK and constructed by Swinerton Builders.

6.      During construction of the Project, the building owner (The University of Houston System) reported water leaks at numerous locations throughout the building. As an experienced registered architect in the State of Texas, I am familiar with the customary and acceptable standard of care required of architects who prepare drawings and specifications for a contractor's use in constructing a project. I was retained by the University of Houston System to review HOK's work in connection with the design and construction of the Project.

7.      It is my professional opinion that the water infiltration problem results in part from HOK's poor design and oversight. Specifically, HOK failed to specify the flashing required to prevent water penetration in its illustrations detailing the connection of the composite metal panels and other exterior components to the aluminum frame window system. The details show the exposed building veneer components but omit the necessary flashing configurations that

should illustrate the proper integration of the materials required for preventing water penetration. In addition to the design omissions, HOK improperly approved the shop drawings lacking the necessary flashing configurations where relevant.  Finally, HOK's field observations failed to detect the problem.  In short, HOK's failure to include the necessary detail in the construction documents, to catch the flashing omissions in the submitted shop drawings, and to note the problem in its field observations constitutes negligence.  Other acts of negligence include, but are not limited to, portions of the design that do not conform to the Americans with Disabilities Act and the Texas Accessibility Standards.

Bruce R. Weir, AIA

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, on this 28 day of November, 2006.

Notary Public, State of Texas

My Commission Expires:

_____



MELODY STEPAN
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Expires 9-24-2009

# EXHIBIT 1

# McGinty

ARCHITECTURAL CONSULTANTS, L.L.P.

## BRUCE R. WEIR, AIA

Curriculum Vitae

## EDUCATION

| | |
|---|---|
| 1978 | Ross S. Sterling High School<br>Baytown, Texas |
| 1979-1984 | School of Architecture and Environmental Design<br>Texas A&M University |

## REGISTRATION

| | |
|---|---|
| 1990 | Registered Architect, State of Texas<br>Texas License No. 13384 |

## HONORS AND AWARDS

| | |
|---|---|
| 1987 | For the Firm:  AGC-Austin, Construction Award, Main Building Renovation, St. Edward's University |
| 1988 | For the Firm:  AGC-Austin, Outstanding Construction Award, SEMATECH – Austin, Texas |
| 1989 | For the Firm:  AGC-Austin, Outstanding Construction Award, East Campus, St. David's Hospital – Austin, TX |
| 1990 | For the Firm:  AGC-Austin, Construction Award, Motorola Building "G" , Austin, Texas |
| 1991 | For the Firm: Greater Austin Chamber of Commerce Professional Firm of the Year |
| 1992 | For the Firm: Heritage Society of Austin, Building Awards Restoration of Main Building & Sorin Hall, St. Edward's University, Austin, Texas |
| 1993 | For the Firm: Austin Chapter AIA:  Honorable Mention, Graphics Competition, CADD/3D Modeling Exhibit |
| 1993 | For the Firm:  AGC-Austin, Construction Award, ` Best Building of the Year, Applied Materials, Bldg. 32 |

| 1993 | For the Firm:  AGC-Austin, Construction Award, Motorola East Entry, Austin, Texas |
|---|---|
| 1993 | For the Firm:  AGC-Austin, Construction Award, Motorola ULSI Parking Garage, Austin, Texas |
| 1996 | For the Firm: IIDA Institutional, Honorable Mention, Design Award for St. Edward's University, Moody Hall |
| 1997 | For the Firm: Greater Austin Chamber of Commerce, Professional Firm of the Year Award. |
| 1997 | For the Firm:  Applied Materials Inc., Global Real Estate and Facilities "Supplier of the Year Award" |
| 1998 | For the Firm:  AGC-Austin, Construction Award, Southwest Texas State University, LBJ Student Center |
| 1998 | For the Firm:  AGC-Austin, Construction Award, Samsung Semiconductor Fab, Austin, Texas |
| 1999 | For the Firm:  ABC-Austin, Excellence in Construction Award, Motorola Parmer Lane, Austin, Texas |
| 2001 | For the Firm: Texas Masonry Council:  Golden Trowel Award, Motorola Parmer Lane, Austin, Texas |
| 2001 | For the Firm: Texas Masonry Council:  Golden Trowel Award, YMCA East Communities Branch, Austin, Texas |
| 2001 | For the Firm: Austin Chapter/AIA: Design Citation Award, 400 Bowie Street, Austin, Texas |
| 2002 | For the Firm:  AGC-Austin, Construction Award, Sam Houston State University, Lowman Student Center, Huntsville, Texas |
| 2002 | For the Firm:  AGC-Austin, Construction Award, Southwest Texas State University, Bobcat Stadium Additions, San Marcos, Texas |

## ACTIVITIES/ORGANIZATIONS

Member of the American Institute of Architects

Member of the Texas Society of Architects

Member of the Austin, Texas Chapter of the American Institute of Architects

Member of the International Code Council

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| 1978-1979 | Electrical Draftsman, Dashiel Corporation, Houston, Texas |
| Fall 1980 | Architectural draftsman and Intern working through the Cooperative Education Program at the Texas A&M University, School of Architecture and Environmental Design for Hatfield & Holcomb Architects, Dallas, TX |
| 1981-1983 | Architectural Intern, draftsman and designer for K-12 educational projects, commercial and institutional projects for Matthews, Callan and Associates, Bryan, Texas. |
| 1983-1984 | Associate with the firm of Matthews, Callan and Associates, Bryan, Texas performing as a job captain and architectural Intern, draftsman. Worked full-time while attending Architecture School at Texas A&M University to pay my way through college. |
| 1984-1987 | Graeber, Simmons & Cowan – Construction Contract administrator and intern architect providing construction phase services on 3M-Test and Measurement facility, Mendez Middle School-AISD, Covington Middle School-AISD, Brackenridge Hospital Parking Garage and a new Science Building for Southwest Texas State University, San Marcos, Texas. |
| 1987-1991 | Graeber, Simmons & Cowan – Associate and Manager of the Construction Contract Administration Department supervising/managing a staff of 8 construction administrators while performing construction administration on the 3M Austin Center (a 1.7million sf facility), and Applied Materials, Inc. Building 32 as well as other projects. |
| 1991-1995 | Graeber, Simmons & Cowan – Associate and Project Manager for design-build projects including Applied Materials Inc. Buildings 31, 33. Acted as Design-Build Project Director managing the design and construction of over 360,000 square feet of cleanroom/manufacturing and office space utilizing the fast-track approach to design and construction. Construction cost in excess of $45 million. |
| 1995-1998 | Graeber, Simmons & Cowan – Senior Associate and Vice President of the firm. Relocated to San Jose, California ("Silicon Valley") and opened and managed a branch office focusing on design-build/fast-track project deliveries for Applied Materials, Inc. at their corporate headquarters. Managed a staff of up to 23 employees while overseeing the design and implementation of over $220 million of |

construction projects. Personally responsible for the management of the office, negotiating fees and contracts with clients and consultants, organizing project teams and maintaining client relations.

1998-2001    Graeber, Simmons & Cowan – Vice President of the firm responsible for marketing and managing and implementing large projects including the renovation of the John H. Reagan State Legislative Office Building for the House of Representatives, State of Texas, project management and Owner's representative for the General Services Commission-State of Texas 310,000sf Robert E. Johnson Legislative Office Building, wherein I was commissioned to take over and resolve construction disputes and implement completion.

2001-2003    Graeber, Simmons & Cowan – Associate Principal of the firm responsible for corporate duties, marketing and managing large projects such as the Applied Materials, Inc. Building 34, Austin Community College – Health Careers Building and the design of the two new Homes for Aging Texas Veterans in El Paso and McAllen, Texas.

2003-present    Principal Consultant, providing forensic research, review and assessment of construction contracts, techniques, code compliance and construction technology.





**Insurance**

The Advantage of Partnership

RECEIVED

JAN 28 08
12:01P

Amerisure Mutual Insurance Company
Amerisure Insurance Company

January 24, 2008

James M. "Jamie" Parker, Jr.
McDowell & Parker, Ltd.
6104 Broadway
San Antonio, TX  78209

| Claim: | 1118646 |
|---|---|
| Policy: | CPP-2003071 |
| Insured: | NOW Specialties, Inc. |
| Plaintiff: | University of Houston System |
| Cause No.: | 2006-76157 |

Dear Mr. Parker:

This follows yesterday's conversation concerning this matter.  As you know, Amerisure has agreed to participate in the defense of Lyda Swinerton and to provide indemnity such as is provided by its general liability policy with NOW Speciaties, Inc.  In this regard, I request that you provide me with any reports that have been prepared which outline the case and its current status.  I also request that you provide me with copies of answered written discovery and any experts' reports that have been generated.

It is my understanding that a meeting of the principals is set for a date in early February and that a proposal will be finalized and submitted to the plaintiff.  I request that you keep me apprised of any developments in this regard.

Please include me on your correspondence list.  Electronic communication is preferred, but not mandatory.  Please contact me if there are any questions concerning this lawsuit.

Sincerely,

Dan DuVall
Field Claims Specialist
Amerisure Mutual Insurance Company
214-583-4443
dduvall@amerisure.com

# McDOWELL & PARKER, LTD.
### *Attorney at Law*

JAMES M. "JAMIE" PARKER, JR.
Board Certified / Civil Appellate Law
Texas Board of Legal Specialization
jparker@mcd-p.com

6104-C Broadway
San Antonio, Texas 78209

TELEPHONE :
(210) 805-8166
FAX :
(210) 805-8873

June 11, 2008

Mr. Gregory W. Marcum
KROGER MYERS FRISBY & HIRSCH          by Facsimile:  (713) 961-7953
3100 Weslayan #300
Houston, Texas 77207

Denise L Nestel
PORTER & HEDGES, L.L.P.               by Facsimile (713) 226-6212
1000 Main, 36th Floor
Houston, Texas 77002-6336

Steven D. Grossman
SHEINESS, SCOTT, GROSSMAN & COHN, L.L.P.
1001 McKinney
Suite 1400                           by Facsimile:  (713) 374-7049
Houston, Texas 77002-6323

Mr. Michael B. Gerstle
GERSTLE, MINISSALE & SNELSON, LLP     by Facsimile:  (214)363-9979
5005 Greenville Avenue, Suite 200
Dallas, Texas 75206

Mr. Robert D. Brown
DONATO, MINX & BROWN, P.C.            by Facsimile:  (713) 871-1138
3200 Southwest Freeway, Suite 2300
Houston, Texas 77027

C. Zan Turcotte
ISGITT & TURCOTTE                     by Facsimilie (713) 572-6585
800 Sawyer St.
Houston, Texas 77007

Stephen V. Zamprelli
CYPRESS INDUSTRIAL COATINGS           by Regular Mail
12802 Rolling Valley Dr.
Cypress, Texas 77429

Re:   Cause No.2006-76157, *University of Houston System v. Swinerton
Builders, et al*, in the 334th Judicial District, Harris County, Texas

Counsel,

Under §(A)(2)(a) of Attachment A to the subcontracts signed by each of your clients, Swinerton Builders, and its parents and affiliated companies, were to be named as additional insureds under various insurance policies covering the University of Houston project. Our preliminary review of each of the subcontracts and insurance documents appears to confirm that Swinerton was, in fact, named as an additional insured under the policies proffered by each your clients in order to fulfill their contractual duties under Attachment A. It is our understanding that Swinerton Builders previously put your clients directly on notice of its demand for defense and indemnity arising out of its status as an additional insured under each applicable policy. It is further our understanding that, to date, only NOW's carrier has responded to this demand and accepted the defense of the current litigation. To the extent necessary, we would hereby reiterate the demand by Swinerton Builders and its parents and affiliated companies that they be provided a defense and indemnity for the claims made in this case by the University of Houston. We would therefore appreciate it if you would forward this demand to your respective carriers, and we will await their prompt response.

In the meantime, if you have any questions, please do not hesitate to contact us.

Very truly yours,

James M. Parker, Jr.

cc:   Charles Getman

JMP/dts