



Acadia Insurance Company
Continental Western Insurance Company
Union Insurance Company
Union Standard Lloyds

December 31, 2009

*Via Certified Mail RRR*

Mr. Joshua W. Mermis
Johnson, Spalding, Doyle, West & Trent, L.L.P.
919 Milam, Ste. 1700
Houston, TX 77002

RE:   Insured:      Excel Plumbing, Inc.
      Claim No.:    10058862
      Lawsuit:      Cause No. 2006-76157; *University of Houston System v.*
                    *Swinerton Builders, et al.*; In the 334th JDC of Harris County, TX

Dear Mr. Mermis:

We are responding to notice of the referenced suit and your request that a defense and/or indemnity be provided to Swinerton Builders under a policy issued by Continental Western, either as an additional insured or pursuant to an indemnity agreement with the named insured, Excel Plumbing.  Swinerton seeks coverage by letter of September 15, 2009.  Your letter states that Swinerton first tendered its additional insured claim in 2006 and again in 2008 and early 2009, but we have no record of any earlier request.

We have reviewed the pleadings, policies, subcontract agreements, as well as discovery responses and expert reports made available to us.  In our assessment, there is no allegation or indication of damage during our policy period.  Further, the limitations to additional insured coverage would preclude coverage.  Accordingly, we must respectfully deny your request.  If the pleadings are amended or you have additional information, please provide it to us and we will reconsider our position, as appropriate.  Our reasoning and the policy provisions upon which we rely are set forth below.

P.O. Box 152180, Irving, TX 75015-2180
122 W. Carpenter Fwy Suite 350
Irving, TX 75039-2049
Fax (866) 256-8744

*Everything Counts, Everyone Matters*™

Mr. Joshua Mermis
December 31, 2009

The suit arises out of a project for the University of Houston System ("UH" or "University"), the Clear Lake Student Services Building in Clear Lake, Texas. Swinerton acted as the general contractor for the project. UH alleges the project has significant design and construction problems causing significant and continuous water infiltration into the building. We have reviewed the First Amended Petition, which we understand to be the last pleading. UH asserts its claims against Swinerton and against Hellmuth, Obata & Kassabaum, L.P. ("HOK"), the architect. UH alleges that it entered into a turn-key project with HOK in April 2002 for design and delivery of a complete project. In June 2002 UH entered into a Construction Manager-At-Risk Agreement with Swinerton under which Swinerton allegedly agreed to provide pre-construction phase services and construction phase services.

UH alleges the project has significant design and construction problems and does not function as intended or agreed. The most significant problem is allegedly the metal panel cladding which is improperly designed and constructed, causing significant and continuous water infiltration into the building and damage to other parts of the building.

In addition, UH alleges various other problems, including improper functioning of the HVAC system, improper functioning of the security system, ADA and TAS compliance issues, inadequate finish on the stained concrete floor, improper design and construction of the handrail system, shifting and settling of the concrete slab, lack of proper drainage at sidewalks, deflecting of utility lines and drains, incorrect machining of ten-foot doors and frames, improper waterproofing of the water feature, and inadequate drainage of the ramp at the back of the lecture hall.

UH alleges that Swinerton and HOK had knowledge of the problems for some time but failed to adequately fix them. Allegedly, Swinerton agreed on or about April 29, 2005, to hire an inspector to assess the water infiltration problems and hired Wiss, Janney, Elstner Associates, Inc. ("Wiss, Janney"). Wiss, Janney did not produce a report until November 2005 and Swinerton delayed giving a copy of the report to the University for several months thereafter. The report allegedly confirms many of the problems with the design and construction of the metal panel system and other systems. Swinerton apparently attempted to fix some of the issues after the report, but the fixes have proven ineffective.

UH alleges that it, and its consultants, met with HOK, Swinerton, their consultants, and several subcontractors on August 11, 2006 and expected proposals for repair of the problems. Allegedly, more than a year after that meeting, no proposal has been presented.

UH alleges that it has also recently learned of installation issues with the roof including lack of flashing, improper attachment of lightning rods, sleepers, and cables to the roof, improper patches and lapping of membrane, inadequate drainage, improper use of a modified composite metal panel, and poor installation of scuppers.

UH asserts causes of action against HOK for breach of contract, breach of warranty, negligence and, against Swinerton, for breach of fiduciary duty. There are no allegations specifically referencing Excel.

Mr. Joshua Mermis
December 31, 2009

Swinerton filed a Third-Party Petition against various subcontractors, including Excel Plumbing, Inc., on January 29, 2007.  Swinerton asserts that, to the extent UH may claim and prove a failure to conform with construction documents, one or more of the subcontractors are liable.  The Third-Party Petition includes specific allegations as to each subcontractor.  In regard to Excel Plumbing, Swinerton asserts that the scope of work included plumbing installation at the project under a subcontract agreement dated March 27, 2003.  There are no specific allegations of defects in Excel's work in the Third-Party Petition.

We have also reviewed Swinerton's Answers to Excel's First and Second Set of Interrogatories.  While the petition references a subcontract dated March 27, 2003, the interrogatories reference a purchase agreement dated June 15, 2004.  This appears to be a reference to the purchase agreement with Georgia Fountain Company for water features and fountain at the project.  In response to the interrogatory, Swinerton asserts that this purchase agreement required Excel to install sump pits and pumps.  We understand UH has complaints about the installation and operation of the fountain and water features, although these are not specified

The answers to the second set of interrogatories state that there are two broad claims by UH relating to the plumbing system:  (1) the negative/improper slope of the drain line under the auditorium allegedly causing or contributing to a backup of the drainage in the area of the outside ramp, and (2) the deflection of plumbing lines in the utility tunnel allegedly caused by the failure to sleeve those lines through the concrete walls of the tunnel.

We have also been provided with the Subcontract Agreement between Excel Plumbing and Swinerton dated March 27, 2003 and signed by Swinerton on June 17, 2003.

The contract includes an indemnification provision in paragraph 7 that provides, in pertinent part:

> (a)  TO THE FULLEST EXTENT PERMITTED BY LAW, SUBCONTRACTOR AGREES TO DEFEND, HOLD HARMLESS AND UNCONDITIONALLY INDEMNIFY CONTRACTOR AND OWNER, THEIR OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AGENTS, CONTRACTOR'S SURETY, AND ALL PARTIES WHOM CONTRACTORS IS REQUIRED TO INDEMNIFY PURSUANT TO THE TERMS OF THE CONTRACT DOCUMENTS, AGAINST AND FOR ALL LIABILITY, COSTS, EXPENSES, CLAIMS, LIENS, CITATION, PENALTIES, FINES, ATTORNEYS' FEES, LOSSES AND DAMAGES WHICH CONTRACTOR MAY AT ANY TIME SUFFER OR SUSTAIN OR BECOME LIABLE FOR BY REASON OF ANY ACCIDENTS, DAMAGES, OR INJURIES EITHER TO THE PERSONS OR PROPERTY OR BOTH OF CONTRACTOR, OWNER OR SUBCONTRACTOR, . . . IN ANY MANNER ARISING OUT OF OR RESULTING FROM SUBCONTRACTOR'S PERFORMANCE OR FAILURE TO PERFORM HEREUNDER, OR FAILURE OR DEFECTS IN MATERIALS OR GOODS SUPPLIED BY OR ON BEHALF

Mr. Joshua Mermis
December 31, 2009

OF SUBCONTRACTOR, INCLUDING, BUT NOT LIMITED TO, ANY NEGLIGENT ACT OR OMISSION OR CLAIM INVOLVING STRICT LIABILITY OR NEGLIGENCE PER SE OF CONTRACTOR OR OWNER, THEIR OFFICERS, DIRECTORS, SHAREHOLDERS, EMPLOYEES, AGENTS, CONTRACTOR'S SURETY AND ALL PARTIES WHOM CONTRACTOR IS REQUIRED TO INDEMNIFY PURSUANT TO THE TERMS OF THE CONTRACT DOCUMENTS.

THE COVERAGE OF ANY INSURANCE POLICY REQUIRED HEREIN OR ACTUALLY CARRIED BY THE SUBCONTRACTOR SHALL NOT LIMIT THE EXTENT OF SUBCONTRACTOR'S LIABILITY UNDER THE FOREGOING INDEMNITY.

\* \* \*

(c)     ALL INDEMNITY OBLIGATIONS UNDER THIS SUBCONTRACT SHALL APPLY TO CLAIMS ARISING BOTH BEFORE AND AFTER COMPLETION OF THE WORK UNDER THIS AGREEMENT AND TO CLAIMS ARISING BOTH BEFORE AND AFTER THE TERMINATION OF THIS AGREEMENT.

\* \* \*

(f)     CONTRACTOR SHALL BE ENTITLED TO RECOVERY OF ITS ATTORNEY'S FEES AND COSTS ASSOCIATED WITH ENFORCING ANY INDEMNITY CONTAINED HEREINABOVE.

The Subcontract Agreement also has an insurance provision that requires that the subcontractor carry general liability coverage endorsed to add the Owner and Contractor as additional insureds and incorporates the Insurance Appendix. The Insurance Appendix requires general liability insurance with limits of $2 million each occurrence and in the aggregate and an umbrella/excess policy of $1 million. The appendix also requires that the liability policy include a project specific additional insured listing that includes Swinerton Builders, its parent and affiliated companies and that the additional insured coverage apply on a primary and non-contributory basis. We note that the provisions of the Subcontract Agreement do not modify the actual terms of the policy and the coverage afforded.

Continental Western Insurance Company ("Continental Western") provided liability coverage to Excel Plumbing, Inc. under policy no. TP 1790934 for the period of October 16, 2002 to November 17, 2003. The policy is a package policy and includes general liability coverage on a 1998 ISO form with limits of $1 million each occurrence and $2 million in the aggregate.

The policy identifies a number of additional insureds, including Swinerton Builders. The additional insured coverage is provided on a CG 20 10 03 97 form (rather than the form specified by the subcontract) and provides, in pertinent part, that:

Mr. Joshua Mermis
December 31, 2009

>**Who Is An Insured (Section II)** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

The liability coverage is provided in two parts. Coverage A applies to bodily injury and property damage liability caused by an "occurrence" while Coverage B applies to personal and advertising injury. In our assessment, only Coverage A is relevant and Coverage B is not discussed further in this letter.

The policy is also endorsed with an "Amendment Of Other Insurance Agreement – Known Injury Or Damage" provision that limits coverage for known and ongoing damage. The insuring agreement, as amended, provides:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

> b. This insurance applies to "bodily injury" and "property damage" only if:

>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

>> (2) The "bodily injury" or "property damage" occurs during the policy period; and

>> (3) Prior to the policy period, no insured listed under—Who Is An Insured in any "underlying insurance" and no employee authorized by you to give or receive notice of an occurrence or claim, knew that the bodily injury or property damage had occurred, in whole or in part.

* * *

It is not clear when any damage was first discovered and the pleadings include no specific dates. Any damage or recurring problems that began prior to policy inception should not be covered.

In addition, the policy includes a fungus or spore exclusion that provides, in pertinent part:

> This insurance does not apply to:

Mr. Joshua Mermis
December 31, 2009

(1)   "Bodily injury", "property damage", "personal injury" or "advertising injury" caused directly or indirectly, in whole or in part, by

    a.   Any "fungus" or "spore", including any "fungi" or "spores"; or

    b.   Any substance, vapor or gas produces by or arising out of any "fungus", "fungi", "spore", or "spores"; or

    c.   Any material, product, building component, building or structure that contains, harbors, nurtures or acts as a medium for any "fungus", "fungi", "spore", or "spores"; or

    d.   Actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "fungus" or "spore", including "fungi" or "spores".

Such damage or injury is excluded regardless of any other cause, event, material, product and/or building component that contributed concurrently or in any sequence to that injury or damage.

(2)   Any loss, cost or expense arising out of any:

    a.   Request, demand, order or statutory or regulatory requirement that any insured or other test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess "fungus", "fungi", "spore", or "spores" or the effects of same (including, but not limited to, any form or type of mold, mildew, mushroom, toadstool, smut, or rust).

* * *

Additional Definitions:

For the purpose of this endorsement, the following definitions are added:

"Fungus" and/or "fungi" includes, but is not limited to, any form or type of mold, mildew, mushroom, toadstool, smut, or rust.

"Spore" and/or "spores" means any reproductive body produced by or arising out of any "fungus" or "fungi".

Mr. Joshua Mermis
December 31, 2009

While there is no specific allegation of mold damage in the pleadings, the expert reports reference mold.  Even if coverage otherwise existed, this exclusion would likely limit coverage.

Swinerton also seeks coverage for any indemnity obligations owed by Excel.  Contractual liability coverage is actually afforded through an exception to exclusion b., and is afforded to the named insured, for valid indemnity obligations, and not directly to any indemnitee.

Exclusion b. provides, in pertinent part:

* * *

b.      Contractual Liability

        "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

        (1)     That the insured would have in the absence of the contract or agreement; or

        (2)     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

* * *

"Insured contract" is defined, in part, to include:

* * *

f.      That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

* * *

As you are likely aware, under Texas law an indemnity agreement must comply with fair notice requirements to be enforceable.  These include both conspicuousness and compliance with the express negligence rule.  Even if the indemnity agreement is enforceable, however, it is our conclusion no coverage exists.

Mr. Joshua Mermis
December 31, 2009

The policy includes a number of exclusions that limit or preclude coverage for the named insured's own work or product. These exclusions also limit coverage for additional insureds or indemnitees, as the language references the named insured's work or product. These exclusions provide, in pertinent part, that the insurance does not apply to:

\* \* \*

j.    Damage to Property

"Property damage" to:

\* \* \*

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

\* \* \*

l.    Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Under the insuring agreement, there must be damage during the policy period. The pleadings do not specifically assert when any damage first occurred, or when Swinerton or the insured first had knowledge of any damage. However, the Subcontract Agreement was signed on June 17, 2003 and the Purchase Agreement for the fountain, which apparently involved the work of the insured, was dated June 15, 2004.

The Continental Western policy was effective from October 16, 2002 to November 17, 2003. Thus, the policy expired even prior to the Purchase Agreement for the water features and fountain, and there should be no coverage for any alleged damage related to

Mr. Joshua Mermis
December 31, 2009

them.  There is no indication or allegation of problems arising from the alleged the inadequate drainage at the base of the wheelchair ramp during the limited time in which the policy was in effect. The earliest reference in the expert reports is to problems beginning in 2004, but the reports also focus mainly on the cladding, not the plumbing issues.

We also note that the additional insured language is limited to "ongoing operations." There is no allegation of any damage arising out of ongoing operations.  Instead, the damages all appear to be from problems discovered after the project was completed. Accordingly, it is our conclusion that Swinerton would not qualify as an additional insured.

Texas courts generally require that the agreement specifically state that it is assuming liability for the indemnitee's own negligence.  Even if the agreement constitutes an "insured contract" it would still be subject to our other policy limitations.  These include both the trigger requirement, discussed above, and the work product exclusions, discussed below.

Exclusion j. applies to damage to your property, but only while the insured is performing operations.   As there is no indication of damage while the insured is performing operations, j.(5) would not appear to apply.  J.(6) applies to the particular part of property that must be repaired or replaced because the insured's work was incorrectly performed on it.

Exclusion l. applies to damage to the insured's work that is included in the completed operations hazard, but includes an exception for work performed by a subcontractor.  At this time, there is no information suggesting that Excel used subcontractors, and there is no allegation of subcontractors.

In addition to the primary policy discussed above, Continental Western Insurance Company insured Excel Plumbing, Inc. under a commercial umbrella policy, effective January 9, 2003 to November 17, 2003.  The policy provides limits of $1 million each occurrence and in the aggregate.   The umbrella policy includes a similar insuring agreement but requires "bodily injury," "property damage" or "personal or advertising injury" during the policy period.  In addition, while differently numbered or lettered, the umbrella policy also includes similar exclusions for damage to the insured's work or product.

In regard to Who Is An Insured, the umbrella policy provides, in pertinent part, that each of the following is also an insured:

* * *

C.   Any person or organization with whom or with which you have agreed in writing prior to any loss, "occurrence" or "offense" to provide insurance such as is afforded by this policy as an insured,

Mr. Joshua Mermis
December 31, 2009

> but only with respect to your operations or facilities you own or use.

D.   Each person or organization who is an insured in the "underlying insurance" is an insured under this insurance subject to all limitations of such "underlying insurance" rather than the limits of the underlying insured's liability.

With regard to subpart C., we again note that the Amended Petition makes no reference to Excel. Further, subpart D. is essentially "following form" to the primary. As discussed above, it is our conclusion that Swinerton does not qualify as an insured under the additional insured endorsement on the primary policy. Accordingly, it is our conclusion that, in addition to the lack of any allegation of damage during the policy period, Swinerton does not qualify as an additional insured under the umbrella policy.

The umbrella policy also includes a Products-Completed Operations Hazard – Following Form endorsement that provides:

> Except to the extent that coverage is provided in the "underlying insurance" for the full limits shown, as set forth in the schedule of underlying insurance, this insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard".

In regard to contractual liability, the policy includes a contractual liability following form endorsement that provides:

> Exclusion 3 under Section I.D. Exclusions is deleted in its entirety and replaced with the following:
>
> Except to the extent that coverage is provided in the underlying insurance for the full limits shown, as set forth in the schedule of underlying insurance, this insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

Accordingly, for the same reasons set forth above, with regard to the primary insurance, it is our conclusion that no coverage exists under the umbrella policy.

Moreover, even if coverage did exist and Swinerton qualified as an insured, the umbrella policy is subject to an "other insurance" clause that provides:

> This insurance is excess over "underlying insurance" or any other valid and collectible insurance (except other insurance purchased specifically to apply in excess of this insurance) which is also available to the "insured" covering a loss also covered by this policy.

Mr. Joshua Mermis
December 31, 2009

Further, the policy provides that a duty to defend exists only when the underlying insurance is exhausted or with respect to damages "not covered by "underlying insurance" or by any other valid and collectible insurance [available] to the "insured"..." Accordingly, the policy would not defend if other coverage existed and would apply only excess of any other coverage available to Swinerton as an insured or additional insured.

Continental Western's position on coverage is based on the allegations asserted at this time, the terms and provisions of the policy, and the facts known to us. We will reevaluate our position on issues related to coverage at any time if there is a material change in the available facts. If you have any additional information that you believe is pertinent to the coverage issues, or if suit is filed, we ask that you advise us as soon as possible.

By responding to your request for coverage, and setting forth this position, we do not waive any other policy provisions or defenses which may apply, and specifically reserves the right to amend, supplement, or otherwise modify this letter upon receipt of additional information. This letter should not be construed to limit Continental Western's right to later assert any other defenses potentially available under the policies or at law.

No action undertaken by Continental Western in investigating the facts in connection with this claim, or exploring a resolution, shall be construed in any way as waiving any right or operating as an estoppel to assert any right or defense which they may have under the law or the policy at issue, nor shall any such action be deemed to be an admission of liability or an admission of coverage under the policy. Similarly, nothing in this letter is intended, nor should it be construed to deprive Excel Plumbing or Swinerton of any rights they may have under the law or under the policies.

Please contact me if you have any questions.

Sincerely,

Dan Duvall
Litigation Specialist
972-719-2861
dduvall@usic.com

Cc      Excel Plumbing, Inc.
        11070 Regency Green Drive
        Cypress, TX 77429





# American Claims
## Service, Inc.

September 30, 2009

**CERTIFIED MAIL**
7007 1490 0003 7391 9174
**AND REGULAR U. S. MAIL**

Cypress Industrial Coatings
12922 New Cypress Dr
Cypress, TX 77429

| | | |
|---|---|---|
| Re: | Policy Number: | L076001004 |
| | Claim Number: | 0136TX019065 |
| | Insured: | Cypress Industrial Coatings |
| | Claimant: | University of Houston System |
| | Case Name: | *University of Houston System v. Swinerton Builders et al.* |
| | Venue: | District Court of Harris County, Texas |

## DECLINATION OF COVERAGE

Dear Sir or Madam:

American Claims Service Inc. (ACS) is an authorized representative of Atlantic Casualty Insurance Company (ACIC).

ACIC has examined the claims made in the above captioned lawsuit. ACIC has reviewed the allegations, the ACIC policy number L076001004, and other relevant information, where applicable. Based on this review, ACIC has determined that the plaintiff(s) in the lawsuit seek(s) damages that are not covered under the policy.

Joshua W. Mermis of Johnson Spalding tendered this matter to ACIC seeking the defense and indemnity of his client, Swinerton Builders Co. This letter explains certain coverage issues as they relate to you, the tendering party, and reserves all of ACIC's rights under the policy. There are allegations that this tender was made a few times prior to the letter dated September 15, 2009 however we do not have a record of that correspondence. If you have anything, please let us know.

**P.O. Box 8010, Goldsboro, North Carolina 27533-8010**
**Phone 919-759-3319  Toll Free 1-877-222-5522  Fax (919) 751-2502**

ACIC will discuss the allegations in the lawsuit but understands that these allegations are unproven and may be untrue, incomplete or embellished. ACIC does not conclude that any allegation is true. No statement in this letter should be construed otherwise.

## FACTS AND COVERAGE SUMMARY

The lawsuit contains the following causes of action: Breach of Contract, Negligence and Breach of Fiduciary Duty.

Policy number L076001004 was issued to Cypress Industrial Coatings, effective September 24, 2003 to September 24, 2004. The policy contains a limit of liability of $1,000,000 each occurrence limit. The policy has a $500.00 per claim deductible for property damage.

There is no present defense obligation based on the information currently available to ACIC.

Please note that new or additional allegations and/or facts beyond those present to ACIC and summarized briefly in this letter could change ACIC's position. Anyone seeking coverage must notify ACS immediately of any additional Lawsuit allegations filed against you so that we may re-evaluate coverage under the policy at that time. ACIC reserves the right to amend, supplement, or modify the information and any resulting coverage changes as further information or allegations develop.

If you have not already done so, you should notify any other primary insurer and any excess or umbrella insurer of this claim as soon as possible. ACIC's analysis of coverage is limited to this policy. If you are aware of any other ACIC policies that may afford coverage for this matter, please inform ACIC immediately.

## RELEVANT POLICY PROVISIONS

The above referenced policy contains the Commercial General Liability Coverage Form CG 00 01 10 01 that has the following language

### SECTION I – COVERAGES
### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
#### 1. Insuring Agreement
  a. *We will pay those  sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*

**(1)** *The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and*

**(2)** *Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.*

*No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.*

**b.** *This insurance applies to "bodily injury" and "property damage" only if:*

**(1)** *The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*

**(2)** *The "bodily injury" or "property damage" occurs during the policy period; and*

\* \* \*

## 2. Exclusions

*This insurance does not apply to:*

\* \* \*

**b. Contractual Liability**

*"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:*

**(1)** *That the insured would have in the absence of the contract or agreement; or*

**(2)** *Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:*

**(a)** *Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and*

**(b)** *Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.*

\* \* \*

**j. Damage To Property**

*"Property damage" to:*

\* \* \*

**(5)** *That particular part of real property on which you or any*

3

contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\* \* \*

### k. Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

### l. Damage To Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

### n. Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

\* \* \*

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

\* \* \*

4

*No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.*

\* \* \*

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS
\* \* \*

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. *You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:*

      (1) *How, when and where the "occurrence" or offense took place;*

      (2) *The names and addresses of any injured persons and witnesses; and*

      (3) *The nature and location of any injury or damage arising out of the "occurrence" or offense.*

   b. *If a claim is made or "suit" is brought against any insured, you must:*

      (1) *Immediately record the specifics of the claim or "suit" and the date received; and*

      (2) *Notify us as soon as practicable.*

        *You must see to it that we receive written notice of the claim or "suit" as soon as practicable.*

   c. *You and any other involved insured must:*

      (1) *Immediately send us copies of any demands, notices, summonses legal papers received in connection with the claim or "suit";*

      (2) *Authorize us to obtain records and other information;*

      (3) *Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and*

      (4) *Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.*

   d. *No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.*

\* \* \*

6. **Representations**

   *By accepting this policy, you agree:*

   a. *The statements in the Declarations are accurate and complete;*

   b. *Those statements are based upon representations you made to us; and*

   c. *We have issued this policy in reliance upon your representations.*

\* \* \*

5

### SECTION V – DEFINITIONS

* * *

8.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b.  You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a.  The repair, replacement, adjustment or removal of "your product" or ."your work"; or

   b.  Your fulfilling the terms of the contract or agreement.

9.  "Insured contract" means:

   a.  A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b.  A sidetrack agreement;

   c.  Any easement or license agreement, except in connection with construction  or demolition operations on or within 50 feet of a railroad;

   d.  An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e.  An elevator maintenance agreement;

   f.  That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

      (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

      (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor,

6

assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**16.** "Products-completed operations hazard":

   **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

     **(1)** Products that are still in your physical possession; or

     **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

       **(a)** When all of the work called for in your contract has been completed.

       **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

       **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

     Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **b.** Does not include "bodily injury" or "property damage" arising out of:

     **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

     **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

     **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*For the purposes of this insurance, electronic data is not tangible property.*

*As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.*

**18.** *"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:*

  **a.** *An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or*

  **b.** *Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.*

* * *

**21.** *"Your product":*

  **a.** *Means:*

  (1) *Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:*

   (a) *You;*

   (b) *Others trading under your name; or*

   (c) *A person or organization whose business or assets you have acquired; and*

  (2) *Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.*

  **b.** *Includes*

  (1) *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and*

  (2) *The providing of or failure to provide warnings or instructions.*

  **c.** *Does not include vending machines or other property rented to or located for the use of others but not sold.*

**22.** *"Your work":*

  **a.** *Means:*

  (1) *Work or operations performed by you or on your behalf; and*

  (2) *Materials, parts or equipment furnished in connection with such work or operations.*

  **b.** *Includes*

  (1) *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and*

  (2) *The providing of or failure to provide warnings or instructions.*

* * *

The policy has the Exclusions/Limitations – Combination Endorsement **AGL-C-2 2/03** which contains the sub-endorsement(s) **AGL-003 5/97. AGL-005 1/03, AGL-011 1/03, AGL-046 1/03, AGL-048 1/03** and **AGL-056 1/03** with the following language:

\* \* \*

### EXCLUSION – PUNITIVE DAMAGES

*We do not cover any claim of or indemnification for punitive or exemplary damages. If a "suit" seeking both compensatory and punitive damages has been brought against you for a claim covered by this policy, we will provide defense for such action. We will not have any obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.*
*AGL-003 5/97*

\* \* \*

### EXCLUSION – INDEPENDENT CONTRACTORS / SUBCONTRACTORS

*You or any insured are not covered for claims, loss, costs or expense arising out of the actions of independent contractors / subcontractors for or on behalf of any insured.*
*AGL-005 1/03*

\* \* \*

### EXCLUSION – SUBSIDENCE

*In consideration of the premium charged, it is hereby understood and agreed that liability for bodily injury or property damage caused by, resulting from, attributable to or contributed to, or aggravated by the subsidence of land as a result of landslide, mud flow, earth sinking or shifting, resulting from operations of the Named Insured or any other subcontractor of the Named Insured is excluded.*
*AGL-011 1/03*

\* \* \*

### EXCLUSION – ASSAULT AND/OR BATTERY

1.  *This insurance does not apply to and we have no duty to defend any claims or "suits" for "bodily injury" "property damage" or "personal and advertising injury" arising in whole or in part out of:*

    a)  *the actual or threatened assault or battery whether caused by or at the instigation or direction of any insured, his employees, patrons or any other person;*

9

  b) *the failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or*

  c) *the negligent:*

    (i) *employment;*
    (ii) *investigation;*
    (iii) *supervision;*
    (iv) *training;*
    (v) *retention;*

   *of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) or (b) above.*

2. *For the purpose of this endorsement, the words, "assault and/or battery" are intended to include, but are not limited to, sexual assault.*

3. *Exclusion 2.a. of the Commercial General Liability Coverage Form is deleted in its entirety and replaced by the following:*

  a) *"bodily injury" or "property damage" expected or intended from the standpoint of any insured.*

**AGL-046 1/03**

\* \* \*

## EXCLUSION – CLAIMS IN PROCESS

*Paragraphs b. (3), c. and d. under Insuring Agreement of Section I – Coverage A – bodily Injury and Property Damage Liability, are deleted. The following is added to 2. Exclusions under Section I – Coverage A – bodily Injury and Property Damage Liability:*

1. *any loss or claim for damages arising out of or related to "bodily injury" or "property damage" , whether known or unknown:*

  a. *which first occurred prior to the inception date of this policy; or*
  b. *which is, or is alleged to be, in the process of occurring as of the inception date of this policy.*

2. *any loss or claim for damages arising out of or related to "bodily injury" or "property damage", whether known or unknown, which is in the process of settlement, adjustment or "suit" as of the inception date of this policy.*

10

*We shall have no duty to defend any insured against any loss, claim, "suit" or other proceeding alleging damages arising out of or related to "bodily injury" or "property damage" to which this endorsement applies.*
**AGL-048 1/03**

\* \* \*

## LIMITATION – DUTY TO DEFEND

*Where there is no coverage under this policy, there is no duty to defend any insured.*
**AGL-056 1/03**

\* \* \*

The policy includes the following endorsement(s) **AGL-015 1/03** and **CG2010 10/01,** which read(s) as follows:

\* \* \*

## CLASSIFICATION LIMITATION

*THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

*This insurance does not apply to and no duty to defend is provided for "bodily injury", "property damage", "personal and advertising injury" or medical payments for operations which are not classified or shown on the Commercial General Liability Coverage Declarations, its endorsements or supplements.*
**AGL-015 1/03**

\* \* \*

## ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

*THIS ENDOREMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:*

*COMMERCIAL GENERAL LIABILITY COVERAGE PART*

**SCHEDULE**
*Name of person or Organization:*

*Swinerton Builders*
*55 Waugh Dr, Suite 1200*

11

*Houston, TX 77007-5737*

*(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement)*

A.  *Section II – Who Is An Insured is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising our of your ongoing operations performed for that insured.*

B.  *With respect to the insurance afforded to these additional insureds, the following exclusion is added:*

    **2. Exclusions**

       *This insurance does not apply to "bodily injury" or "property damage" occurring after:*

    *(1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or*

    *(2) That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.*

**CG2010 10/01**

\* \* \*

## COVERAGE ANALYSIS

The policy does not provide coverage to correct deficiencies in *"your work"* or *"your product."* Further, the policy does not provide coverage to repair or replace *"impaired property"* that incorporates *"your work"* or *"your product"*. The general liability policy with ACIC does not guarantee *"your work"* or *"your product"* with regard to durability, timely and proper completion, quality or performance. ACIC will not provide coverage for warranties and representations related to *"your work."* ACIC will not provide coverage for the repair or replacement of your defective work.

ACIC does not provide coverage for any award of punitive damages. The request for punitive or exemplary relief is not covered.

ACIC does not provide coverage for claims, loss, costs or expense that result from the actions of any insured's subcontractor or independent contractor. To the extent the damages arise from the work of your subcontractor or independent contractor, there is no coverage.

The policy also does not provide coverage for any damage resulting from subsidence as a result of landslide, mudflow, earth sinking or shifting, resulting from the operations of the insured or any other subcontractor of the insured.

ACIC does not provide coverage for "bodily injury" or "property damage" expected or intended by any insured.

The policy does not provide coverage for claims or losses that occurred or were ongoing prior to the inception date of the policy (whether known or unknown). The policy was effective September 24, 2003 to September 24, 2004. To the extent the loss occurred or was ongoing prior to the inception date of the policy, there is no coverage.

ACIC will not provide coverage for damages that arise out of operations not classified on the Commercial General Liability Coverage Declarations, its endorsements or supplements. The Commercial General Liability Coverage Part Declarations page of the policy with ACIC classifies your operations as:

**Classification(s) listed on the Declarations page:**          **Code No:**

    Concrete Construction                                          91560

The policy was classed and rated on this basis. To the extent the damages arise out of operations not classified on the policy Declarations, there is no coverage for this claim (and suit).

There is no coverage for claims arising from a breach of your contractual liability.

Swinerton Builders is an additional insured under policy L076001004 effective September 24, 2003 to September 24, 2004 issued to Cypress Industrial Coatings, written on CG2010 10/01 and provides coverage for liability arising out of your ongoing operations. This claim and suit arises out of your completed operations. There is no coverage for Swinerton Builders under the policy. By copy of this letter, ACIC notifies Joshua W. Mermis of Johnson Spalding there is no coverage for his client.

To the extent Swinerton Builders is seeking contractual indemnity under the terms of any contract documents, we have not been provided with a full copy of the contract between Swinerton Builders and Cypress Industrial Coatings and are unable to address this claim. Even if there was such an obligation, where provisions, exclusions or endorsements preclude coverage to the named insured, there is no coverage for any party seeking a benefit of the policy based on the same provisions.

## DECLINATION OF COVERAGE

Because of, but not limited to, the language of the exclusion and definitions noted above, and in light of the description of the loss, there is no coverage for this claim under the policy. As no suit has been filed against you to our knowledge, ACIC is unable to state at this time if it will respond to any litigation associated with this claim, either for indemnification or defense. If suit is filed, please forward a copy to us so we may re-

evaluate coverage under the policy at that time.

This statement of ACIC's position is without prejudice to you or the tendering party or to ACIC. It is based on information provided to date. ACIC reserves its right to supplement this statement of its position with additional grounds for reserving its rights or denying coverage under its referenced policy should any such grounds appear hereafter. Nothing in this letter shall be construed as a waiver, extinguishment, or modification of any rights, remedies, terms, conditions, and/or exclusions contained in the policy and/or provided by applicable law.

ACIC will reconsider its position in light of any additional information you or the tendering party may have or any analysis you may wish to present that, in your opinion, shows that coverage applies to this claim so clearly that ACIC should have no need to deny coverage. If you wish us to re-examine this matter on that basis, please write to the undersigned representative, setting out any such additional information or analysis. If such additional information is included in documents that have not already been supplied to ACIC, please enclose copies of those documents.

Sincerely,

Frances M. Nugent, SCLA
Litigation Claims Examiner
Tel: (919) 429-4274
Fax: (919) 429-4588

cc:   ACIC

      Joshua W. Mermis
      Johnson Spaulding
      919 Milam Suite 1700
      Houston, TX 77002

14