

21



**Savrick Schumann** Johnson McGarr Kaminski & Shirley, LLP

6440 N. Central Expressway, Suite 107
Dallas, Texas 75206
Phone: (214) 368-1515
Fax: (214) 292-9647

**CAMILLE JOHNSON – PARTNER**
Licensed in Texas and Colorado

camille@ssjmlaw.com

November 17, 2009

Mr. Joshua W. Mermis
JOHNSON, SPALDING, DOYLE,
WEST & TRENT, L.L.P.
919 Milam, Suite 1700
Houston, Texas 77002

*Via Facsimile Transmission*
*(713) 222-2226*

RE: Cause No. 2006-76157; *Univ. of Houston System v. Swinerton Builders, Inc. and Hellmuth, Obata + Kassabaum, L.P.*; District Court, Harris County, Texas (334th)
Claim No.: 0136TX019065
Policy No.: L076001004-0
Policy Period: September 24, 2003 to September 24, 2004
Insured: Cypress Industrial Coatings
Additional Insured: Swinerton Builders

Dear Mr. Mermis:

My firm is coverage counsel for Atlantic Casualty Insurance Company (Atlantic). I have reviewed the lawsuit allegations against your client, Swinerton Builders Co. (Swinerton). I also have reviewed the Additional Insured endorsement naming Swinerton as an additional insured. I have informed Atlantic that there is no duty to defend based on the information provided to us to date. Atlantic's prior coverage positions are incorporated by reference herein. My explanation follows.

### Pleadings

I understand that Swinerton has filed a Third Party Petition against the following third party defendants: Now Specialties, Inc.; Pyramid Waterproofing, Inc.; B&B Glass, Inc.; Mid-Continental Restoration Company, inc.; Electronic Technologies Corp.; Ken Gurry Corp.; Excel Plumbing, Inc.; Georgia Fountain Co.; and Cypress Industrial Coatings (Atlantic's insured).

I obtained a copy of the recently filed Second Amended Petition filed by the University of Houston (UH) against Swinerton and Hellmuth, Obata + Kassabaum (the Architects).

UH alleges that its lawsuit is a construction dispute relating to design and construction defects at the UH's Clear Lake Student Services building in Houston (the Project). UH alleges it entered into a turn key Project Agreement with the Architect under which the Architect was to

Mr. Joshua W. Mermis
November 17, 2009
Page 2

provide complete professional services to the UH for the design and delivery of a complete Project. UH then allegedly entered into a Construction Manager At Risk Agreement with Swinerton under which Swinerton, as the Project construction manager, agreed to provide the UH pre-construction phase services and construction phase services for the Project (the Swinerton Contract). Swinerton allegedly acknowledged that the UH entered the Swinerton Contract in reliance on Swinerton's special and unique abilities, and Swinerton expressly accepted this relationship of trust and confidence. The pre-construction phase services Swinerton agreed to provide UH included, among other things, general coordination of the Project and coordination of design and construction contract documents for the Project. Under their contracts, the Architects and Swinerton were obligated to work together to ensure the Project's success.

UH alleges the Project has significant design and construction problems and therefore does not function as intended or as agreed to by Swinerton and the Architects. The most significant problem allegedly involves the metal panel cladding and the integration of dissimilar building materials that defendants improperly designed and constructed, causing significant and continuous water infiltration into the building, which has damaged other parts of the building. During most rain events, the building leaks. Cleaning crews have to be dispatched throughout the building to mop up rain water and try to block the infiltrating water with towels. Also, and not surprisingly, given that defendants have both not properly repaired the leaks as promised for several years, the leaks have caused unacceptable levels of mold to develop that will require remediation once the source of the leaks is finally addressed. In addition to the significant and pervasive alleged problems with the building envelope, the Project has several other alleged problems.

Swinerton allegedly tried to hide its own expert's report condemning the leaky building. Despite repeated demands by UH that the defects and deficiencies be corrected in accordance with the defendants' contractual responsibilities, the alleged defects and deficiencies allegedly have not been corrected to date. Swinerton and the Architects allegedly had full knowledge of the building's problems for years but refused to adequately fix the problems. Swinerton purported to "fix some issues by drilling holes through the metal panels to act as make shift weep holes and by caulking the exterior of the building." Swinerton's attempted fix proved ineffective as the water infiltration problems at the Project persisted, and persist to this day. Initially, Swinerton agreed on or about April 29, 2005 to hire an independent inspector at Swinerton's expense to assess the building's water infiltration problems. Months after stating its intention to hire an outside consultant, Swinerton allegedly hired Wiss, Janney, Elstner Associates, Inc. to inspect the Project. Wiss Janney later began its investigation but did not have an initial report until November 2005, seven months after Swinerton had acknowledged the problems and pledged to remedy the building's leak problems. After Wiss Janney conducted its inspection, the parties were to meet to discuss the problems and how to fix them. Despite the UH's requests for the Wiss Janney report, Swinerton allegedly delayed giving a copy of the report to UH. When UH finally received the report, it became clear why Swinerton tried to hide it. Wiss Janney, Swinerton's own independent consultant, confirmed problems with the design and construction of the building envelope, among other things.

Mr. Joshua W. Mermis
November 17, 2009
Page 3

UH alleges it was forced to hire its own experts. After receiving the Wiss Janney report and observing the lackluster repairs allegedly attempted by Swinerton, the UH hired two separate independent consultants, both of whom the Architects confirmed were competent, qualified professionals before they were hired. Both consultants concluded that the problems with the building envelope are systemic and require comprehensive repairs. Among other things, the experts concluded the metal panel system needs to be removed, re-designed and replaced. These expert reports have been provided to Swinerton and the Architects.

Swinerton and the Architects allegedly refuse to fix the leaky building. UH and its independent consultants allegedly met with the Architects, Swinerton and its consultants, and several of Swinerton's subcontractors at the Project on August 11, 2006 at Swinerton's request. At the meeting, the Architects, Swinerton and Swinerton's subcontractors were given an opportunity to fully question the UH personnel and the UH independent consultants regarding problems with the building, testing methods and results, and conclusions identified in the consultants' reports. The parties inspected the Project and agreed to submit proposals by the end of August for repair of the Project's problems. For more than a year after that meeting, neither Swinerton nor the Architects provided UH with a proposal to eliminate the water intrusion. Not until March 2008 did the Architects and Swinerton send UH a conceptual plan with potential ideas to possibly fix the allegedly leaky building. After so many years, the UH came to the inevitable conclusion that, having been abandoned by its contractor and architect to begin with, UH could not rely on them now to actually fix the Project so that it functioned as originally intended. Accordingly, the UH at its own expense, prepared the plans needed to actually repair the Project.

The Project allegedly suffers from many other defects in design and workmanship. The security system allegedly does not work properly and does not conform with the contract specifications. The building has several ADA and/or TAS compliance issues. The Architects have admitted that parts of its design are not code compliant as required by its contract. The handrail system on the walkways was allegedly improperly designed and improperly built. An inspection revealed that part of the handrail system had only been secured together by staples. The UH, after Swinerton and the Architects acknowledged the problem but failed to follow through with a repair, paid to have the handrail tested and repaired. The concrete slab that supports the emergency generator is shifting and settling. Apparently Swinerton allegedly failed to properly compact the soil under the slab. Proper drainage was not provided at the sidewalks causing flooding problems. Utility lines and drains that traverse a utility tunnel under the new building allegedly are deflecting, indicating potential serious problems. The ten foot doors and frames on the second floor at the Bayou Building, Section 2500, were allegedly incorrectly machined. No available escutcheons can reasonably cover the holes, and door replacement is the only option. Further, the door frames and hinges are allegedly inadequate to support the weight of the doors and many doors do not function properly as a result.

The water feature allegedly was not properly waterproofed. The epoxy coating bubbled up and separated from the concrete. The UH ultimately had to tile the fountain after failed attempts to repair the epoxy. Also the water feature has previously been inoperable because the

Mr. Joshua W. Mermis
November 17, 2009
Page 4

vault with the internal electrical controls and pumps flooded. The ramp at the back of the lecture hall has inadequate drainage. During substantial rainstorms, water has allegedly backed up and floods the lecture hall through the back door causing sections of the flooring to lift from the slab and float away.

The UH also has allegedly recently discovered significant problems with the elevators at the Project caused by the improper installation of the elevators. The elevator jack assembly and piston were installed incorrectly, causing severe oil drainage and damage to the jack assembly and piston. Further, the secondary containment for the elevator was not installed in accordance with the contract specifications and was not adequately backfilled. In addition, the jack assembly was not secured properly, and the shaft assembly was out of plumb. Because of these alleged problems, the UH had to replace the jack assembly and piston. Due to the failure of this elevator and the discovery of the improperly backfilled assembly, UH will likely need to investigate the condition of the second elevator and potentially repair it. Thus, the UH has allegedly incurred and may be forced to incur additional expenses.

There are also several alleged installation issues with the roof at the Project. UH sues for breach of contract and breach of warranty. UH also sues for negligence and breach of fiduciary duty. UH seeks attorneys' fees, interest and cost as allowed by law. UH attaches Exhibit A to its amended petition. Exhibit A is the affidavit of Architect, Bruce R. Weir (AIA). In that affidavit, Mr. Weir swears that "During construction of the Project, the building owner (UH) reported water leaks at numerous locations throughout the building." (para. 6 of affidavit).

### The Insuring Agreement and The Policy Term

As stated in its Insuring Agreement for Coverage A, the Atlantic policy applies to certain defined "property damage" that first occurs during the policy term, subject to applicable terms, conditions and exclusions.

The policy term is from September 24, 2003 to September 24, 2004. There are no factual allegations of any alleged damages caused by Cypress during this term. Therefore the lack of actual factually alleged damage would support that there is likely no defense or indemnity for this reason as well.

### Policy Definitions

The policy contains the following pertinent definitions, among others:

16. **"Products Completed Operations Hazard"**:
    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
    (1) Products that are still in your physical possession; or

Mr. Joshua W. Mermis
November 17, 2009
Page 5

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
       (a) When all of the work called for in your contract has been completed.
       (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
       (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
  b. Does not include "bodily injury" or "property damage" arising out of:
    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;
    (2) The existence of tools, uninstalled equipment or abandoned or unused materials, or
    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:
  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
  b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

21. "Your product":
  a. Means:
    (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed by:
       (a) You;
       (b) Others trading under your name; or

Mr. Joshua W. Mermis
November 17, 2009
Page 6

        (c) A person or organization whose business or assets you have acquired; and

    (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  b. Includes

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product," and

    (2) The providing of or failure to provide warnings or instructions.

  c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

  a. Means:

    (1) Work or operations performed by you or on your behalf; and

    (2) Materials, parts or equipment furnished in connection with such work or operations.

  b. Includes

    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work," and

    (2) The providing of or failure to provide warnings or instructions.

<u>The Additional Insured Endorsement</u>

The policy includes Swinerton as an additional insured as follows:

A. Section II – Who Is An Insured is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

B. With respect to the insurance afforded to these additional insureds, the following exclusion is added:

  2. Exclusions

    This insurance does not apply to "bodily injury" or "property damage" occurring after:

    (1) All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional

Mr. Joshua W. Mermis
November 17, 2009
Page 7

>       insured(s) at the site of the covered operations has
>       been completed; or
>   (2) That portion of "your work" out of which the injury
>       or damage arises has been put to its intended use by
>       any person or organization other than another
>       contractor or subcontractor engaged in performing
>       operations for a principal as a part o the same
>       project.

First, the second amended petition does not contain factual allegations of liability against Swinerton for any conduct, act or omission or Cypress in order to trigger additional insured status under the Atlantic policy. Second, even if there were such allegations, the petition clearly alleges the Project was complete and put to its intended use. As such, I have advised Atlantic there is no duty to defend or indemnify Swinerton.

### Classification Limitation

The policy's Business Description states that Cypress, an Individual insured, "INSTALLS DECORATIVE LAYER TO EXISTING CONCRETE." The Classification Code for Premium basis is "Concrete Construction." I have informed Atlantic it is my opinion there is no duty to defend or indemnify because the factual allegations do not contain any complaint whatsoever about the decorative concrete work that is Cypress's classification. The policy states:

>   This insurance does not apply to and no duty to defend is
>   provided for "bodily injury", "property damage", "personal
>   and advertising injury" or medical payments for operations
>   which are not classified or shown on the Commercial General
>   Liability Coverage Declarations, its endorsements or
>   supplements.

### Property Damage Exclusions B, J – N

The policy contains certain business risk exclusions for "property damage." The policy does not insure:

>   b. Contractual Liability
>      "Bodily injury" or "property damage" for which the
>      insured is obligated to pay damages by reason of the
>      assumption of liability in a contract or agreement. This
>      exclusion does not apply to liability for damages:
>   (1) That the insured would have in the absence of the
>       contract or agreement; or

Mr. Joshua W. Mermis
November 17, 2009
Page 8

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:
        (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
        (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.
      \*\*

  j. Damage To Property
    "Property damage" to:
    (1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;
    (2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;
    (3) Property loaned to you;
    (4) Personal property in the care, custody or control of the insured;
    (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operation, if the "property damage" arises out of those operations; or
    (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

    Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer

Mr. Joshua W. Mermis
November 17, 2009
Page 9

consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. Damage To Your Product
"Property damage" to "your product" arising out of it or any part of it.

l. Damage To Your Work
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. Damage To Impaired Property Or Property Not Physically Injured
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Recall Of Products, Work Or Impaired Property
Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall,

Mr. Joshua W. Mermis
November 17, 2009
Page 10

inspection, repair, replacement, adjustment, removal or disposal of:
(1) "Your product";
(2) "Your work"; or
(3) "Impaired property";
if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

### Other Exclusions in the Combination Endorsement

EXCLUSION - PUNITIVE DAMAGES

We do not cover any claim of or indemnification for punitive or exemplary damages. If a "suit" seeking both compensatory and punitive damages has been brought against you for a claim covered by this policy, we will provide defense for such action. We will not have any obligation to pay for any costs, interest or damages attributable to punitive or exemplary damages.

EXCLUSION – SUBSIDENCE

In consideration of the premium charged, it is hereby understood and agreed that liability for bodily injury or property damage caused by, resulting from, attributable to or contributed to, or aggravated by the subsidence of land as a result of landslide, mud flow, earth sinking or shifting, resulting from operations of the Named Insured or any other subcontractor of the Named Insured is excluded.

EXCLUSION - MOLD, BACTERIA, VIRUS AND ORGANIC PATHOGEN LIABILITY

The following supercedes the terms and conditions of this policy. This insurance does not apply:

1. to any alleged "bodily injury", "property damage", "personal and advertising injury";
2. to any alleged damages for devaluation of property or for the taking, use or acquisition or interference with the rights of others in property or air space;
3. to any loss, cost or expense, including but not limited to fines, penalties and attorney fees, arising out of any

Mr. Joshua W. Mermis
November 17, 2009
Page 11

> governmental direction or request, or any private party or citizen action, that an insured test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize "organic pathogens", or
> 4. to any litigation or administration procedure in which an insured may be involved as a party;
>
> arising directly, indirectly, or in occurrence or in any sequence out of actual, alleged or threatened existence, exposure to, discharge, dispersal, release or escape of "organic pathogens", <u>whether or not</u> such actual, alleged or threatened existence, discharge, dispersal, release or escape is sudden, accidental or gradual in nature.
>
> In addition, this insurance does not apply to any alleged "bodily injury", "property damage", "personal and advertising injury" loss, cost or expense including but not limited to fines, penalties and attorney fees, arising out of or related to any form of "organic pathogens", <u>whether or not</u> such actual, alleged or threatened existence, exposure to, discharge, dispersal, release or escape is negligently or intentionally caused by any person or entity and whether or not the liability of any insured is alleged to be direct or vicarious. This exclusion also applies <u>whether or not</u> such injury, damage, devaluation, cost or expense is expected or intended from the standpoint of any insured.
>
> "Organic pathogen" means any organic irritant or contaminant, including but not limited to mold, fungus, bacteria or virus, including but not limited to their byproducts such as mycotoxin, mildew, or biogenic aerosol.
>
> "Waste" means any property intended to be disposed, recycled, reused or reclaimed by the owner or user thereof.
>
> All other terms and conditions remain unchanged.

The policy's Combination Endorsement also contains an exclusion for expected or intended injury (exclusion a.) and states it does not apply "to 'bodily injury' or 'property damage' expected or intended from the standpoint of any insured."

The policy also contains a Limitation Duty to Defend provision that states:

<u>LIMITATION – DUTY TO DEFEND</u>

Mr. Joshua W. Mermis
November 17, 2009
Page 12

> Where there is no coverage under this policy, there is no duty
> to defend any insured.

AGL-056 1/03

### Conclusion

I have reviewed the policy and the second amended petition (and prior petitions). I have advised Atlantic that there is no duty to defend or indemnify Swinerton. As noted above, the factual allegations do not trigger additional insured status because they do not link the complained of conduct by Swinerton to Cypress. Moreover, the project at issue is not ongoing as required for additional insured coverage. There are certain other exclusions that likely preclude defense and indemnity in whole or part: the contractual liability exclusion; the "business risk" exclusions J through N; the Classification Limitation Endorsement; the Combination Endorsement's exclusions for punitive damages; for intended or expected injury; for mold; for subsidence claims; and limiting defense obligation.

If you would like to submit additional information or authority for consideration, please contact me at your convenience and I will review that information on behalf of Atlantic.

You may reach me at my office, 214-368-1515, or any time via my cell, 214-557-3074, or via email, Camille@ssjmlaw.com.

Best Regards,

SAVRICK, SCHUMANN, JOHNSON,
MCGARR, KAMINSKI & SHIRLEY, L.L.P.

*Camille Johnson*
Camille Johnson
For the Firm

cc: Frances Nugent

From: SAVRICK SCHUMANN JOHNSON　　　512 347 1676　　　11/17/2009 16:30　　#428 P.001/013





Johnson
McGarr
Kaminski
& Shirley, LLP

6440 N. Central Expressway, Suite 107
Dallas, Texas 75206
Phone: (214) 368-1515
Fax: (214) 292-9647

Date Transmitted: November 17, 2009

Number of Pages being sent (including this form)　__13__

Please deliver this telecopy to:　**Joshua W. Mermis**

Location:　JOHNSON, SPALDING, DOYLE, WEST & TRENT, L.L.P.

Comments:　Please see attached correspondence

This telecopy is being sent by: Leona Jackson for Camille Johnson

Telecopier Number:　(713) 222-2226

Telephone Number:

Client/Matter Number:　6067-187

IF YOU DO NOT RECEIVE ALL OF THE PAGES, PLEASE CALL BACK AS SOON AS POSSIBLE
OPERATOR: (214) 368-1515

_____ A hard copy will be sent via U.S. Mail

__X__ A hard copy will _not_ be sent

This form and the materials telecopied with this form constitute privileged and confidential proprietary information. It is intended only for the use of the person or entity named above. Any use or dissemination of this form or the materials telecopied herewith except by such person or entity is not authorized. If you have received this telecopy in error, this form and the materials telecopied herewith should be returned immediately to the sender via the U.S. Postal Service and you must notify sender at (512) 347-1604. You may call collect.