UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SWINERTON BUILDERS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-10-1791 |
| | § | |
| ZURICH AMERICAN INSURANCE | § | |
| COMPANY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

**I.   Introduction**

Pending before the Court is Atlantic Casualty Insurance Company's[1] motion for summary judgment (Docket Entry No. 69) against Swinerton Builders. Swinerton filed a response (Docket Entry No. 72), to which the Atlantic Casualty filed a reply (Docket Entry No. 90).[2] After having carefully reviewed the motion, the responses and the applicable law, the Court denies Atlantic Casualty's motion.

**II.   Factual Background**

The present motion concerns an insurance coverage dispute between a general contractor and one of its subcontractors' insurance carriers. The University of Houston contracted with the architectural firm Hellmuth, Obata + Kassabaum ("HOK") and with general contractor

---

[1] In its motion for summary judgment, Atlantic Casualty refers to itself as a plaintiff. The Court has no record of Atlantic Casualty's counterclaim against the plaintiff Swinerton Builders. Rather, Atlantic Casualty is one of several named defendants.

[2] The pending motion concerns only a subset of the parties to the dispute. Originally, Swinerton Builders filed for a declaratory judgment against Zurich American Insurance Company, Travelers American Insurance Company, ACE American Insurance Company, Atlantic Casualty Insurance Company, Continental Western Insurance Company, Hartford Casualty Insurance Company, ACEA American Insurance Company and CNA Transportation Insurance Company, St. Paul Mercury Insurance Company & Amerisure Mutual Insurance Company, CNA Casualty Company of Texas and CNA Claimsplus, Inc. Presently, the Court is concerned only with the claims of Swinerton and Atlantic Casualty.

Swinerton Builders for the design and construction of a student services building ("the project"). Swinerton was to provide the University with pre-construction and construction phase services for the project. Swinerton's contractual duties included notifying the University of known or perceived problems with the construction documents, preparing and providing the University with as-built documents reflecting the actual construction, monitoring and coordinating the work of subcontractors, and ensuring that the work performed and materials used complied with the contract documents.

Swinerton, in turn, hired numerous subcontractors, including Cypress Industrial Coatings for the purpose of staining finished concrete. Cypress Industrial had a commercial general insurance policy ("the policy") issued by Atlantic Casualty, which covered Cypress Industrial's work on the project from September 24, 2003, to September 24, 2004. The policy's "business description" was "installs decorative layer to existing concrete," and its "classification" was "concrete construction." Swinerton is listed as an additional insured under an Additional Insured Endorsement to the policy.

The University filed suit against HOK and Swinerton in state court, alleging numerous defects in the project's design and construction that prevent the building from functioning as intended. *See*, *University of Houston System v. Swinerton Builders, A California Corporation and Hellmuth, Obata + Kassabaum, L.P.*, (334th Dist. Ct., Harris County, currently pending) (the "underlying suit"). Swinerton then filed a declaratory judgment action[3] against all of the insurance company defendants in this Court, seeking a defense and indemnity from them in the underlying suit. Atlantic Casualty, in turn, filed this summary judgment action, asking the Court to hold that Atlantic Casualty need not defend or indemnify Swinerton in the underlying suit. The Court's subject matter jurisdiction over this action is predicated upon Federal Rule of Civil

---

[3] Swinerton's live pleading is its third amended complaint for declaratory judgment. *See* [Docket Entry No. 79].

Procedure 57 and 28 U.S.C. § 2201. There exists complete diversity between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## III. Contentions of the Parties

### A. Atlantic Casualty's Contentions

Atlantic Casualty asserts that it is not liable to either defend or indemnify Swinerton in the underlying suit for six overlapping reasons. First, Atlantic Casualty claims that it owes no duty to Swinerton under the policy's Classification Limitation because the underlying suit contains no allegations falling within the insured classification. Second, Atlantic Casualty alleges that it owes no duty to Swinerton because the alleged property damage in the underlying suit did not occur during the policy term.

Third, Atlantic Casualty maintains that it owes no duty to Swinerton under the Additional Insured Endorsement because the underlying suit contains no allegations against Atlantic Casualty's named insured, Cypress Industrial Coatings. The Additional Insured Endorsement contains the Completed Operations and Intended Use exclusions. Atlantic Casualty avers that both of those exclusions deny Swinerton coverage because the underlying suit alleges property damage occurring after the project was completed and put to its intended use.

Fourth, Atlantic Casualty claims that it owes no duty to Swinerton because no exception to the Contractual Liability Exclusion applies. Fifth, Atlantic Casualty denies coverage under the Independent Contractors/Subcontractors Exclusion because Swinerton engaged subcontractors besides Cypress Industrial to work on the project. Finally, Atlantic Casualty maintains that it owes no duty to Swinerton under the Damage to Your Work Exclusion because Cypress Industrial had completed its work on the project before any of the damages alleged in the underlying suit occurred.

### B.     Swinerton's Contentions

Swinerton asserts ten reasons that Atlantic Casualty has not met its burden to show that the policy denies coverage, and Swinerton alleges that Atlantic Casualty must therefore defend and indemnify Swinerton in the underlying suit.  First, Swinerton claims that Atlantic Casualty has not shown that the policy's Classification Limitation denies coverage because Cypress Industrial's work on the project fits within the insured classification.  Second, Swinerton avers that Atlantic Casualty has not shown that the underlying suit fails to allege property damage caused by Cypress Industrial during the policy term.

Third, Swinerton claims that Atlantic Casualty has not shown that the Additional Insured Endorsement denies coverage because the underlying suit relates to Cypress Industrial's work and alleges property damage that includes concrete construction.  Fourth, Swinerton asserts that Atlantic Casualty has not shown that the Completed Operations Exclusion denies coverage because Atlantic Casualty has not stated when the property damage occurred or when Swinerton completed its work on the project.  Fifth, Swinerton alleges that Atlantic Casualty has not shown that the Intended Use Exclusion denies coverage because Atlantic Casualty does not state when the property damage occurred or when Cypress Industrial's work was put to its intended use.

Sixth, Swinerton maintains that Atlantic Casualty has not shown that the Contractual Liability Exclusion denies coverage because two exceptions to that exclusion apply.  Seventh, Swinerton asserts that Atlantic Casualty has not shown that the Texas Anti-Indemnity Statute denies coverage because Atlantic Casualty misinterprets the statute.  Eighth, Swinerton alleges that Atlantic Casualty has not shown that recent Texas case law denies coverage because Atlantic Casualty misinterprets that case law.

Ninth, Swinerton claims that Atlantic Casualty has not shown that the Independent Contractors/Subcontractors Exclusion denies coverage because that exclusion does not exclude the actions of either Cypress Industrial or Swinerton. Finally, Swinerton maintains that Atlantic Casualty has not shown that the Damage to Your Work Exclusion denies coverage because at least some of the damage alleged in the underlying suit may have been performed on Swinerton's behalf by its subcontractor Cyprus Industrial.

## IV.  Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d

1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## V. Analysis and Discussion

The Court denies Atlantic Casualty's motion for summary judgment because the Court determines that genuine issues of material fact remain in dispute. Specifically, Atlantic Casualty has not definitively shown whether the University's alleged damages implicate Cypress Industrial's concrete work and whether the alleged damages occurred during the policy term.

The parties do not dispute that Texas law applies, and Texas law generally endorses the eight-corners rule. "The eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from the terms of the policy and the pleadings of the third-party claimant. Resort to evidence outside the four corners of these two documents is generally prohibited." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006). "If the [claimant's] petition only alleges facts excluded by the policy, the insurer is not required to defend." *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982). When an insurer has no duty to defend, it also has no duty to indemnify because "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997) (italics omitted).

The Court considers whether Atlantic Casualty has a duty to defend Swinerton based on the four corners of the policy that Atlantic Casualty issued to Cypress Industrial and the four corners of the University's pleadings in the underlying suit. The Court holds that, based on these eight corners, Atlantic Casualty has not met its burden for summary judgment.

### A. The Four Corners of the Policy

Regarding the four corners of the policy, the same general rules that govern the interpretation of contracts govern the interpretation of insurance policies in Texas, and a policy

must be interpreted to effectuate the intent of the parties at the time the policy was formed. *See*, *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003); *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). Terms within an insurance contract are given "their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning." *Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 208-09 (Tex. App. – Houston [1st Dist.] 2003, pet. denied) (internal citation omitted).

If an insurance contract is worded such that it "can be given a definite or certain legal meaning, then it is not ambiguous" and is enforceable as written. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995) (internal citations omitted). Only if an insurance contract is susceptible to multiple reasonable interpretations must a court adopt the interpretation most favorable to the insured. *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520 (internal citations omitted). Nevertheless, the Court will not find a contract ambiguous merely because the parties offer contradictory interpretations. *See*, *Cent. States, Se. & Sw. Areas Pension Fund v. Creative Dev. Co.*, 232 F.3d 406, 414 n.28 (5th Cir. 2000) (quoting *Wards Co. v. Stamford Ridgeway Assocs.*, 761 F.2d 117, 120 (2d Cir. 1985) (internal quotation marks and citation omitted)) ("A Court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings."); *see also*, *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998).

"The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy" that permit the insurer to deny coverage. *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998)

(citing *Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506, 507 (Tex. Civ. App. – San Antonio 1994, writ denied); *see also*, *Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex. App. – Fort Worth 2003, pet. denied) (stating that the Texas Insurance Code places the burden on the insurer to prove any exception to coverage). Once the insurer has established that an exclusion applies, the burden shifts to the insured to prove that an exception to the exclusion applies. *Guar. Nat'l Ins. Co.*, 143 F.3d at 193 (internal citation omitted).

With these principles in mind, the Court turns to the relevant policy language. Under the policy's Additional Insured Endorsement, Swinerton is an additional insured "with respect to liability arising out of [Cypress Industrial's] ongoing operations performed for [Swinerton]." (Docket Entry 69-2, ACIC App. 0034, 0048). Therefore, Swinerton is *prima facie* covered under the policy to the same extent as Cypress Industrial, unless Atlantic Casualty can show that some exclusion or limitation precludes Swinerton's coverage.

### B. The Four Corners of the University's Pleadings in the Underlying Suit

Atlantic Casualty has not met its burden of showing that, as a matter of law, the four corners of the University's pleadings in the underlying suit relieve Atlantic Casualty of liability to Swinerton. In the underlying suit, the University is suing HOK and Swinerton for damages arising from the allegedly defective design and construction of the project. Swinerton hired Cypress Industrial as a subcontractor on that project. Swinerton is *prima facie* insured by Atlantic Casualty for Cypress Industrial's work on the project, as determined above in Section **V.A.** of this memorandum. In this Section, applying the four corners of the policy to the four corners of the University's pleadings, factual issues remain as to whether any exception or exclusion to the policy allows Atlantic Casualty to deny Swinerton that *prima facie* coverage. Specifically, factual issues remain concerning whether Cypress Industrial's concrete work met

the prescribed standard. Also, there are factual issues concerning the policy term, the policy's Contractual Liability Exclusion and the applicability of the Texas Anti-Indemnity Statute.

### 1. Cypress Industrial's Concrete Work

Atlantic Casualty has not shown that it may deny Swinerton coverage because Atlantic Casualty has not shown that Cypress Industrial's concrete work was irrelevant to the damages alleged in the underlying suit. The record is unclear whether the damages alleged in the underlying suit implicate Cypress Industrial's work on the project, and therefore a disputed material fact remains outstanding. The record contains the first page of the contract between Swinerton and Cypress Industrial, and that page refers to other documents concerning "stained finished concrete."[4] However, the parties have not detailed the extent to which Cypress Industrial's work performed according to that contract could affect the structural integrity of the concrete.

The University's pleadings in the underlying suit allege both that "[t]he concrete slab that supports the emergency generator is shifting and settling," and that "[t]he water feature was not properly waterproofed. The epoxy coating bubbled up and separated from the concrete." It is unclear whether, for example, the "epoxy coating [that] bubbled up" was the fault of Cypress Industrial or another subcontractor. Without resolution of that fact, it is impossible for the Court to determine whether Cypress Industrial's work affected or caused damage to the concrete. Accordingly, Atlantic Casualty's arguments concerning the policy's Classification Limitation and Damage to Your Work Exclusion, both fail.

---

[4] Technically, this contract is outside of the eight-corners rule. However, as the Southern District of Texas has noted, "[s]everal Texas appellate courts have recognized a limited exception to the [eight-corners] rule, to allow parties to introduce extrinsic evidence when the petition in the underlying lawsuit does not allege facts sufficient for a determination of whether those facts, even if true, are covered by the policy." *Roberts, Taylor & Sensabaugh, Inc. v. Lexington Ins. Co.*, No. H-06-2197, 2007 WL 2592748, at *3 (S.D. Tex. Sept. 5, 2007) (internal quotations omitted) (quoting *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 452 (Tex. App. – Corpus Christi 1992, writ denied)).

The policy's Classification Limitation specifies that Atlantic Casualty's coverage does not extend to "'property damage' . . . for operations which are not classified or shown on the Commercial General Liability Coverage Declarations, its endorsements or supplements." Although the policy's "business description" of Cypress Industrial was "installs decorative layer to existing concrete," its "classification" of Cypress Industrial was "concrete construction." The policy's classification of Cypress Industrial's business as "concrete construction" relates to the property damage alleged in the four corners of the University's pleadings in the underlying suit, as quoted in the preceding paragraph.

Atlantic Casualty's argument for summary judgment based on the Damage to Your Work Exclusion also fails. The relevant policy provision excludes coverage for:

> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."[5]
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

(Docket Entry No. 69-2, ACIC App. 0020). Atlantic Casualty incorrectly argues that this exclusion applies as a matter of law because any damage to Cypress Industrial's work was caused after Cypress Industrial's work was completed. The Court determines that this exclusion does not apply because, as indicated above in this same section, it is unclear whether Cyprus Industrial itself caused some of the concrete-related damages alleged in the underlying suit. Further, as indicated below in Section **V.B.2.** of this memorandum, it is unclear whether the University sustained any damages from Cypress Industrial before Cypress Industrial completed its work on the project. Whether Cypress Industrial's work (rather than that of a different

---

[5] In pertinent part, the "'[p]roperty-completed operations hazard . . . [i]ncludes all . . . 'property damage' . . . arising out of 'your work' except . . . [p]roducts that are still in your physical possession; or . . . [w]ork that has not yet been completed . . . [w]ork that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed." (Docket Entry No. 69-2, ACIC 0030).

subcontractor or a later actor) contributed to the University's alleged damages is an issue of fact. The University's alleged property damage could have been caused, in part, by Cypress Industrial's work, and thus the Court denies summary judgment on this issue.

### 2. The Policy Term

The Court determines that summary judgment is inappropriate based on Atlantic Casualty's policy term argument, as well. Coverage is triggered under a commercial general liability policy only when the underlying suit alleges property damage that occurred during the relevant policy term. *See, Don's Building Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 31 (Tex. 2008) ("[T]he insurer's duty to defend [the insured] depends on whether the homeowner's pleading alleges property damage that occurred during the policy term.") The Court should "[c]onstru[e] the petitions liberally and resolv[e] all doubts in favor of coverage." *Mid-Continent Cas. Co. v. Academy Development, Inc.*, Civ. No. H-08-21, 2010 WL 3489355, at *7 (S.D. Tex. August 24, 2010)[6] (citing *Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010) ("An insurer must defend its insured if a plaintiff's factual allegations potentially support a covered claim.") (quoting *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490-91 (Tex. 2008)).

The policy was in effect from September 24, 2003 to September 24, 2004. The policy covers "'property damage'" if it was "caused by an 'occurrence' that [took] place in the 'coverage territory' . . . during the policy period." The University's pleadings in the underlying suit contain no dates of alleged actual harm. However, the pleadings do allege that Swinerton hired an independent inspector who averred on April 29, 2005, that Swinerton had "full knowledge of the building's problems for years." It is ambiguous whether "for years" reasonably

---

[6] Even Atlantic Casualty cited to an earlier decision of the *Mid-Continent Cas. Co.* case. *See* [Docket Entry No. 69, p. 12] (citing *Mid-Continent Cas. Co. v. Academy Development, Inc.*, Civ. No. H-08-21, 2010 WL 1169950 (S.D. Tex. March 24, 2010) (vacated and superseded).

includes the policy term. *Id.* To the extent there is an ambiguity, it should be construed against Atlantic Casualty and in favor of Swinerton. *See, Mid-Continent Cas. Co.*, 2010 WL 3489355, at *7; *see also*, *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). Thus, the Court denies summary judgment based on Atlantic Casualty's policy term argument.

Because the Court determines that the policy could have been in effect when the alleged damages occurred in the underlying suit, Atlantic Casualty's arguments concerning the Completed Operations[7] and Intended Use[8] Exclusions to the Additional Insured Endorsement and the Independent Contractors/Subcontractors Exclusion also fail. Atlantic Casualty's arguments concerning the Completed Operations and Intended Use exclusions presuppose that the University's alleged damages in the underlying suit did not occur during the policy term. But, due to the policy term ambiguity, the Court denies summary judgment based on either of those exclusions. Likewise, the Court denies summary judgment based on the Independent Contractors/Subcontractors Exclusion.[9] It is unclear whether the University's alleged damages were due in part to Cypress Industrial's work during the policy term or to other subcontractors or actors.[10]

### 3. Contractual Liability

The Court also denies summary judgment based upon the policy's Contractual Liability Exclusion. The relevant policy language excludes coverage for "'property damage' for which

---

[7] This provision excludes coverage for "'property damage' occurring after . . . [a]ll work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of [Swinerton] at the site of the covered operations has been completed." (Docket Entry 69-2, ACIC App. 0034, 0048).

[8] This provision excludes coverage for "'property damage' occurring after . . . [t]hat portion of [Cypress Industrial's] work out of which the . . . damage arises has been put to its intended use by any person other than another subcontractor engaged in performing operations for a principal as a part of the same project." (Docket Entry No. 69-2, ACIC App. 0034, 0048).

[9] "You or any insured are not covered for claims, loss, costs or expense arising out of the actions of independent contractors / subcontractors for or on behalf of any insured." Docket Entry No. 69-2, ACIC App. 0036).

[10] Further, the Court's analysis of the Damage to Your Work Exclusion applies to the Independent Contractors/Subcontractors Exclusion. *See*, Section **V.B.1.**, *supra*.

[Cypress Industrial] is obligated to pay damages by reason of the assumption of liability in a contract or agreement." But this exclusion has two relevant exceptions. Namely, this exclusion "does not apply to liability for damages . . . [t]hat [Cypress Industrial] would have in the absence of the contract or agreement . . . [or that are] [a]ssumed in a contract or agreement that is an 'insured contract.'"[11] (Docket Entry 69-2, ACIC 0016).

Both of these exceptions to the Contractual Liability Exclusion apply here. First, in the absence of Cypress Industrial's contract with Swinerton, Cypress Industrial would be liable to the University for Cypress Industrial's work on the project for any liability it incurred relative to the alleged damages in the underlying suit. Second, the Cypress-Swinerton contract is an "insured contract" in which Cyprus Industrial agreed to assume Swinerton's tort liability with respect to Cypress Industrial's work. It would be nonsensical to interpret their contractual relationship otherwise. The policy is a commercial general insurance policy in which Atlantic Casualty agreed to insure Cypress Industrial's work as a subcontractor for Swinerton on the University's project.

Atlantic Casualty attempts to bolster its position by appealing to "recent Texas Supreme Court case law," claiming that "there is no coverage for property damage when the only basis for liability is that the insured contractually agree to be responsible for the damage." (Atlantic Casualty's Summary Judgment Motion, Docket Entry No. 69, p. 22) (referring to, *Gilbert Texas Construction Company*, No. 08-0246, 2010 WL 2219645, at *1 (Tex. June 4, 2010)). However, the *Gilbert* case states that "[w]hen interpreting a contract, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be

---

[11] An "insured contract" is "[t]hat part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for . . . 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." (Docket Entry 69-2, ACIC App. 0028).

14 / 16

meaningless." *Gilbert Texas Construction*, 2010 WL 2219645, at *7 (quoting *MCI Telecomms. v. Texas Utilities Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)). To find as a matter of law that Atlantic Casualty has no contractual liability to Cypress Industrial – for precisely the coverage for which the parties contracted – would render the contract meaningless. The Court cannot permit such a result. *See, Gilbert Texas Construction L.P.*, at *7. Therefore, the Court denies summary judgment on the grounds explicated in this subsection.

### 4. The Texas Anti-Indemnity Statute

The Court denies summary judgment based on Atlantic Casualty's Texas Anti-Indemnity Statute argument, based on the same rationale set forth above concerning the Contractual Liability Exclusion. In relevant part, the Anti-Indemnity Statute provides:

> (b) Except as provided by Subsection (c), a covenant, promise, or agreement contained in a construction contract, or in an agreement collateral to or affecting a construction contract, is void and unenforceable to the extent that it indemnifies a person against all or any portion of loss or liability for damage that:
> (1) is caused by or results from the sole, joint, or concurrent negligence of the indemnitee, its agent, employee, or another independent contractor directly responsible to the indemnitee; and
> (2) arises from:
> . . .
> (b) property damage . . .
> (e) This section may not be waived by contract or otherwise.

Tex. Gov't Code § 2252.902 (West 2010). Atlantic Casualty cites to this statute in an attempt to blame Swinerton even though it agreed to provide coverage to Swinerton as an additional insured under the policy. Once again, Atlantic Casualty's argument would render the policy "meaningless." *See, Gilbert Texas Construction* at *7. Further, Atlantic Casualty's argument for summary judgment is not necessitated by the statutory language.[12] Given that this is the

---

[12] *See*, Stone, Roger W.; Stone, Jeffrey A. *Indemnity in Iowa Construction Law*. 54 Drake L. Rev. 125, 1676 (2005) ("Many states [including Texas, in its Anti-Indemnity Statute] have adopted statutes precluding indemnification for **one's own** negligence. These statues usually indicate that an indemnity provision is void and not enforceable if it

summary judgment stage, and given that the underlying suit is currently pending in state court, it is unclear who is liable and to whom. Therefore, while issues of fact remain disputed, it would be premature and inequitable to bar Swinerton from a possible right to a defense and/or indemnity.

This memorandum opinion and order addresses the claims of merely two of the several parties to the underlying suit. According to the Court's docket sheet, defendants, cross defendants, counter defendants, cross claimants and counter claimants abound. In light of the underlying suit's complexity, the Court is of the opinion that it should stay this case in its entirety, *sua sponte*, pending resolution of the underlying suit. A stay would promote judicial economy and prevent conflicting judgments. That being said, the Court invites counsel to state why the case should not be stayed pending resolution of the underlying suit.

## VI. Conclusion

Based on the foregoing discussion, the Court DENIES Atlantic Casualty's motion for summary judgment. Further, in light of the multiple parties, the numerous claims and the unresolved nature of the underlying suit, the Court invites counsel to state why the case should not be stayed pending resolution of the underlying suit.

It is so **ORDERED**.

SIGNED at Houston, Texas this 24th day of November, 2010.

_____
Kenneth M. Hoyt
United States District Judge

---

requires an indemnitor to indemnify an indemnitee for its own negligence or for the negligence of the indemnitee" (internal citations omitted) (emphasis added)).