# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| *Swinerton Builders,* § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **vs.** § | |
| § | |
| *Zurich American Insurance Company,* § | |
| *Travelers Insurance Company, ACE* § | |
| *American Insurance Company, Atlantic* § | |
| *Casualty, Continental Western Insurance* § | **CIVIL ACTION NO. 4:10-CV-01791** |
| *Company, Hartford Casualty Insurance* § | |
| *Company, ACEA American Insurance* § | |
| *Company and CNA Transportation* § | |
| *Insurance Company, St. Paul Mercury* § | |
| *Insurance Company & Amerisure Mutual* § | |
| *Insurance Company,* § | |
| § | |
| **Defendants.** § | |

## Plaintiff Swinerton Builders' Motion for Partial Summary Judgment Against Defendant Continental Western Insurance Co. on the Duty to Defend

Under FED. R. CIV. P. 56, Plaintiff Swinerton Builders ("Swinerton") is entitled to partial summary judgment against Defendant Continental Western Insurance Co. ("Continental Western") because Continental Western owes Swinerton a "duty to defend" under Policy No. TP 1790934-22 for the Policy Period of October 16, 2002, to October 16, 2003 (the "Policy").[1] As shown below, this duty to defend was triggered by Plaintiff University of Houston System's Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions in the Underlying Lawsuit.[2]

---

[1] This motion is a "partial" motion for summary judgment on the "duty to defend." If the court finds that a duty to defend exists, Swinerton may then file a "partial" motion for summary judgment on the amount of Swinerton's defense costs that ACE is responsible for. Swinerton is currently conducting discovery on this issue. Later, Swinerton may file another partial motion for summary judgment on the "duty to indemnify" to determine whether ACE owes Swinerton a duty to indemnify, and if so, how much ACE must pay to indemnify Swinerton.

[2] Exhibits A-E.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

I.     NATURE AND STAGE OF PROCEEDINGS ........................................................... 1

II.    SUMMARY OF THE ISSUES ................................................................................... 1

III.   SUMMARY OF ARGUMENT ................................................................................... 1

IV.    INTRODUCTION ....................................................................................................... 2

V.     STANDARD ................................................................................................................. 3

       A.     Motion for Summary Judgment ...................................................................... 3

       B.     Duty to Defend Under the Eight-Corners Rule .............................................. 4

VI.    ARGUMENT & AUTHORITIES .............................................................................. 5

       A.     The Policies Provide a "Duty to Defend" to Each Insured for Property
              Damage Caused by an Occurrence During the Policy Period ......................... 6

       B.     Swinerton Is an "Insured" Under the Policy .................................................. 7

       C.     The Underlying Lawsuit Seeks Damages for "Property Damage"
              Caused by an "Occurrence" Arising Out of Excel's Work for
              Swinerton ........................................................................................................ 7

       D.     The "Property Damage" Occurred During the Policy Period ......................... 13

VII.   CONCLUSION ........................................................................................................... 17

CERTIFICATE OF SERVICE ........................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*Adams v. Unione Mediterranea Di Sicurta,*
  220 F.3d 659 (5th Cir. 2000) ................................................................................................... 1

*Adickes v. S.H. Kress & Co.,*
  398 U.S. 144 (1970) ...................................................................................................................... 3

*Argonaut Sw. Ins. Co. v. Maupin,*
  500 S.W.2d 633 (Tex. 1973) ....................................................................................................... 4

*Boss Mgmt. Servs. v. Acceptance Ins. Co.,*
  2007 U.S. Dist. LEXIS 69666 (S.D. Tex. 2007) ................................................................... 13

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ...................................................................................................................... 3

*Colony Ins. Co. v. H.R.K., Inc.,*
  728 S.W.2d 848 (Tex. App.—Dallas 1987, no writ) ............................................................... 4

*Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.,*
  267 S.W.3d 20 (Tex. 2008) ...................................................................................................... 13

*Essex Ins. Co. v. Hines,*
  358 Fed. Appx. 596 (5th Cir. 2010) ........................................................................................ 5

*Farmers Tex. County Mut. Ins. Co. v. Griffin,*
  955 S.W.2d 81 (Tex. 1997) ......................................................................................................... 4

*Gehan Homes, Ltd. v.  Employers Mut. Cas. Co.,*
  146 S.W.3d 833 (Tex. App.—Dallas 2004, pet. denied) ................................................. 16, 17

*Gilbane Bldg. Co. v. Empire Steel Erectors, L.P.,*
  691 F. Supp. 2d 712 (S.D. Tex. 2010) ...................................................................................... 4

*Global Sun Pools, Inc. v. Burlington Ins. Co.,*
  2004 Tex. App. LEXIS 7552 (Tex. App.—Dallas Aug. 23, 2004, no pet.) ............................ 12

*Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.,*
  538 F.3d 365 (5th Cir. 2008) .............................................................................................. 5, 12

*GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,*
  197 S.W.3d 305 (Tex. 2006) ................................................................................................ 4, 13

*Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.,*
1 F.3d 365 (5th Cir. 1993)...........................................................................................4

*Harken Exploration Co. v. Sphere Drake Ins. P.L.C.,*
261 F.3d 466 (5th Cir. 2001)........................................................................................5

*Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,*
387 S.W.2d 22 (Tex. 1965)..................................................................................1, 5, 13

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.,*
242 S.W.3d 1 (Tex. 2007)..............................................................................................10

*Mid-Continent Cas. Co. v. Acad. Dev., Inc.,*
2010 U.S. Dist. LEXIS 28049 (S.D. Tex. Mar. 24, 2010).........................................15

*Mid-Continent Cas. Co. v. Acad. Dev., Inc.,*
2010 U.S. Dist. LEXIS 87637 (S.D. Tex. Aug. 24, 2010)....................................15, 16

*Nat'l Fire Ins. Co. v. Entm't Specialty Ins. Svcs.,*
485 F. Supp. 2d 737 (N.D. Tex. 2007) ..........................................................................4

*Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines,*
939 S.W.2d 139 (Tex. 1997) ...................................................................1, 4, 5, 11, 13

*Northfield Ins. Co. v. Loving Home Care, Inc.,*
363 F.3d 523 (5th Cir. 2004)......................................................................................13

*Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.,*
592 F.3d 687 (5th Cir. 2010).................................................................................4, 16

*Williams Consol. I, Ltd. v. TIG Ins. Co.,*
230 S.W.3d 895 (Tex. App.—Houston [14[th] Dist.] 2007, no pet.)..................13, 16, 17

*Zurich Am. Ins. Co. v. Nokia, Inc.,*
268 S.W.3d 487 (Tex. 2008) ..................................................................................4, 5, 16

**Federal Rules**

FED. R. CIV. P. 56....................................................................................................i, 3

# I.     NATURE & STAGE OF PROCEEDINGS

In this insurance-coverage dispute, Swinerton seeks a declaratory judgment that it is entitled to defense and indemnity from several insurance companies, including Continental Western. On May 18, 2010, Swinerton filed an Original Complaint for Declaratory Judgment (Docket Entry No. 1), and on October 6, 2010, filed a Third Amended Complaint (Docket Entry No. 79). The parties have served their Initial Disclosures (Docket Entry Nos. 56-58, 60-62, 65), and the Court has entered a Scheduling Order (Docket Entry No. 59).

# II.     SUMMARY OF THE ISSUES

1.  Whether Continental Western owes Swinerton a duty to defend under Policy No. TP 1790934-22 for the Policy Period of October 16, 2002, to October 16, 2003?

2.  Whether a duty to defend was triggered by the University's Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions in the Underlying Lawsuit?

The standard of review when interpreting an insurance policy is *de novo*. *See Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 677 (5th Cir. 2000).

# III.     SUMMARY OF ARGUMENT

Continental Western owes Swinerton a duty to defend because the Policy[3] "potentially" provides coverage to Swinerton for the claims in the Underlying Lawsuit. Under Texas's eight-corners rule, an insurer owes a duty to defend if a lawsuit "potentially" includes a covered claim.[4] The Policy provides a "duty to defend" to each "additional insured" [i.e., Swinerton] who is sued in a "suit" seeking damages because of "property damage" caused by an "occurrence" arising out of the insured's [i.e., Excel's] work for that "additional insured" during

---

[3] Exhibit F, 2002-03 Policy.
[4] *See, e.g., Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997) (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).

the policy period.[5]  As shown below, Swinerton is an Insured under the Policy; the Underlying

Lawsuit seeks damages because of "property damage" caused by an "occurrence" arising out of

Excel's work for Swinerton; the property damage "potentially" occurred during the three Policy

Periods; and a duty to defend was triggered by the University's Original, First Amended, Second

Amended, Third Amended, and Fourth Amended Petitions in the Underlying Lawsuit.

## IV.    INTRODUCTION

In 2002, the University of Houston System ("University") contracted with the

architectural firm of Hellmuth, Obata + Kassabaum, L.P. ("HOK") to design a Student Services

Building ("SSB") at the University of Houston-Clear Lake (the "Project").   In 2002, the

University also contracted with Swinerton to be the general contractor for the Project.  Swinerton

then subcontracted with several subcontractors, including Excel Plumbing, Inc. ("Excel"), related

to the Project.  Excel's scope of work included installing plumbing at the Project.[6]  Swinerton's

subcontract with Excel was executed on March 27, 2003.[7]  As required by the subcontract, Excel

named Swinerton as an additional insured under its CGL Policy with Continental Western.[8]

In 2006, the University sued Swinerton and HOK related to the Project in *University of*

*Houston System v. Swinerton Builders, et al.*, Cause No. 2006-76157, in the 334th Judicial

District Court of Harris County, Texas (the "Underlying Lawsuit").  The University claimed that

---

[5] *See infra*, § VI.A.1, pp. 6-7.

[6] *See, e.g.,* Exhibit G, Subcontract between Swinerton & Excel (Redacted).   Attachment "C" of the Subcontract states that Excel shall "Furnish and install all **Plumbing** work including . . . 5.  All plumbing piping, fixtures, trim, fixture earners, piping insulation, pipe hangers, roof drains, lead flashings, floor drains, water hammer arrestors, electric water heaters, pumps, clean outs, sump pits and pumps, storm drain piping, domestic water piping, hot water circulation systems, valves, PRY's, backflow preventors, subsurface drainage systems and other appurtenances as required for complete and operational Plumbing Systems. . . . [and] 13.  Waterproofing for penetrations made after waterproofing or roofing has been applied.  Subcontractor shall grout, pack or otherwise suitably prepare its penetrations to receive scheduled waterproofing or roofing, including providing any pitch pockets or counter flashing required for any its penetrations or supports."  SWIN App. 000257 & 000258 (emphasis in original); Exhibit J, Affidavit of Keith Schnell, SWIN App. 000401-000402.

[7] *Id.*

[8] Exhibit G, Subcontract between Swinerton & Excel; Exhibit H, Certificate of Liability Insurance (dated 6/18/03).

the SSB leaks, and asserted breach-of-contract, breach-of-warranty, negligence, and breach-of-fiduciary-duty claims against Swinerton.[9] The University filed Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions.[10] In April 2011, the Underlying Lawsuit settled and the parties entered an agreed motion to dismiss all claims.

Shortly after the University filed suit in 2006, Swinerton made a defense-and-indemnity demand to Continental Western as an additional insured under Excel's Policy. Continental Western did not respond to this demand. Swinerton made additional defense-and-indemnity demands to Continental Western on June 11, 2008,[11] January 16, 2009,[12] and September 15, 2009.[13] Finally, on December 31, 2009, Continental Western denied Swinerton's demand.[14]

As explained below, Swinerton is entitled to a declaration that Continental Western owes Swinerton a duty to defend.

## V.      STANDARD

### A.      Motion for Summary Judgment

Under FED. R. CIV. P. 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden to show the absence of a genuine issue of material fact, and the evidence is viewed in the light most favorable to the opposing party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

---

[9] *See, e.g.*, note 10.
[10] Exhibit A, University's Original Petition, filed November 28, 2006; Exhibit B, University's First Amended Petition, filed October 26, 2007; Exhibit C, University's Second Amended Petition, filed November 2, 2009; Exhibit D, University's Third Amended Petition, filed May 21, 2010; Exhibit E, University's Fourth Amended Petition, filed December 2, 2010.
[11] Docket Entry No. 1, Exhibit 11, Letter from James Parker.
[12] Docket Entry No. 1, Exhibit 13, Letter from James Parker.
[13] Docket Entry No. 1, Exhibit 14, Letter from Joshua Mermis.
[14] Docket Entry No. 1, Exhibit 19, Letter from Dan Duvall to Joshua Mermis, p. 3.

B.     Duty to Defend Under the Eight-Corners Rule

An insurer's duty to defend under Texas law is determined by the eight-corners rule, under which "only two documents are ordinarily relevant . . . : the policy and the pleadings of the [underlying lawsuit]." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006); *see also Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490-91 (Tex. 2008); *Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010). In performing an eight-corners analysis, a court compares the allegations in the underlying lawsuit's petition to the terms of the policy, without reference to the truth or falsity of the allegations, and without reference to what the parties know or believe the true facts to be. *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973); *Colony Ins. Co. v. H.R.K., Inc.*, 728 S.W.2d 848, 850 (Tex. App.—Dallas 1987, no writ); *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993). The focus is on the factual allegations rather than the legal theories asserted. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997); *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997). "The court may draw inferences from the petition that may lead to a finding of coverage. An inference is a fact or proposition drawn from an admitted or otherwise proven fact." *Gilbane Bldg. Co. v. Empire Steel Erectors, L.P.*, 691 F. Supp. 2d 712, 724 (S.D. Tex. 2010) (citation and quotation omitted).

"Under the eight-corners rule, the initial burden lies with the insured to demonstrate that the claims levied against it **potentially** fall within the insurance policy's scope of coverage." *Nat'l Fire Ins. Co. v. Entm't Specialty Ins. Svcs.*, 485 F. Supp. 2d 737, 740-41 (N.D. Tex. 2007) (citing *Merchs.*, 939 S.W.2d at 141) (bold emphasis added). An insurer, however, may establish that an exclusion to coverage applies. If an insurer demonstrates that an exclusion applies, the burden shifts back to the insured to show either that the claim does not fall within the exclusion

or that it comes within an exception to the exclusion. *Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 471 (5th Cir. 2001). If a complaint *potentially* includes a covered claim, the insurer must defend the entire suit, even if not all claims are covered. *See Zurich*, 268 S.W.3d at 491 (Tex. 2008).

An insurer owes a duty to defend if the underlying complaint *potentially* states a claim for coverage under the policy. *Merchs.*, 939 S.W.2d at 141. All doubts regarding the duty to defend are to be resolved in favor of the insured. *Id.* (citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). As the Texas Supreme Court has explained:

> Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, *potentially*, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.[15]

And the Fifth Circuit has repeatedly emphasized: "When in doubt, defend."[16]

## VI.     ARGUMENT & AUTHORITIES

Swinerton is entitled to partial summary judgment because Continental Western owes Swinerton a duty to defend under Policy No. TP 1790934-22 for the Policy Period of October 16, 2002, to October 16, 2003. As explained below, the Policy "potentially" provides coverage to Swinerton for the claims in the Underlying Lawsuit, and a duty to defend was triggered by the University's Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions in the Underlying Lawsuit.

---

[15] *Merchs.*, 939 S.W.2d at 141 (Tex. 1997) (quoting *Heyden*, 387 S.W.2d at 26) (emphasis added).
[16] *Essex Ins. Co. v. Hines*, 358 Fed. Appx. 596, 596-97 (5th Cir. 2010) (quoting *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008)).

**A.**     The Policies Provide a "Duty to Defend" to Each Insured for Property Damage Caused by an Occurrence During the Policy Period.

Each Policy provides a "duty to defend" to each insured who is sued in a "suit" seeking damages because of "property damage" caused by an "occurrence" during the policy period. Specifically, each Policy states:[17]

### 1. Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or *"property damage"* to which this insurance applies. *We will have the right and duty to defend the insured against any "suit" seeking those damages.* However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1)     The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

\*          \*          \*

b.     This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or *"property damage" is caused by an "occurrence"* that takes place in the "coverage territory";

(2)     The "bodily injury" or *"property damage" occurs during the policy period*; . . .

As explained below, (1) Swinerton is an "insured" under each Policy; (2) the Underlying Lawsuit seeks damages because of "property damage" caused by an "occurrence" arising out of

---

[17] Exhibit F, 2002-03 Policy, SWIN App. 000154 (emphasis added).

Excel's work for Swinerton; and (3) the alleged property damage "potentially" occurred during the three Policy Periods.

B.    Swinerton Is an "Insured" Under the Policy.

Swinerton is an "insured" under the Policy. Specifically, Swinerton is an additional insured under the Policy's Additional Insured Endorsement CG 20 10 03 97, which states:

**SCHEDULE**[18]

**Name of Person or Organization:**

\*        \*        \*

Swinerton Builders
55 Waugh Drive, Ste 1200
Houston, TX  77007
Applies To: SWINERTON BUILDERS

\*        \*        \*

**Who Is an Insured (Section II)** is amended to include as an insured the person organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

So Swinerton is an additional insured under this endorsement "with respect to liability arising out of [Excel's] ongoing operations performed for [Swinerton]."

C.    The Underlying Lawsuit Seeks Damages for "Property Damage" Caused by an "Occurrence" Arising Out of Excel's Work for Swinerton.

The Underlying Lawsuit seeks damages for "Property Damage" caused by an "Occurrence" arising out of Excel's work for Swinerton.

1.    The Underlying Lawsuit Seeks Damages for "Property Damage" Caused by an "Occurrence."

The Underlying Lawsuit seeks damages for "Property Damage" caused by an "Occurrence." These terms are defined as:

---

[18] Exhibit F, 2002-03 Policy, SWIN App. 000147 (emphasis in original).

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[19]

\* \* \*

17. "Property damage" means:[20]

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Several "Occurrences" are alleged in the Underlying Lawsuit. For example, in its Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions, the University alleges the following construction-defect-related Accidents and Occurrences:

- "significant design and construction problems";[21]

- "the metal panel cladding that Defendants improperly designed and constructed . . .";[22]

- "Defendants improperly designed and constructed the integration of dissimilar building materials on the building envelope . . .";[23]

- Defendants "have not properly repaired the leaks";[24]

- The failure to properly correct and repair "the defects and deficiencies";[25]

- "problems with the design and construction of the building envelope";[26]

---

[19] Exhibit F, 2002-03 Policy, SWIN App. 000167.
[20] *Id.*
[21] Exhibits A-E, ¶ 10, p. 3.
[22] Exhibits A-B, ¶ 10, p. 3.
[23] Exhibits C-E, ¶ 10, p. 3.
[24] Exhibit C, ¶ 10, p. 3; Exhibits D-E, ¶ 11, p. 3.
[25] Exhibits D-E, ¶ 12, p. 4.

- "problems with the building envelope";[27]

- "significant design and construction problems with the building and building envelope";[28] and

- several installation issues with the roof, including "lack of flashing, improper attachment of lightning rods, sleepers, and cables to the roof, improper patches and lapping of the roofing membrane, inadequate drainage that has led to ponding on the roof, the improper use of a modified composite metal panel instead of properly fabricated sheet metal coping, and poor installation of scuppers."[29]

These "Occurrences" are alleged to have caused "Property Damage." For example, in its Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions, the University alleges that the construction defects caused the following "physical injury to tangible property":

- "significant and continuous water infiltration into the building";[30]

- "significant and continuous water infiltration into the building, which has damaged other parts of the building";[31]

- "During most rain events the building leaks. Cleaning crews have to be dispatched throughout the building to mop up rain water and try to block the infiltrating water with towels";[32]

- "water filtration problems" and "the building's leak problems";[33]

- the "metal panel system needs to be removed, re-designed and replaced";[34]

---

[26] Exhibit C, ¶ 12, p. 4; Exhibits D-E, ¶ 13, p. 4.
[27] Exhibit C, ¶ 13, p. 4; Exhibit D, ¶ 14, p. 5.
[28] Exhibit E, ¶ 14, p. 5.
[29] Exhibit B, ¶ 17, p. 6; Exhibit C, ¶ 25, p. 7; Exhibit D, ¶ 26, p. 7; Exhibit E, ¶ 29, pp. 8-9.
[30] Exhibit A, ¶ 10, p. 3.
[31] Exhibits B-E, ¶ 10, p. 3.
[32] Exhibit C, ¶ 10, p. 3; Exhibit D, ¶ 11, p. 3; Exhibit E, ¶ 11, p. 3.
[33] Exhibit C, ¶ 11, p. 4; Exhibits D-E, ¶ 12, p. 4.
[34] Exhibits A- B, ¶ 15, p. 5; Exhibit C, ¶ 13, p. 4; Exhibits D-E, ¶ 14, p. 5.

- "water intrusion";[35]

- "leaky building";[36]

- "killed many mature trees";[37]

- "ponding on the roof";[38] and

- other construction problems related to the security system, ADA/TAS compliance, handrail system on the walkways, concrete, drainage, utility lines, doors, waterproofing, and elevators.[39]

These construction-defect allegations constitute "Property Damage" and "Occurrences" under Texas law. In *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1 (Tex. 2007), the court held that "allegations of unintended construction defects may constitute an 'accident' or 'occurrence' . . . and that allegations of damage to or loss of use of the home itself may also constitute 'property damage.'"[40] The construction defects were "Accidents" and "Occurrences" because they were "unexpected, unforeseen, or undesigned happening[s] or consequence[s]."[41] The "cracking sheetrock and stone veneer [were Property Damage because they were] 'physical injury' to 'tangible property.'"[42] The terms "Property Damage" and "Occurrence" were defined the same in the *Lamar Homes* policy as they are in the Continental Western Policy here.

---

[35] Exhibit A, ¶ 16, p. 5; Exhibit B, ¶ 16, p. 6; Exhibit C, ¶ 14, p. 5; Exhibit D, ¶ 15, p. 5; Exhibit E, ¶ 17, p. 6.

[36] Exhibit C, ¶ 14, p. 5; Exhibit D, ¶ 15, p. 5; Exhibit E, ¶ 18, p. 6.

[37] Exhibit E, ¶ 22, p. 7.

[38] Exhibit B, ¶ 17, p. 6; Exhibit C, ¶ 25, p. 7; Exhibit D, ¶ 26, p. 7; Exhibit E, ¶ 29, pp. 8-9.

[39] Exhibit C, ¶¶ 15-24, pp. 5-7; Exhibit D, ¶¶ 16-25, pp. 6-7; Exhibit E, ¶ 20-30, pp. 6-9.

[40] 242 S.W.3d at 4.

[41] *See id.* at 9-16.

[42] *Id.* at 10.

2. <u>The Underlying Lawsuit's Allegations Arise Out of Excel's Work for Swinerton</u>.

The Underlying Lawsuit's allegations directly -- much more than the required "potentially"[43] -- arise out of Excel's work for Swinerton. In fact, the University's Fourth Amended Petition specifically names Excel and its work:

> The ramp at the back of the lecture hall has inadequate drainage. During substantial rainstorms, water has backed up and floods the lecture hall through the back door causing sections of the flooring to lift from the slab and float away. This problem results from: HOK's improper coordination of the placement and design of this drain, improper installation by Swinerton's subcontractor, **Excel Plumbing, Inc**., and inadequate supervision by Swinerton. **Excel Plumbing** not only installed the wrong drain, but the line connected to the drain also has a negative slope, preventing the water from flowing away from the building as intended.[44]

Similarly, the University's Original, First Amended, Second Amended, and Third Amended Petitions (as well as other portions of the Fourth Amended Petition) specifically implicate Excel's plumbing-related work for Swinerton. For example, these petitions state:

- "Proper **drainage** was not provided at the sidewalks causing flooding problems. Utility lines and **drains** that traverse a utility tunnel under the new building are deflecting, indicating potential serious problems."[45]

- "The ramp at the back of the lecture hall has inadequate **drainage**. During any substantial rainstorm, water backs up and floods the lecture hall through the back door causing sections of the flooring to lift away from the slab and float away."[46]

- "The University has recently learned that there are also several installation issues with the roof at the Project.

---

[43] *See Merchs.*, 939 S.W.2d at 141.
[44] Exhibit E, ¶ 21, p. 7 (emphasis added).
[45] Exhibit A, ¶ 11, pp. 3-4 (emphasis added); Exhibit B, ¶ 11, p. 4 (emphasis added); Exhibits C-D, ¶¶ 19-20, p. 6 (emphasis added).
[46] Exhibits A-B, ¶ 11, p. 4 (emphasis added); Exhibit C, ¶ 23, p. 6 (emphasis added); Exhibit D, ¶ 24, p. 7 (emphasis added).

These issues include... inadequate **drainage** that has led to ponding on the roof..."[47]

i     "Proper **drainage** also was not provided at the sidewalks, causing further flooding problems. Defendants' failure to plan for and construct proper site drainage also killed many mature trees at the building that the University had to pay to remove and will have to pay to replace."[48]

i     "Utility lines and **drains** that traverse a utility tunnel under the new building are deflecting, indicating potential serious problems. These **pipes** were not sleeved by Swinerton as required by the design documents and the stress on the **pipes** has been caused by settling dirt outside the tunnel walls due to improper compaction by Swinerton."[49]

i     "The roof at the Project also has several construction installation issues. These issues include... inadequate **drainage** that has led to ponding on the roof..."[50]

Texas law does not require that the petition specifically name the subcontractor, as long as the subcontractor's work is implicated. The Fifth Circuit, following Texas law, has stated:

> This case is similar to a case decided by the Dallas Court of Appeals. *Global Sun Pools, Inc. v. Burlington Ins. Co.*, No. 05-03-00765-CV, 2004 Tex. App. LEXIS 7552 (Tex. App.—Dallas Aug. 23, 2004, no pet.). In that case, Global built a pool for the Reeds. They sued, alleging that Global sent "its builders to construct the pool and deck" and that, as a result of faulty workmanship, Mrs. Reed was injured when the deck railing collapsed. *Id.* at *2. **The actual builder of the pool, Paul Simmons, was not named in the petition.** He had a policy of insurance naming Global as an additional insured and listing his business as installing pools. **The court held that, construing the term "its builders" liberally, the petition stated a claim that was potentially within Simmons' policy coverage, although it did not name Simmons.** *Id.* at *6. Accordingly, the court found that the insurance company had a duty to defend Global.[51]

---

[47] Exhibit B, ¶ 17, p. 6 (emphasis added); Exhibit C, ¶ 25, p. 7 (emphasis added); Exhibit D, ¶ 26, p. 7 (emphasis added).

[48] Exhibit E, ¶ 22, p. 7 (emphasis added).

[49] Exhibit E, ¶ 27, p. 8 (emphasis added).

[50] Exhibit E, ¶ 29, pp. 8-9.

[51] *Gore*, 538 F.3d at 369-70 (citing *Global Sun Pools, Inc. v. Burlington Ins. Co.*, 2004 Tex. App. LEXIS 7552 (Tex. App.—Dallas Aug. 23, 2004, no pet.) (bold emphasis added).

### 3. The Underlying Lawsuit's Allegations are Covered Under the Policy.

The Underlying Lawsuit's allegations are covered under the Policy. The Policy's Declarations pages stated that Excel's "Business Description" was "COMMERCIAL PLUMBING CONTRACTING."[52] The University's allegations -- which include plumbing-related problems -- fall under the scope of "COMMERCIAL PLUMBING CONTRACTING." *See supra*, § VI.C.2.

### D. The "Property Damage" Occurred During the Policy Period.

Finally, the alleged Property Damage "potentially" occurred during the Policy Period. The Policy applies if the "'property damage' occurs during the policy period."[53] Interpreting a similar policy, the Texas Supreme Court held that property damage "occurred when actual physical damage to the property occurred."[54] "An insurer must defend a lawsuit, even when the stated facts are insufficient to bring the case clearly within or without coverage, if coverage is *potentially* implicated."[55] This is because "courts are to read the pleadings liberally and to resolve all doubts in favor of the insured. The burden should not be on the insured to show that the underlying allegations claimed damage that conclusively occurred within the policy period."[56]

---

[52] Exhibit F, 2002-03 Policy, SWIN App. 000096, 000109, 000176.

Attachment "C" of the Subcontract states that Excel shall "Furnish and install all **Plumbing** work including . . . 5. All plumbing piping, fixtures, trim, fixture earners, piping insulation, pipe hangers, roof drains, lead flashings, floor drains, water hammer arrestors, electric water heaters, pumps, clean outs, sump pits and pumps, storm drain piping, domestic water piping, hot water circulation systems, valves, PRY's, backflow preventors, subsurface drainage systems and other appurtenances as required for complete and operational Plumbing Systems. . . . [and] 13. Waterproofing for penetrations made after waterproofing or roofing has been applied. Subcontractor shall grout, pack or otherwise suitably prepare its penetrations to receive scheduled waterproofing or roofing, including providing any pitch pockets or counter flashing required for any its penetrations or supports." SWIN App. 000257 & 000258 (emphasis in original).

[53] Exhibit F, 2002-03 Policy, SWIN App. 000154, § I.1.b.(2).

[54] *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 24 (Tex. 2008).

[55] *Boss Mgmt. Servs. v. Acceptance Ins. Co.*, 2007 U.S. Dist. LEXIS 69666, *40 n.68 (S.D. Tex. 2007) (citing *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004)) (emphasis in original); *see also GuideOne*, 197 S.W.3d at 309; *Merchs.*, 939 S.W.2d at 141(quoting *Heyden*, 387 S.W.2d at 26); *Williams Consol. I, Ltd. v. TIG Ins. Co.*, 230 S.W.3d 895, 905-06 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

[56] *Boss*, 2007 U.S. Dist. LEXIS 69666 at*40 n.68 (citations omitted).

Here, the allegations in the Underlying Lawsuit show that the property damage "potentially" occurred between June 14, 2002, and April 29, 2005, and after April 29, 2005. The University's Original and First Amended Petitions allege that property damage occurred between June 14, 2002, and April 29, 2005.

i "On or about June 14, 2002, the University entered into a Construction Manager-at-Risk Agreement with Swinerton pursuant to which Swinerton, as the Project construction manager, agreed to provide the University pre-construction phase services and construction phase services for the construction of the Project."[57]

i "The Project has significant design and construction problems . . ."[58]

i Swinerton had "full knowledge of the building's problems" when it hired an independent inspector on "April 29, 2005."[59]

"Between June 14, 2002, and April 29, 2005" reasonably includes the Policy Period of October 16, 2002, to October 16, 2003. Therefore, the University's Original and First Amended Petitions trigger coverage for the Policy Period of October 16, 2002, to October 16, 2003.

Similarly, the University's Second, Third, and Fourth Amended Petitions allege that property damage occurred before and after April 29, 2005, and is continuing.

i "The University . . . entered into a Construction Manager-at-Risk Agreement with Swinerton . . ."[60]

i "The Project has significant design and construction problems . . ."[61]

i Swinerton had "full knowledge of the building's problems" when it hired an independent inspector on "April 29, 2005."[62]

---

[57] Exhibits A-B, ¶ 9, pp. 2-3.
[58] Exhibits A-B, ¶ 10, p. 3.
[59] Exhibits A-B, ¶ 13, p. 4.
[60] Exhibits C-E, ¶ 9, p. 2.
[61] Exhibit C-E, ¶ 10, p. 3.

i "[T]he water infiltration problems at the Project persisted, and persist to this day."[63]

i "The leaks occurred throughout the Project and a new leak recently appeared at the health center in Room 1.301.17 in early February, 2010."[64]

i "The leaks occurred throughout the Project. A new leak manifested inside the health center in Room 1.301.17 in early February, 2010, and another new leak manifested inside the computer lab in the piano-shaped building in July, 2010."[65]

"Before and after April 29, 2005" reasonably includes the Policy Period of October 16, 2002, to October 16, 2003. So the allegations in the University's Second, Third, and Fourth Amended Petitions trigger coverage for the Policy Period of October 16, 2002, to October 16, 2003.

Swinerton is not required to pinpoint the exact dates when the alleged property damage occurred. A recent case from the Southern District of Texas -- *Mid-Continent Casualty Co. v. Academy Development, Inc.* -- is instructive. On March 24, 2010, Judge Gray Miller erroneously held that no duty to defend existed, stating that

> it is not apparent from the face of the Budiman plaintiffs' petitions when the lakes were damaged . . . Without evidence of when the lakes were damaged, Academy has not carried its burden to show that the property damage occurred during the policy period. The duty to defend, therefore, is not triggered . . .[66]

On August 24, 2010, however, Judge Miller vacated this opinion and -- after construing the petitions liberally and resolving all doubts in favor of coverage -- correctly held that a duty to defend existed under *multiple* policy periods.

> In the present case, it is not clear from the face of the Budiman plaintiffs' petitions when the lakes were damaged . . . However,

---

[62] Exhibit C, ¶ 11, pp. 3-4; Exhibits D-E, ¶ 12, p. 4.
[63] Exhibit C, ¶ 11, p. 4; Exhibits D-E, ¶ 12, p. 4.
[64] Exhibit D, ¶ 11, p. 3.
[65] Exhibit E, ¶ 11, p. 3.
[66] *Mid-Continent Cas. Co. v. Acad. Dev., Inc.*, 2010 U.S. Dist. LEXIS 28049, *19 (S.D. Tex. Mar. 24, 2010), *vacated by* 2010 U.S. Dist. LEXIS 87637 (S.D. Tex. Aug. 24, 2010).

the petitions are not entirely date deprived: the petitions mention letters sent to the Budiman plaintiffs in February 2004 and September 2005, and also reference a lawsuit filed by defendants in 2002 regarding the faulty construction of the lakes. . . . Therefore, at some point prior to 2002, the lakes were constructed and began leaking; the continuous leaking causing damage to the Budiman plaintiffs. Construing the petitions liberally and resolving all doubts in favor of coverage, these allegations are sufficient to trigger the duty to defend under the Mid-Continent policies. *See Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010) ("An insurer must defend its insured if a plaintiff's factual allegations potentially support a covered claim." (quoting *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490-91 (Tex. 2008)). Thus, Mid-Continent owed a duty to defend . . .[67]

Other Texas courts have reached similar conclusions as to when coverage was triggered.

In *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833 (Tex. App.—Dallas 2004, pet. denied), the court held that allegations of "past" damages triggered coverage.

The Larsons . . . claimed that they suffered **'past' bodily injuries and property damages** without identifying when in the past this occurred. In construing the allegations of the underlying suit, the pleadings are strictly construed against the insurer, and any doubt is resolved in favor of coverage. We conclude that the insurers did not establish . . . that there was no allegation of any potential occurrence within the policy coverage period.[68]

In *Williams Consol. I, Ltd. v. TIG Ins. Co.*, 230 S.W.3d 895 (Tex. App.—Houston [14th Dist.] 2007, no pet.), the court held that coverage was triggered, even though the underlying petition was silent regarding when the alleged damage occurred.

In their pleadings, the Mokrys alleged that the design, construction, and installation of the vapor barrier was . . . not performed in a good and workmanlike manner. As a result, the Mokrys asserted, mold grew in their home . . . . The Mokrys alleged that they entered into their construction contract on or about June 9, 1991, and took possession of their home on August 29, 1991. In their pleadings, the Mokrys do not specify any other dates. **The Mokrys . . . did not allege that their property damage or bodily**

---

[67] 2010 U.S. Dist. LEXIS 87637 at *19-20.
[68] *Gehan*, 146 S.W.3d at 846 (citations omitted).

**injury first occurred or began before the effective date of the policy** (August 1, 1999). Based on the Mokrys' allegations, it is possible that the alleged mold growth did not begin to cause any bodily injury or physical injury to tangible property until after the effective date. After reviewing the Mokrys' claims and the terms of the CGL Policy, **we conclude that the Mokrys' allegations do not state facts sufficient to bring the Mokrys' claims clearly within or without coverage. Because potentially the Mokrys' claims were within the coverage of the CGL Policy, we conclude that, as a matter of law, TIG had a duty to defend** Williams against the Mokrys' claims.[69]

For these reasons, a duty to defend was triggered by the University's Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions for the Policy Period of October 16, 2002, to October 16, 2003. Therefore, Continental Western owes Swinerton a duty to defend.

## VII.    CONCLUSION

For these reasons, the Court should grant Swinerton's Motion for partial Summary Judgment against Continental Western on the Duty to Defend. Continental Western owes Swinerton a duty to defend under Policy No. TP 1790934-22 for the Policy Period of October 16, 2002, to October 16, 2003. This duty to defend was triggered by Plaintiff University of Houston's Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions in the Underlying Lawsuit.

---

[69] *Williams*, 230 S.W.3d at 906 (citing *Gehan*, 146 S.W.3d at 839-46) (bold emphasis added).

Respectfully submitted,

**JOHNSON, TRENT, WEST & TAYLOR, L.L.P.**


By:     _/s/ Lawrence J. West_____
        Lawrence J. West
        State Bar No. 21202600
        Federal ID No. 11124
        919 Milam Street, Suite 1700
        Houston, TX  77002
        (713) 222-2323 – Telephone
        (713) 222-2226 – Facsimile

**ATTORNEY-IN-CHARGE FOR PLAINTIFF
SWINERTON BUILDERS**

Joshua W. Mermis
State Bar No. 24039055
Federal ID No. 37504
JOHNSON, TRENT, WEST & TAYLOR, L.L.P.
919 Milam Street, Suite 1700
Houston, TX  77002
(713) 222-2323 – Telephone
(713) 222-2226 – Facsimile

**OF-COUNSEL FOR PLAINTIFF
SWINERTON BUILDERS**

## CERTIFICATE OF SERVICE

I certify that on November 1, 2011, a true and correct copy of the foregoing document was served by certified mail, return receipt requested, facsimile, or ECF on all counsel of record, including:

| | |
|---|---|
| Beth A. Bradley<br>Stephen A. Melendi<br>TOLLEFSON, BRADLEY, BALL & MITCHELL, LLP<br>2811 McKinney Ave., Suite 250<br>Dallas, TX 75204<br>*Counsel for Defendant Continental Western Insurance Co.* | Camille Johnson<br>Mary Kilany<br>SAVRICK, SCHUMANN, JOHNSON MCGARR, KAMINSKI & SHIRLEY, L.L.P.<br>6440 N. Central Expressway, Suite 107<br>Dallas, TX 75206<br>*Counsel for Defendant Atlantic Casualty Insurance Co.* |
| Catherine L. Hanna<br>Eric S. Peabody<br>HANNA & PLAUT, LLP<br>Southwest Tower<br>211 E. 7th Street, Suite 600<br>Austin, TX 78701<br>*Counsel for Defendant Amerisure Mutual Insurance Co.* | Joe Ziemianski<br>Nejat A. Ahmed<br>COZEN O'CONNOR<br>1221 McKinney St., Suite 2900<br>Houston, TX 77010-2011<br>*Counsel for Defendant ACE American Insurance Co.* |
| Christopher W. Martin<br>Robert G. Dees<br>MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.<br>808 Travis Street, Suite 1800<br>Houston, TX 77002<br>*Counsel for Defendant Hartford Casualty Insurance Co.* | Susan Rampacek Wilson<br>COLLIAU ELENIUS MURPHY CARLUCCIO KEENER & MORROW<br>600 N. Pearl Street, Suite 1400<br>Dallas, TX 75201<br>*Counsel for Defendant Transportation Insurance Co.* |
| Alan M. Posner<br>Wayne S. Karbal<br>KARBAL, COHEN, ECONOMOU, SILK & DUNNE<br>150 S. Wacker Dr., Suite 1700<br>Chicago, IL 60606<br>*Counsel for Defendant Hartford Casualty Insurance Co.* | |

*/s/ Lawrence J. West*
Lawrence J. West