# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| *Swinerton Builders,* | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **vs.** | § |
| | § |
| *Zurich American Insurance Company,* | § |
| *Travelers Insurance Company, ACE* | § |
| *American Insurance Company, Atlantic* | § |
| *Casualty, Continental Western Insurance* | § |
| *Company, Hartford Casualty Insurance* | § |
| *Company, ACEA American Insurance* | § |
| *Company and CNA Transportation* | § |
| *Insurance Company, St. Paul Mercury* | § |
| *Insurance Company & Amerisure Mutual* | § |
| *Insurance Company,* | § |
| | § |
| **Defendants.** | § |

**CIVIL ACTION NO. 4:10-CV-01791**

## Plaintiff Swinerton Builders' Motion for Partial Summary Judgment Against Defendant Transportation Insurance Co. on the Duty to Defend

Under FED. R. CIV. P. 56, Plaintiff Swinerton Builders ("Swinerton") is entitled to partial summary judgment against Defendant Transportation Insurance Co. ("TIC") because TIC owes Swinerton a "duty to defend" under (1) Policy No. C 2068279955 for the Policy Period of January 27, 2004, to January 27, 2005 and (2) Policy No. U 2082685948 for the Policy Periods of January 27, 2005, to January 27, 2007 (the "Policies").[1]  As shown below, this duty to defend was triggered by Plaintiff University of Houston System's Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions in the Underlying Lawsuit.[2]

---

[1] This motion is a "partial" motion for summary judgment on the "duty to defend."  If the court finds that a duty to defend exists, Swinerton may then file a "partial" motion for summary judgment on the amount of Swinerton's defense costs that TIC is responsible for.  Swinerton is currently conducting discovery on this issue. Later, Swinerton may file another partial motion for summary judgment on the "duty to indemnify" to determine whether TIC owes Swinerton a duty to indemnify, and if so, how much TIC must pay to indemnify Swinerton.

[2] Exhibits A-E.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. iii

I.      NATURE AND STAGE OF PROCEEDINGS ........................................................1

II.     SUMMARY OF THE ISSUES................................................................................1

III.    SUMMARY OF ARGUMENT ...............................................................................1

IV.     INTRODUCTION ...................................................................................................2

V.      STANDARD.............................................................................................................4

        A.      Motion for Summary Judgment ..................................................................4

        B.      Duty to Defend Under the Eight-Corners Rule..........................................4

VI.     ARGUMENT & AUTHORITIES.............................................................................6

        A.      TIC Owes Swinerton a Duty to Defend ......................................................6

                1.      The Policies Provide a "Duty to Defend" to Each Insured
                        for Property Damage Caused by an Occurrence During
                        the Policy Period .............................................................................6

                2.      Swinerton Is an "Insured" Under the Policies.................................7

                3.      The Underlying Lawsuit Seeks Damages for
                        "Property Damage" Caused by an "Occurrence"
                        Arising Out of NOW's Work for Swinerton .....................................9

                4.      The "Property Damage" Occurred During the
                        Policy Periods................................................................................16

        B.      TIC Agreed to Defend Swinerton ..............................................................21

VII.    CONCLUSION.......................................................................................................21

CERTIFICATE OF SERVICE ...........................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Adams v. Unione Mediterranea Di Sicurta,*
 220 F.3d 659 (5th Cir. 2000) ....................................................................................1

*Adickes v. S.H. Kress & Co.,*
 398 U.S. 144 (1970) ..................................................................................................4

*Argonaut Sw. Ins. Co. v. Maupin,*
 500 S.W.2d 633 (Tex. 1973) ....................................................................................4

*Boss Mgmt. Servs. v. Acceptance Ins. Co.,*
 2007 U.S. Dist. LEXIS 69666 (S.D. Tex. 2007) ....................................................17

*Celotex Corp. v. Catrett,*
 477 U.S. 317 (1986) ..................................................................................................4

*Colony Ins. Co. v. H.R.K., Inc.,*
 728 S.W.2d 848 (Tex. App.—Dallas 1987, no writ) ................................................4

*Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.,*
 267 S.W.3d 20 (Tex. 2008) ....................................................................................17

*Essex Ins. Co. v. Hines,*
 358 Fed. Appx. 596 (5th Cir. 2010) ..........................................................................5

*Farmers Tex. County Mut. Ins. Co. v. Griffin,*
 955 S.W.2d 81 (Tex. 1997) ......................................................................................4

*Gehan Homes, Ltd. v. Employers Mut. Cas. Co.,*
 146 S.W.3d 833 (Tex. App.—Dallas 2004, pet. denied) ..................................19, 20

*Gilbane Bldg. Co. v. Empire Steel Erectors, L.P.,*
 691 F. Supp. 2d 712 (S.D. Tex. 2010) ......................................................................5

*Global Sun Pools, Inc. v. Burlington Ins. Co.,*
 2004 Tex. App. LEXIS 7552 (Tex. App.—Dallas Aug. 23, 2004, no pet.)............14

*Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.,*
 538 F.3d 365 (5th Cir. 2008) ..............................................................................5, 14

*GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,*
 197 S.W.3d 305 (Tex. 2006) ..............................................................................4, 17

*Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.,*
1 F.3d 365 (5th Cir. 1993)......................................................................................4

*Harken Exploration Co. v. Sphere Drake Ins. P.L.C.,*
261 F.3d 466 (5th Cir. 2001)...................................................................................5

*Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,*
387 S.W.2d 22 (Tex. 1965) .............................................................................1, 5, 17

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.,*
242 S.W.3d 1 (Tex. 2007)........................................................................................12

*Mid-Continent Cas. Co. v. Acad. Dev., Inc.,*
2010 U.S. Dist. LEXIS 28049 (S.D. Tex. Mar. 24, 2010).......................................19

*Mid-Continent Cas. Co. v. Acad. Dev., Inc.,*
2010 U.S. Dist. LEXIS 87637 (S.D. Tex. Aug. 24, 2010).......................................19

*Nat'l Fire Ins. Co. v. Entm't Specialty Ins. Svcs.,*
485 F. Supp. 2d 737 (N.D. Tex. 2007) .....................................................................5

*Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines,*
939 S.W.2d 139 (Tex. 1997) ......................................................................1, 4, 5, 13, 17

*Northfield Ins. Co. v. Loving Home Care, Inc.,*
363 F.3d 523 (5th Cir. 2004)..................................................................................17

*Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.,*
592 F.3d 687 (5th Cir. 2010)..............................................................................4, 19

*Williams Consol. I, Ltd. v. TIG Ins. Co.,*
230 S.W.3d 895 (Tex. App.—Houston [14[th] Dist.] 2007, no pet.)....................17, 20

*Zurich Am. Ins. Co. v. Nokia, Inc.,*
268 S.W.3d 487 (Tex. 2008) ...............................................................................4, 5, 19

**Federal Rules**

FED. R. CIV. P. 56...........................................................................................................i, 4

# I.     NATURE & STAGE OF PROCEEDINGS

In this insurance-coverage dispute, Swinerton seeks a declaratory judgment that it is entitled to defense and indemnity from several insurance companies, including TIC. On May 18, 2010, Swinerton filed an Original Complaint for Declaratory Judgment (Docket Entry No. 1), and on October 6, 2010, filed a Third Amended Complaint (Docket Entry No. 79). The parties have served their Initial Disclosures (Docket Entry Nos. 56-58, 60-62, 65), and the Court has entered a Scheduling Order (Docket Entry No. 59).

# II.     SUMMARY OF THE ISSUES

1.     Whether TIC owes Swinerton a duty to defend under Policy No. C 2068279955 for the Policy Period of January 27, 2004, to January 27, 2005?

2.     Whether TIC owes Swinerton a duty to defend under Policy No. U 2082685948 for the Policy Period of January 27, 2005, to January 27, 2006?

3.     Whether TIC owes Swinerton a duty to defend under Policy No. U 2082685948 for the Policy Period of January 27, 2006, to January 27, 2007?

4.     Whether a duty to defend was triggered under these policies by the University's Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions in the Underlying Lawsuit?

The standard of review when interpreting an insurance policy is *de novo*. *See Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 677 (5th Cir. 2000).

# III.     SUMMARY OF ARGUMENT

TIC owes Swinerton a duty to defend because the three Policies[3] "potentially" provide coverage to Swinerton for the claims in the Underlying Lawsuit. Under Texas's eight-corners rule, an insurer owes a duty to defend if a lawsuit "potentially" includes a covered claim.[4] Each

---

[3] Exhibit F, 2004-05 Policy; Exhibit G, 2005-06 Policy; Exhibit H, 2006-07 Policy.
[4] *See, e.g., Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997) (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)).

Policy provides a "duty to defend" to each "additional insured" [i.e., Swinerton] who is sued in a "suit" seeking damages because of "property damage" caused by an "occurrence" arising out of the insured's [i.e., NOW's] work for that "additional insured" during the policy period.[5]  As shown below, Swinerton is an Insured under the Policies; the Underlying Lawsuit seeks damages because of "property damage" caused by an "occurrence" arising out of NOW's work for Swinerton; the property damage "potentially" occurred during the Policy Periods; and a duty to defend was triggered by the University's Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions in the Underlying Lawsuit.

## IV.  INTRODUCTION

In 2002, the University of Houston System ("University") contracted with the architectural firm of Hellmuth, Obata + Kassabaum, L.P. ("HOK") to design a Student Services Building ("SSB") at the University of Houston-Clear Lake (the "Project").  In 2002, the University also contracted with Swinerton to be the general contractor for the Project.  Swinerton then subcontracted with several subcontractors, including Pyramid Waterproofing, Inc. ("Pyramid"), related to the Project.  Pyramid's scope of work included application of thermoplastic membrane roofing and installation of flashing and sheet metal at the Project.[6] Swinerton's subcontract with Pyramid was executed on May 19, 2003.[7]  As required by the

---

[5] *See infra*, § VI.A.1, pp. 6-7.
[6] *See, e.g.,* Exhibit I, Subcontract between Swinerton & Pyramid.  The first page of the Subcontract states that the "Scope of Work" is "Roofing, Sheet Metal, and Roof Accessories." SWIN App. 000213. Further, Attachment "C" of the Subcontract describes the "Scope of Work" as "Thermoplastic Membrane Roofing, Flashing and Sheet Metal, and Roof Accessories" and states that Pyramid shall "Furnish and install all **thermoplastic membrane, roofing, flashing, sheet metal, fire treated roof blocking work**, including . . . 1. Roof expansion joint/covers; 2. Roof and pipe flashing, counterflashing, walk pads, insulation, tapered insulation, and pitch pans; 3. Roof protection; … and 9. Coordinate with other trades for penetrations to ensure a watertight roof system."  *Id.* SWIN App. 000282-000283 (emphasis in original); Exhibit J, Affidavit of Keith Schnell, SWIN App. 000377-000378.
[7] Exhibit I, Subcontract between Swinerton & Pyramid.

subcontract, Pyramid named Swinerton as an additional insured under its CGL Policies with TIC.[8]

In 2006, the University sued Swinerton and HOK related to the Project in *University of Houston System v. Swinerton Builders, et al.*, Cause No. 2006-76157, in the 334th Judicial District Court of Harris County, Texas (the "Underlying Lawsuit"). The University claimed that the SSB leaks, and asserted breach-of-contract, breach-of-warranty, negligence, and breach-of-fiduciary-duty claims against Swinerton.[9] The University filed Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions.[10] In April 2011, the Underlying Lawsuit settled and the parties entered an agreed motion to dismiss all claims.

Shortly after the University filed suit in 2006, Swinerton made a defense-and-indemnity demand to TIC as an additional insured under Pyramid's Policies. On July 25, 2008, TIC accepted Swinerton's defense-and-indemnity demand.[11] TIC then contributed toward Swinerton's defense from July 2009 through March 2010, but then inexplicably ceased paying. On November 29, 2010, TIC withdrew its defense of Swinerton, and now claims that Swinerton is owed no coverage under the Policies.[12]

As explained below, Swinerton is entitled to a declaration that TIC owes Swinerton a duty to defend.

---

[8] Exhibit I, Subcontract between Swinerton & Pyramid; Exhibit K, Certificates of Liability Insurance (3/2/04 & 2/23/05).

[9] *See, e.g.*, note 10.

[10] Exhibit A, University's Original Petition, filed November 28, 2006; Exhibit B, University's First Amended Petition, filed October 26, 2007; Exhibit C, University's Second Amended Petition, filed November 2, 2009; Exhibit D, University's Third Amended Petition, filed May 21, 2010; Exhibit E, University's Fourth Amended Petition, filed December 2, 2010.

[11] Exhibit L, July 25, 2008 Letter from Jeffrey Baker to Jamie Parker.

[12] Exhibit M, November 29, 2010 Letter from Greta Matzen to Larry West.

# V.    STANDARD

A.    Motion for Summary Judgment

Under FED. R. CIV. P. 56(c), summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden to show the absence of a genuine issue of material fact, and the evidence is viewed in the light most favorable to the opposing party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

B.    Duty to Defend Under the Eight-Corners Rule

An insurer's duty to defend under Texas law is determined by the eight-corners rule, under which "only two documents are ordinarily relevant . . . : the policy and the pleadings of the [underlying lawsuit]." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006); *see also Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490-91 (Tex. 2008); *Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010). In performing an eight-corners analysis, a court compares the allegations in the underlying lawsuit's petition to the terms of the policy, without reference to the truth or falsity of the allegations, and without reference to what the parties know or believe the true facts to be. *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973); *Colony Ins. Co. v. H.R.K., Inc.*, 728 S.W.2d 848, 850 (Tex. App.—Dallas 1987, no writ); *Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993). The focus is on the factual allegations rather than the legal theories asserted. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997); *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997). "The court may draw inferences from the petition that may lead to a finding of coverage. An inference is a fact or proposition drawn from an admitted

or otherwise proven fact." *Gilbane Bldg. Co. v. Empire Steel Erectors, L.P.*, 691 F. Supp. 2d 712, 724 (S.D. Tex. 2010) (citation and quotation omitted).

"Under the eight-corners rule, the initial burden lies with the insured to demonstrate that the claims levied against it **potentially** fall within the insurance policy's scope of coverage." *Nat'l Fire Ins. Co. v. Entm't Specialty Ins. Svcs.*, 485 F. Supp. 2d 737, 740-41 (N.D. Tex. 2007) (citing *Merchs.*, 939 S.W.2d at 141) (bold emphasis added). An insurer, however, may establish that an exclusion to coverage applies. If an insurer demonstrates that an exclusion applies, the burden shifts back to the insured to show either that the claim does not fall within the exclusion or that it comes within an exception to the exclusion. *Harken Exploration Co. v. Sphere Drake Ins. P.L.C.*, 261 F.3d 466, 471 (5th Cir. 2001). If a complaint *potentially* includes a covered claim, the insurer must defend the entire suit, even if not all claims are covered. *See Zurich*, 268 S.W.3d at 491 (Tex. 2008).

An insurer owes a duty to defend if the underlying complaint *potentially* states a claim for coverage under the policy. *Merchs.*, 939 S.W.2d at 141. All doubts regarding the duty to defend are to be resolved in favor of the insured. *Id.* (citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). As the Texas Supreme Court has explained:

> Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, *potentially*, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.[13]

And the Fifth Circuit has repeatedly emphasized: "When in doubt, defend."[14]

---

[13] *Merchs.*, 939 S.W.2d at 141 (Tex. 1997) (quoting *Heyden*, 387 S.W.2d at 26) (emphasis added).
[14] *Essex Ins. Co. v. Hines*, 358 Fed. Appx. 596, 596-97 (5th Cir. 2010) (quoting *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008)).

# VI.    ARGUMENT & AUTHORITIES

Swinerton is entitled to partial summary judgment because TIC owes Swinerton a duty to defend under (1) Policy No. C 2068279955 for the Policy Period of January 27, 2004, to January 27, 2005; (2) Policy No. U 2082685948 for the Policy Period of January 27, 2005, to January 27, 2006; and (3) Policy No. U 2082685948 for the Policy Period of January 27, 2006, to January 27, 2007.   As explained below, these Policies "potentially" provide coverage to Swinerton for the claims in the Underlying Lawsuit, and a duty to defend was triggered by the University's Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions in the Underlying Lawsuit.

## A.    TIC Owes Swinerton a Duty to Defend

TIC owes Swinerton a duty to defend because the three Policies "potentially" provide coverage to Swinerton for the claims in the Underlying Lawsuit.

### 1.    The Policies Provide a "Duty to Defend" to Each Insured for Property Damage Caused by an Occurrence During the Policy Period.

Each Policy provides a "duty to defend" to each insured who is sued in a "suit" seeking damages because of "property damage" caused by an "occurrence" during the policy period. Specifically, each Policy states:[15]

#### 1. Insuring Agreement

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or *"property damage"* to which this insurance applies.  *We will have the right and duty to defend the insured against any "suit" seeking those damages.*  However, we will have

---

[15] Exhibit F, 2004-05 Policy, "Commercial General Liability Coverage Form" CG 00 01 10 01, § I, Coverage A, TIC 0100 (emphasis added) & "Known or Continuing Injury or Damage" Endorsement G-136080-A 02 00, TIC 0044 (emphasis added); Exhibit G, 2005-06 Policy, "Commercial General Liability Coverage Form" CG 00 01 10 01, § I, Coverage A, TIC 0112 (emphasis added) & "Known or Continuing Injury or Damage" Endorsement G-136080-A 02 00, TIC 0148 (emphasis added); Exhibit H, 2006-07 Policy, "Commercial General Liability Coverage Form" CG 00 01 10 01, § I, Coverage A, SWIN App. 000106 (emphasis added) & "Known or Continuing Injury or Damage" Endorsement G-136080-A 02 00, SWIN App. 000142 (emphasis added)

no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

\*       \*       \*

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or *"property damage" is caused by an "occurrence"* that takes place in the "coverage territory";

(2) The "bodily injury" or *"property damage" occurs during the policy period*; . . .

As shown below, (1) Swinerton is an "insured" under each Policy; (2) the Underlying Lawsuit seeks damages because of "property damage" caused by an "occurrence" arising out of Pyramid's work for Swinerton; and (3) the alleged property damage "potentially" occurred during each Policy Period.

2.     Swinerton Is an "Insured" Under the Policies.

Swinerton is an "insured" under the Policies. First, Swinerton is an additional insured under each Policy's "CONTRACTOR'S SCHEDULED AND BLANKET ADDITIONAL INSURED ENDORSEMENT WITH PRODUCTS-COMPLETED OPERATIONS COVERAGE" Form G-140331-A, which states:[16]

---

[16] Exhibit F, 2004-05 Policy, "CONTRACTOR'S SCHEDULED AND BLANKET ADDITIONAL INSURED ENDORSEMENT WITH PRODUCTS-COMPLETED OPERATIONS COVERAGE" endorsement G-

A. **WHO IS AN INSURED (Section II)** is amended to include as an insured any person or organization, including any person or organization shown in the schedule above, (called additional insured) *whom you are required to add as an additional insured an this policy under a written contract or written agreement*; but the written contract or written agreement must be:

1. Currently in effect or becoming effective during the term of this policy; and

2. Executed prior to the "bodily injury," "property damage," or "personal and advertising injury".

B. The insurance provided to the additional insured is limited as follows:

1. That person or organization is an additional insured solely for liability due to your negligence specifically resulting from "your work" for the additional insured which is the subject of the written contract or written agreement. No coverage applies to liability resulting from the sole negligence of the additional insured.

This endorsement applies, as it is uncontested that Pyramid was required to and actually did add Swinerton as an additional insured on the Policies under a written contract or agreement relating to Pyramid's business.[17] So Swinerton is an insured under this endorsement "with respect to liability arising out of [Pyramid's work] for [Swinerton]."

The Certificates of Liability Insurance confirm that Swinerton is an additional insured under this endorsement for the 2004-05 and 2005-06 Policies. The March 2, 2004 Certificate states that "CERTIFICATE HOLDER [i.e., Swinerton] IS NAMED AS ADDITIONAL INSURED ON ALL POLICIES [including 2004-05 Policy] EXCEPT WORKERS

---

140331-A, TIC 0051 (italicized emphasis added); Exhibit G, 2005-06 Policy, "CONTRACTOR'S SCHEDULED AND BLANKET ADDITIONAL INSURED ENDORSEMENT WITH PRODUCTS-COMPLETED OPERATIONS COVERAGE" endorsement G-140331-A, TIC 0154 (italicized emphasis added); Exhibit H, 2006-07 Policy, "CONTRACTOR'S SCHEDULED AND BLANKET ADDITIONAL INSURED ENDORSEMENT WITH PRODUCTS-COMPLETED OPERATIONS COVERAGE" endorsement G-140331-A, SWIN App. 000148 (italicized emphasis added).

[17] *See, e.g.,* Exhibit I, Subcontract between Swinerton & Pyramid.

COMPENSATION, AS REQUIRED BY WRITTEN CONTRACT, BUT ONLY FOR LIABILITY ARISING OUT OF THE OPERATIONS OF THE NAMED INSURED [i.e., Pyramid]" regarding the "UNIVERSITY OF HOUSTON- CLEAR LAKE [JOB]#02095007 C#464868."[18]  And the February 23, 2005 Certificate states that "Cert Holder [i.e., Swinerton] is Named as Addl Insd on General [i.e., 2005-06 Policy] . . . as required by contract but only for Liab arising out of the operations of the Named Insd [i.e., Pyramid]" regarding "Clear Lake C#464868."[19]

TIC, meanwhile, has agreed that Swinerton is an additional insured under the 2006-07 Policy.  On July 25, 2008, TIC's Jeffrey Baker wrote that "[TIC] will participate in [Swinerton's] defense and/or indemnity"[20] since "there is a potential that there is covered property damage related to the allegations in the [University's Original Petition]," and stated that "Swinerton Builder's [sic] status as an additional insured is governed by form G140331A (ed.01/01) CONTRACTORS BLANKET ADDITIONAL INSURED ENDORSEMENT."[21]

Swinerton is therefore an additional insured under the Policies.

3.  The Underlying Lawsuit Seeks Damages for "Property Damage" Caused by an "Occurrence" Arising Out of Pyramid's Work for Swinerton.

The Underlying Lawsuit seeks damages for "Property Damage" caused by an "Occurrence" arising out of Pyramid's work for Swinerton.

a.  The Underlying Lawsuit Seeks Damages for "Property Damage" Caused by an "Occurrence."

The Underlying Lawsuit seeks damages for "Property Damage" caused by an "Occurrence."  These terms are defined as:

---

[18] Exhibit K, Certificates of Liability Insurance (dated 3/2/04 & 2/23/05), SWIN App. 000379-000380.
[19] Exhibit K, Certificates of Liability Insurance (dated 3/2/04 & 2/23/05), SWIN App. 000381.
[20] Exhibit L, July 25, 2008 Letter from Baker to Parker, p. 2, SWIN App. 000383.
[21] Exhibit L, July 25, 2008 Letter from Baker to Parker, p. 3, SWIN App. 000384.

13.     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.[22]

            *       *       *

17.     "Property damage" means:[23]

        a.      Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

        b.      Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Several "Occurrences" are alleged in the Underlying Lawsuit.  For example, in its Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions, the University alleges the following construction-defect-related Accidents and Occurrences:

-       "significant design and construction problems";[24]

-       "the metal panel cladding that Defendants improperly designed and constructed . . .";[25]

-       "Defendants improperly designed and constructed the integration of dissimilar building materials on the building envelope . . .";[26]

-       Defendants "have not properly repaired the leaks";[27]

-       The failure to properly correct and repair "the defects and deficiencies";[28]

-       "problems with the design and construction of the building envelope";[29]

---

[22] Exhibit F, 2004-05 Policy, TIC 0021; Exhibit G, 2005-06 Policy, TIC 0123; Exhibit H, 2006-07 Policy, SWIN App. 000117.
[23] Exhibit F, 2004-05 Policy, TIC 0022; Exhibit G, 2005-06 Policy, TIC 0124; Exhibit H, 2006-07 Policy, SWIN App. 000118.
[24] Exhibits A-E, ¶ 10, p. 3.
[25] Exhibits A-B, ¶ 10, p. 3.
[26] Exhibits C-E, ¶ 10, p. 3.
[27] Exhibit C, ¶ 10, p. 3; Exhibits D-E, ¶ 11, p. 3.
[28] Exhibits D-E, ¶ 12, p. 4.

- "problems with the building envelope";[30]

- "significant design and construction problems with the building and building envelope";[31] and

- several installation issues with the roof, including "lack of flashing, improper attachment of lightning rods, sleepers, and cables to the roof, improper patches and lapping of the roofing membrane, inadequate drainage that has led to ponding on the roof, the improper use of a modified composite metal panel instead of properly fabricated sheet metal coping, and poor installation of scuppers."[32]

These "Occurrences" are alleged to have caused "Property Damage." For example, in its Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions, the University alleges that the construction defects caused the following "physical injury to tangible property":

- "significant and continuous water infiltration into the building";[33]

- "significant and continuous water infiltration into the building, which has damaged other parts of the building";[34]

- "During most rain events the building leaks. Cleaning crews have to be dispatched throughout the building to mop up rain water and try to block the infiltrating water with towels";[35]

- "water filtration problems" and "the building's leak problems";[36]

- the "metal panel system needs to be removed, re-designed and replaced";[37]

---

[29] Exhibit C, ¶ 12, p. 4; Exhibits D-E, ¶ 13, p. 4.
[30] Exhibit C, ¶ 13, p. 4; Exhibit D, ¶ 14, p. 5.
[31] Exhibit E, ¶ 14, p. 5.
[32] Exhibit B, ¶ 17, p. 6; Exhibit C, ¶ 25, p. 7; Exhibit D, ¶ 26, p. 7; Exhibit E, ¶ 29, pp. 8-9.
[33] Exhibit A, ¶ 10, p. 3.
[34] Exhibits B-E, ¶ 10, p. 3.
[35] Exhibit C, ¶ 10, p. 3; Exhibit D, ¶ 11, p. 3; Exhibit E, ¶ 11, p. 3.
[36] Exhibit C, ¶ 11, p. 4; Exhibits D-E, ¶ 12, p. 4.
[37] Exhibits A- B, ¶ 15, p. 5; Exhibit C, ¶ 13, p. 4; Exhibits D-E, ¶ 14, p. 5.

- i      "water intrusion";[38]

- i      "leaky building";[39]

- i      "killed many mature trees";[40]

- i      "ponding on the roof";[41] and

- i      other construction problems related to the security system, ADA/TAS compliance, handrail system on the walkways, concrete, drainage, utility lines, doors, waterproofing, and elevators.[42]

These construction-defect allegations constitute "Property Damage" and "Occurrences" under Texas law.  In *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1 (Tex. 2007), the court held that "allegations of unintended construction defects may constitute an 'accident' or 'occurrence' . . . and that allegations of damage to or loss of use of the home itself may also constitute 'property damage.'"[43]  The construction defects were "Accidents" and "Occurrences" because they were "unexpected, unforeseen, or undesigned happening[s] or consequence[s]."[44]  The "cracking sheetrock and stone veneer [were Property Damage because they were] 'physical injury' to 'tangible property.'"[45]  The terms "Property Damage" and "Occurrence" were defined the same in the *Lamar Homes* policy as they are in the three TIC Policies here.

---

[38] Exhibit A, ¶ 16, p. 5; Exhibit B, ¶ 16, p. 6; Exhibit C, ¶ 14, p. 5; Exhibit D, ¶ 15, p. 5; Exhibit E, ¶ 17, p. 6.

[39] Exhibit C, ¶ 14, p. 5; Exhibit D, ¶ 15, p. 5; Exhibit E, ¶ 18, p. 6.

[40] Exhibit E, ¶ 22, p. 7.

[41] Exhibit B, ¶ 17, p. 6; Exhibit C, ¶ 25, p. 7; Exhibit D, ¶ 26, p. 7; Exhibit E, ¶ 29, pp. 8-9.

[42] Exhibit C, ¶¶ 15-24, pp. 5-7; Exhibit D, ¶¶ 16-25, pp. 6-7; Exhibit E, ¶ 20-30, pp. 6-9.

[43] 242 S.W.3d at 4.

[44] *See id.* at 9-16.

[45] *Id.* at 10.

b. The Underlying Lawsuit's Allegations Arise Out of Pyramid's Work for Swinerton.

The Underlying Lawsuit's allegations directly -- much more than the required "potentially"[46] -- arise out of Pyramid's work for Swinerton. In fact, the University's Third and Fourth Amended Petitions specifically name Pyramid and its work:

> The Project has significant design and construction problems and therefore does not function as intended or as agreed to by Swinerton and HOK. The most significant problem involves the building envelope. Swinerton contracted with several contractors to work on the construction of the building envelope, including . . . **Pyramid Waterproofing**. Defendants improperly designed and constructed the integration of dissimilar building materials on the building envelope causing significant and continuous water infiltration into the building, which has damaged other parts of the building.[47]

Similarly, the University's Original, First Amended, and Second Amended Petitions specifically implicate Pyramid's work for Swinerton (which included application of thermoplastic membrane roofing and installation of flashing and sheet metal). For example, these petitions state:

> i    The most significant problem involves the metal panel cladding [] that Defendants improperly designed and constructed, causing significant and continuous water infiltration into the building;[48]

> i    several construction installation issues with the roof, including "lack of flashing, improper attachment of lightning rods, sleepers, and cables to the roof, improper patches and lapping of the roofing membrane, inadequate drainage that has led to ponding on the roof, the improper use of a modified composite metal panel instead of properly fabricated sheet metal coping, and poor installation of scuppers";[49] and

---

[46] *See Merchs.*, 939 S.W.2d at 141.
[47] Exhibits D-E, ¶ 10, p. 3 (bold emphasis added).
[48] Exhibits A-C, ¶ 10, p. 3.
[49] Exhibit B, ¶ 17, p. 6; Exhibit C, ¶ 25, p. 7.

i        "problems with the design and construction of the building envelope."[50]

These allegations more than "potentially" relate to Pyramid's work for Swinerton -- they directly relate to Pyramid's work.  Texas law does not require that the petition specifically name the subcontractor, as long as the subcontractor's work is implicated.  The Fifth Circuit, following Texas law, has stated:

> This case is similar to a case decided by the Dallas Court of Appeals. *Global Sun Pools, Inc. v. Burlington Ins. Co.*, No. 05-03-00765-CV, 2004 Tex. App. LEXIS 7552 (Tex. App.—Dallas Aug. 23, 2004, no pet.).  In that case, Global built a pool for the Reeds.  They sued, alleging that Global sent "its builders to construct the pool and deck" and that, as a result of faulty workmanship, Mrs. Reed was injured when the deck railing collapsed.  *Id.* at *2.  **The actual builder of the pool, Paul Simmons, was not named in the petition.**  He had a policy of insurance naming Global as an additional insured and listing his business as installing pools.  **The court held that, construing the term "its builders" liberally, the petition stated a claim that was potentially within Simmons' policy coverage, although it did not name Simmons.**  *Id.* at *6.  Accordingly, the court found that the insurance company had a duty to defend Global.[51]

> c.        The Underlying Lawsuit's Allegations are Covered Under the Policies.

The Underlying Lawsuit's allegations are covered under the three Policies.  The Declaration Pages of the 2004-05, 2005-06, and 2006-07 Policies state the following "Coverages" related to construction, roofing, and sheet metal work:[52]

---

[50] Exhibit C, ¶ 12, p. 4.

[51] *Gore*, 538 F.3d at 369-70 (citing *Global Sun Pools, Inc. v. Burlington Ins. Co.*, 2004 Tex. App. LEXIS 7552 (Tex. App.—Dallas Aug. 23, 2004, no pet.) (bold emphasis added).

[52] These Coverages are consistent with Pyramid's scope of work under its subcontract with Swinerton. Exhibit I, Subcontract between Swinerton & Pyramid.  The first page of the Subcontract states that the "Scope of Work" is "Roofing, Sheet Metal, and Roof Accessories." SWIN App. 000213. Further, Attachment "C" of the Subcontract describes the "Scope of Work" as "Thermoplastic Membrane Roofing, Flashing and Sheet Metal, and Roof Accessories" and states that Pyramid shall "Furnish and install all **thermoplastic membrane, roofing, flashing, sheet metal, fire treated roof blocking work**, including . . . 1. Roof expansion joint/covers; 2. Roof and pipe flashing, counterflashing, walk pads, insulation, tapered insulation, and pitch pans; 3. Roof protection; … and 9. Coordinate with other trades for penetrations to ensure a watertight roof system." *Id.* SWIN App. 000282-000283 (emphasis in original).

**Class Code [redacted]**[53]
Contractors - subcontracted work - in connection with construction, reconstruction, repair or erection of buildings - not otherwise classified

\* \* \*

**Class Code [redacted]**
Roofing - commercial

\* \* \*

**Class Code [redacted]**
Sheet Metal Work – outside

And the 2004-05 and 2005-06 Policies contain a "DESIGNATED CONSTRUCTION PROJECT(S)" endorsement, which provides coverage to the following "Designated Construction Projects: EACH OF YOUR CONSTRUCTION PROJECTS LOCATED AWAY FROM PREMISES OWNED BY OR RENTED TO YOU."[54]

The University's allegations -- which include "significant design and construction problems"[55] -- fall under the scope of these classifications. *See supra*, pp. 10-12. For example, the following table shows some of the allegations that are covered under the Policies.

| Coverage | Allegation |
|---|---|
| "Contractors - subcontracted work - in connection with construction, reconstruction, repair or erection of buildings - not otherwise classified" | Original, First Amended & Second Amended Petitions<br>i    the improper design and construction of the "metal panel cladding"[56] |
| "Roofing - commercial" | Original, First Amended, Second Amended, Third Amended & Fourth Amended Petitions<br>i    "significant design and construction problems"[57] |
| "Sheet Metal Work – outside" | |

---

[53] Exhibit F, 2004-05 Policy, TIC 0003, 0082-0083, 0085-0086, 0092-0093; Exhibit G, 2005-06 Policy, TIC 0106; Exhibit H, 2006-07 Policy, SWIN App. 000097.

[54] Exhibit F, 2004-05 Policy, Designated Construction Project(s) Endorsement CG 25 03 03 97, TIC 0031; Exhibit G, 2005-06 Policy, Designated Construction Project(s) Endorsement CG 25 03 03 97, TIC 0134.

[55] Exhibits A-E, ¶ 10, p. 3.

[56] Exhibits A-C, ¶ 10, p. 3.

[57] Exhibits A-E, ¶ 10, p. 3.

[58] Exhibit C, ¶ 10, p. 3.

[59] *Id.* at ¶ 11, p. 4.

| Coverage | Allegation |
|---|---|
| "EACH OF YOUR CONSTRUCTION PROJECTS LOCATED AWAY FROM PREMISES OWNED BY OR RENTED TO YOU" | <u>Second Amended Petition</u><br>i  "the integration of dissimilar building materials that defendants improperly designed and constructed";[58]<br>i  "problems with the design and construction of the building envelope"[59]<br><br><u>Second, Third & Fourth Amended Petitions</u><br>i  several installation issues with the roof, including "lack of flashing, improper attachment of lightning rods, sleepers, and cables to the roof, improper patches and lapping of the roof membrane, inadequate drainage that has led to ponding on the roof, the improper use of a modified composite metal panel instead of properly fabricated sheet metal coping, and poor installation of scuppers"[60]<br><br><u>Third & Fourth Amended Petitions</u><br>i  "Swinerton contracted with several subcontractors to work on the construction of the building envelope, including . . . Pyramid Waterproofing"[61]<br>i  "Defendants improperly designed and constructed the integration of dissimilar building materials on the building envelope"[62]<br>i  "problems with the design and construction of the building envelope"[63] |

So the allegations in the University's Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions are covered under the Policies.

       4.      <u>The "Property Damage" Occurred During the Policy Periods</u>.

Finally, the alleged Property Damage "potentially" occurred during the three Policy Periods. Each Policy applies if the "'property damage' occurs during the policy period."[64] Interpreting a similar policy, the Texas Supreme Court held that property damage "occurred

---

[60] Exhibits C-D, ¶ 25, p. 7; Exhibit E, ¶ 29, pp. 8-9.
[61] Exhibits D-E, ¶ 10, p. 3.
[62] *Id.* at ¶ 10, p. 3.
[63] *Id.* at ¶ 13, p. 4.
[64] Exhibit F, 2004-05 Policy, TIC 0010, § I.1.b.(2); Exhibit G, 2005-06 Policy, TIC 0112, § I.1.b.(2); Exhibit H, 2006-07 Policy, SWIN App. 000106, § I.1.b.(2).

when actual physical damage to the property occurred."[65]  "An insurer must defend a lawsuit, even when the stated facts are insufficient to bring the case clearly within or without coverage, if coverage is *potentially* implicated."[66]  This is because "courts are to read the pleadings liberally and to resolve all doubts in favor of the insured.  The burden should not be on the insured to show that the underlying allegations claimed damage that conclusively occurred within the policy period."[67]

Here, the allegations in the Underlying Lawsuit show that the property damage "potentially" occurred between June 14, 2002, and April 29, 2005, and after April 29, 2005.  The University's Original and First Amended Petitions allege that property damage occurred between June 14, 2002, and April 29, 2005.

> i    "On or about June 14, 2002, the University entered into a Construction Manager-at-Risk Agreement with Swinerton pursuant to which Swinerton, as the Project construction manager, agreed to provide the University pre-construction phase services and construction phase services for the construction of the Project."[68]
>
> i    "The Project has significant design and construction problems . . ."[69]
>
> i    Swinerton had "full knowledge of the building's problems" when it hired an independent inspector on "April 29, 2005."[70]

"Between June 14, 2002, and April 29, 2005" reasonably includes the period from October 1, 2002, to April 2005, which is within the two of the three Policy Periods.  Therefore, the

---

[65] *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 24 (Tex. 2008).

[66] *Boss Mgmt. Servs. v. Acceptance Ins. Co.*, 2007 U.S. Dist. LEXIS 69666, *40 n.68 (S.D. Tex. 2007) (citing *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004)) (emphasis in original); *see also GuideOne*, 197 S.W.3d at 309; *Merchs.*, 939 S.W.2d at 141(quoting *Heyden*, 387 S.W.2d at 26); *Williams Consol. I, Ltd. v. TIG Ins. Co.*, 230 S.W.3d 895, 905-06 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

[67] *Boss*, 2007 U.S. Dist. LEXIS 69666 at*40 n.68 (citations omitted).

[68] Exhibits A-B, ¶ 9, pp. 2-3.

[69] *Id.* at ¶ 10, p. 3.

[70] *Id.* at ¶ 13, p. 4.

University's Original and First Amended Petitions trigger coverage for the Policy Periods of (1) January 27, 2004, to January 27, 2005 and (2) January 27, 2005, to January 27, 2006.

Similarly, the University's Second, Third, and Fourth Amended Petitions allege that property damage occurred before and after April 29, 2005, and that it is continuing.

- "The University . . . entered into a Construction Manager-at-Risk Agreement with Swinerton . . ."[71]

- "The Project has significant design and construction problems . . ."[72]

- Swinerton had "full knowledge of the building's problems" when it hired an independent inspector on "April 29, 2005."[73]

- "[T]he water infiltration problems at the Project persisted, and persist to this day."[74]

- "The leaks occurred throughout the Project and a new leak recently appeared at the health center in Room 1.301.17 in early February, 2010."[75]

- "The leaks occurred throughout the Project. A new leak manifested inside the health center in Room 1.301.17 in early February, 2010, and another new leak manifested inside the computer lab in the piano-shaped building in July, 2010."[76]

"Before and after April 29, 2005" reasonably includes the period from October 1, 2002, to October 1, 2006. Therefore, the allegations in the University's Second, Third, and Fourth Amended Petitions trigger coverage for all three Policy Periods of (1) January 27, 2004, to January 27, 2005; (2) January 27, 2005, to January 27, 2006; and (3) January 27, 2006, to January 27, 2007.

---

[71] Exhibits C-E, ¶ 9, p. 2.
[72] *Id.* at ¶ 10, p. 3.
[73] Exhibit C, ¶ 11, pp. 3-4; Exhibits D-E, ¶ 12, p. 4.
[74] Exhibit C, ¶ 11, p. 4; Exhibits D-E, ¶ 12, p. 4.
[75] Exhibit D, ¶ 11, p. 3.
[76] Exhibit E, ¶ 11, p. 3.

Swinerton is not required to pinpoint the exact dates when the alleged property damage occurred. A recent case from the Southern District of Texas -- *Mid-Continent Casualty Co. v. Academy Development, Inc.* -- is instructive. On March 24, 2010, Judge Gray Miller erroneously held that no duty to defend existed, stating that

> it is not apparent from the face of the Budiman plaintiffs' petitions when the lakes were damaged . . . Without evidence of when the lakes were damaged, Academy has not carried its burden to show that the property damage occurred during the policy period. The duty to defend, therefore, is not triggered . . .[77]

On August 24, 2010, however, Judge Miller vacated this opinion and -- after construing the petitions liberally and resolving all doubts in favor of coverage --correctly held that a duty to defend existed under *multiple* policy periods.

> In the present case, it is not clear from the face of the Budiman plaintiffs' petitions when the lakes were damaged . . . However, the petitions are not entirely date deprived: the petitions mention letters sent to the Budiman plaintiffs in February 2004 and September 2005, and also reference a lawsuit filed by defendants in 2002 regarding the faulty construction of the lakes. . . . Therefore, at some point prior to 2002, the lakes were constructed and began leaking; the continuous leaking causing damage to the Budiman plaintiffs. Construing the petitions liberally and resolving all doubts in favor of coverage, these allegations are sufficient to trigger the duty to defend under the Mid-Continent policies. *See Trinity Universal Ins. Co. v. Employers Mut. Cas. Co.*, 592 F.3d 687, 691 (5th Cir. 2010) ("An insurer must defend its insured if a plaintiff's factual allegations potentially support a covered claim." (quoting *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 490-91 (Tex. 2008)). Thus, Mid-Continent owed a duty to defend . . .[78]

Other Texas courts have reached similar conclusions as to when coverage was triggered.

In *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833 (Tex. App.—Dallas 2004, pet. denied), the court held that allegations of "past" damages triggered coverage.

---

[77] *Mid-Continent Cas. Co. v. Acad. Dev., Inc.*, 2010 U.S. Dist. LEXIS 28049, *19 (S.D. Tex. Mar. 24, 2010), *vacated by* 2010 U.S. Dist. LEXIS 87637 (S.D. Tex. Aug. 24, 2010).

[78] 2010 U.S. Dist. LEXIS 87637 at *19-20.

> The Larsons . . . claimed that they suffered **'past' bodily injuries and property damages** without identifying when in the past this occurred. In construing the allegations of the underlying suit, the pleadings are strictly construed against the insurer, and any doubt is resolved in favor of coverage. We conclude that the insurers did not establish . . . that there was no allegation of any potential occurrence within the policy coverage period.[79]

In *Williams Consol. I, Ltd. v. TIG Ins. Co.*, 230 S.W.3d 895 (Tex. App.—Houston [14th Dist.] 2007, no pet.), the court held that coverage was triggered, even though the underlying petition was silent regarding when the alleged damage occurred.

> In their pleadings, the Mokrys alleged that the design, construction, and installation of the vapor barrier was . . . not performed in a good and workmanlike manner. As a result, the Mokrys asserted, mold grew in their home . . . . The Mokrys alleged that they entered into their construction contract on or about June 9, 1991, and took possession of their home on August 29, 1991. In their pleadings, the Mokrys do not specify any other dates. **The Mokrys . . . did not allege that their property damage or bodily injury first occurred or began before the effective date of the policy** (August 1, 1999). Based on the Mokrys' allegations, it is possible that the alleged mold growth did not begin to cause any bodily injury or physical injury to tangible property until after the effective date. After reviewing the Mokrys' claims and the terms of the CGL Policy, **we conclude that the Mokrys' allegations do not state facts sufficient to bring the Mokrys' claims clearly within or without coverage. Because potentially the Mokrys' claims were within the coverage of the CGL Policy, we conclude that, as a matter of law, TIG had a duty to defend** Williams against the Mokrys' claims.[80]

For these reasons, a duty to defend was triggered by the University's Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions for the Policy Periods of (1) January 27, 2004, to January 27, 2005; (2) January 27, 2005, to January 27, 2006; and (3) January 27, 2006, to January 27, 2007.

---

[79] *Gehan*, 146 S.W.3d at 846 (citations omitted).
[80] *Williams*, 230 S.W.3d at 906 (citing *Gehan*, 146 S.W.3d at 839-46) (bold emphasis added).

B.     TIC Agreed to Defend Swinerton.

The fact that the Underlying Lawsuit *potentially* states a claim for coverage -- and therefore a duty to defend exists -- is highlighted by the fact that TIC previously agreed to defend Swinerton.   Shortly after the University filed suit in 2006, Swinerton made a defense-and-indemnity demand to TIC as an additional insured under Pyramid's Policies.  On July 25, 2008, TIC accepted Swinerton's defense-and-indemnity demand under Policy No. 2082685948 for the policy period of January 27, 2006, to January 27, 2007.  On July 25, 2008, TIC's Jeffrey Baker wrote, "Given that there is a potential that there is covered property damage related to the allegations in the [University's Original] petition and third-party petition [TIC] will participate in your [Swinerton's] defense and/or indemnity subject to a complete reservation of rights."[81]

TIC contributed toward Swinerton's defense in the Underlying Lawsuit from July 2009 through March 2010, but then -- without explanation -- stopped paying.  On November 29, 2010, TIC withdrew its defense of Swinerton, and now claims that Swinerton is owed no coverage.[82] Swinerton has demanded that TIC reconsider its position,[83] but TIC refuses.

The Court should find -- as TIC agreed it did from 2008-10 -- that TIC owes Swinerton a duty to defend.

## VII.     CONCLUSION

For these reasons, the Court should grant Swinerton's Motion for partial Summary Judgment against TIC on the Duty to Defend.  TIC owes Swinerton a duty to defend under (1) Policy No. C 2068279955 for the Policy Period of January 27, 2004, to January 27, 2005; (2) Policy No. U 2082685948 for the Policy Period of January 27, 2005, to January 27, 2006; and (3) Policy No. U 2082685948 for the Policy Period of January 27, 2006, to January 27, 2007.

---

[81] Exhibit L, July 25, 2008 Letter from Jeffrey Baker to Jamie Parker, p. 2.
[82] Exhibit M, November 29, 2010 Letter from Greta Matzen to Larry West.
[83] Exhibit N, December 2, 2010 Letter from Larry West to Greta Matzen.

This duty to defend was triggered by Plaintiff University of Houston's Original, First Amended, Second Amended, Third Amended, and Fourth Amended Petitions in the Underlying Lawsuit.

Respectfully submitted,

**JOHNSON, TRENT, WEST & TAYLOR, L.L.P.**


By: _/s/ Lawrence J. West_
   Lawrence J. West
   State Bar No. 21202600
   Federal ID No. 11124
   919 Milam Street, Suite 1700
   Houston, TX 77002
   (713) 222-2323 – Telephone
   (713) 222-2226 – Facsimile

**ATTORNEY-IN-CHARGE FOR PLAINTIFF SWINERTON BUILDERS**

Joshua W. Mermis
State Bar No. 24039055
Federal ID No. 37504
JOHNSON, TRENT, WEST & TAYLOR, L.L.P.
919 Milam Street, Suite 1700
Houston, TX 77002
(713) 222-2323 – Telephone
(713) 222-2226 – Facsimile

**OF-COUNSEL FOR PLAINTIFF SWINERTON BUILDERS**

## CERTIFICATE OF SERVICE

I certify that on November 10, 2011, a true and correct copy of the foregoing document was served by certified mail, return receipt requested, facsimile, or ECF on all counsel of record, including:

| | |
|---|---|
| Beth A. Bradley<br>Stephen A. Melendi<br>TOLLEFSON, BRADLEY, BALL & MITCHELL, LLP<br>2811 McKinney Ave., Suite 250<br>Dallas, TX 75204<br>*Counsel for Defendant Continental Western Insurance Co.* | Camille Johnson<br>Mary Kilany<br>SAVRICK, SCHUMANN, JOHNSON MCGARR, KAMINSKI & SHIRLEY, L.L.P.<br>6440 N. Central Expressway, Suite 107<br>Dallas, TX 75206<br>*Counsel for Defendant Atlantic Casualty Insurance Co.* |
| Catherine L. Hanna<br>Eric S. Peabody<br>HANNA & PLAUT, LLP<br>Southwest Tower<br>211 E. 7th Street, Sutie 600<br>Austin, TX 78701<br>*Counsel for Defendant Amerisure Mutual Insurance Co.* | Joe Ziemianski<br>Nejat A. Ahmed<br>COZEN O'CONNOR<br>1221 McKinney St., Suite 2900<br>Houston, TX 77010-2011<br>*Counsel for Defendant ACE American Insurance Co.* |
| Christopher W. Martin<br>Robert G. Dees<br>MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.<br>808 Travis Street, Suite 1800<br>Houston, TX 77002<br>*Counsel for Defendant Hartford Casualty Insurance Co.* | Susan Rampacek Wilson<br>COLLIAU ELENIUS MURPHY CARLUCCIO KEENER & MORROW<br>600 N. Pearl Street, Suite 1400<br>Dallas, TX 75201<br>*Counsel for Defendant Transportation Insurance Co.* |
| Alan M. Posner<br>Wayne S. Karbal<br>KARBAL, COHEN, ECONOMOU, SILK & DUNNE<br>150 S. Wacker Dr., Suite 1700<br>Chicago, IL 60606<br>*Counsel for Defendant Hartford Casualty Insurance Co.* | |

*/s/ Lawrence J. West*
Lawrence J. West