UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SWINERTON BUILDERS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:10-CV-1791 |
| | § | |
| ZURICH AMERICAN INSURANCE | § | |
| COMPANY, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

## I.     INTRODUCTION

Pending before the Court is the plaintiff's, Swinerton Builders ("Swinerton"), motion for partial summary judgment (Docket No. 148), the defendant's, Ace American Insurance Company ("Ace"), response (Docket No. 161), Swinerton's reply (Docket No. 169), and Ace's sur-reply (Docket No. 175).  Having carefully reviewed the parties' submissions, the record and the applicable law, the Court hereby DENIES Swinerton's motion for partial summary judgment.

## II.     FACTUAL BACKGROUND

This motion concerns an insurance coverage dispute between a general contractor and one of its subcontractors' insurance carriers.  In 2002, the University of Houston (the "University") contracted with the architectural firm Hellmuth, Obata + Kassabaum ("HOK") and with general contractor Swinerton Builders to design and construct a student services building ("the project").  Swinerton agreed to provide the University with pre-construction and construction phase services for the project.  Swinerton was required to, among other things,

monitor and coordinate the work of subcontractors and ensure that the work performed and materials used complied with the contract documents.

Swinerton, in turn, hired numerous subcontractors, including Electronic Technologies Corp. ("ETC"). ETC's scope of work involved the installation of the electronic security or monitoring system at the project. ETC was covered, from January 1, 2003 to January 1, 2006, by a commercial general insurance policy ("the policy") issued by ACE.[1] The policy provides, *inter alia*, that Ace will pay those sums that it becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. Pursuant to certain endorsements to the policy, an entity like Swinerton may be considered an "additional insured," thereby benefiting from ETC's coverage, but only with "respect to liability arising out of" ETC's work or operations. Another endorsement to the policy provides, among other things, that "you [the insured] agree with us that we shall not have any duty to defend any such 'suit', or to pay with respect to any claim or 'suit' any expenses, costs and interest . . . . " That endorsement further provides, "You [the insured] will pay" all "expenses, costs and interest incurred in connection with the investigation . . . settlement or defense of any claim or 'suit.'"

In 2006, the University sued Swinerton and HOK in state court in a suit styled *University of Houston System v. Swinerton Builders, A California Corporation and Hellmuth Obata + Kassabaum, L.P.* (the "underlying lawsuit"). The University alleged that there were "significant design and construction problems" that prevented the building from functioning as intended. The University specifically claimed that the "most significant problem" involves the "building envelope" in that the defendants improperly designed and constructed the integration of dissimilar building materials, causing significant and continuous water infiltration into the

---

[1] The policy was issued to the Ingersoll-Rand Company and all subsidiaries. The parties agree that ETC, as a subsidiary of the Ingersoll-Rand Company, is a named insured under the policy.

building, which has damaged other parts of the building. The University also noted the following problems: (1) improper drainage at the sidewalks, causing flooding; (2) some of the door frames are inadequate to support the weight of the doors, causing many of them to not function properly; (3) the concrete slab that supports the emergency generator is shifting and settling because Swinerton failed to properly compact the soil under the slab; (4) the elevators were improperly installed; and (5) there were several installation issues with the roof, including improper patching and lapping of the roofing membrane and inadequate drainage that has led to ponding on the roof. The University also mentioned, without elaborating, that the security system did not work properly.[2]

In May of 2010, while the underlying lawsuit was pending, Swinerton filed a lawsuit against the various insurers of its subcontractors, including Ace, seeking a declaration that it was entitled to defense and indemnity from the underlying suit. In an Order from December 10, 2010, this Court stayed the case pending resolution of the underlying lawsuit. In April of 2011, the underlying lawsuit settled. Thereafter, on October 25, 2011, this Court lifted the stay in this case. Swinerton has since settled with all defendants, except Ace.

## III.     CONTENTIONS OF THE PARTIES

### A.     Swinerton's Contentions

Swinerton claims that Ace, as the insurance carrier for ETC, one of Swinerton's subcontractors, had a duty to defend Swinerton in the underlying lawsuit because: (1) Swinerton is an "additional insured" under ETC's policy; (2) the plaintiff in the underlying lawsuit sued

---

[2] The allegations in the underlying lawsuit are contained in the original, First Amended, Second Amended , Third Amended, and Fourth Amended Petitions. It appears that the University did not repeat its allegations regarding the alarm system in the Fourth Amended (and final) Petition.

Swinerton for "property damage" arising out of ETC's work for Swinerton; and (3) the property damage occurred during the policy periods.

**B.    Ace's Contentions**

Ace claims that an endorsement to the policy expressly states that it has no defense obligations.  Ace also alleges that Swinerton cannot be considered an additional insured under the policy because the claims against Swinerton in the underlying lawsuit did not arise out of ETC's operations or work.

## IV.    SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56 (c).  "The [movant] bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact."  *Lynch Props., Inc. v. Potomac Ins. Co*., 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex v. Catrett*, 477 U.S. 317, 322–25 (1986).  Once the movant carries this initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate.  *See Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).  The nonmovant must go beyond the pleadings and designate specific facts proving that a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  The nonmovant may not rest on conclusory allegations or denials in its pleadings that are unsupported by specific facts.  FED. R. CIV. P. 56(e).  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 248 (1986).

In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch*, 140 F.3d at 625. "A dispute regarding a material fact is 'genuine' if the evidence would permit a reasonable jury to return a verdict in favor of the nonmoving party." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Thus, "[t]he appropriate inquiry is 'whether the evidence represents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson*, 477 U.S. at 251–52).

## V.     ANALYSIS AND DISCUSSION

Swinerton argues that it is entitled to a duty to defend under the policy because the plaintiff in the underlying lawsuit sued Swinerton for property damage arising out of ETC's work for Swinerton. Ace, on the other hand, claims that the policy expressly states that it has no duty to defend and the underlying lawsuit did not involve property damage arising out of ETC's operations. This Court finds that Ace had no duty to defend Swinerton.

### A.     General Principles Regarding The Interpretation of Insurance Policies

Under Texas Law, which governs this suit, insurance policies are construed in accordance with the same general rules that govern the interpretation of contracts, and must be interpreted to effectuate the intent of the parties at the time the contracts were formed. *See Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003); *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). Therefore, terms within an insurance contract are to be given "their plain, ordinary, and generally accepted meaning unless

the contract itself shows that particular definitions are used to replace that meaning." *Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 208-09 (Tex.App.-Houston [1ˢᵗ Dist.] 2003, pet. denied).

The insured bears the initial burden of demonstrating that there is coverage under an insurance policy, while the insurer bears the burden of proving the applicability of any exclusion. *See Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998) (citations omitted)

Moreover, pursuant to the "eight corners" rule, an insurer's duty to defend "is determined solely by the allegations" in the pleadings of the underlying lawsuit and the language of the insurance policy, without resorting to extrinsic evidence. *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). In reviewing the underlying pleadings, the court should focus on the factual allegations that show the origin of the damages rather than on the legal theories advanced. *See Willbros RIP, Inc. v. Continental Cas.Co.*, 601 F.3d 306, 309 (5th Cir. 2010); *Farmers Texas County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). Although courts normally construe the pleadings against the insurer and resolve any doubt in favor of coverage, "not every doubt requires resolution of the duty to defend in favor of the insured. *D.R.Horton-Texas, Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 773, 778 (Tex.App.-Houston [14th Dist.] 2006), *aff'd in part and rev'd in part on other grounds*, 300 S.W.3d 740 (Tex. 2009). Indeed, courts will "not read facts into the petition" and will not look outside of the petition, or "imagine factual scenarios which might trigger coverage." *D.R. Horton*, 300 S.W.3d at 778.

**B.     Ace Had No Duty to Defend Swinerton in the Underlying Lawsuit**

The policy provides, *inter alia*, that Ace will pay those sums that it becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. The policy defines property damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property . . . . " or "[l]oss of use of tangible property

that is not physically injured . . . . "  Pursuant to certain endorsements to the policy, Swinerton

may be considered an "additional insured," thereby benefiting from ETC's coverage, but only

with "respect to liability arising out of" ETC's work or operations.[3]  Therefore, for Ace to have a

duty to defend, Swinerton must establish that the underlying lawsuit alleged property damage

arising out of ETC's operations, *i.e.*, the installation of the alarm system.

The Court is of the opinion that the allegations regarding property damage in the

underlying lawsuit did not arise out of ETC's operations.  As Swinerton acknowledges, ETC's

scope of work involved the installation of the electronic security or monitoring system.  In the

underlying lawsuit, however, the University alleged that there were "significant design and

construction problems" that prevented the building from functioning as intended.  The University

noted that the "most significant problem" involved the "building envelope" in that the defendants

improperly designed and constructed the integration of dissimilar building materials, causing

significant and continuous water infiltration into the building, which has damaged other parts of

the building.  The University also complained of several other problems with the design and

construction of the building, including improper drainage, improper support for certain doors,

improper installation of the elevators, and several installation issues with the roof.  Although in

the underlying lawsuit the University mentioned that the alarm/security system did not work

---

[3]Endorsement No. 16 to the policy provides in part:

> WHO IS AN INSURED (Section II) is amended to include the person or
> organization shown in the Schedule as an insured but only with respect to
> liability arising out of your operations or premises owned by or rented by you.

Similarly, Endorsement No. 51 provides that:

> WHO IS AN INSURED (Section II) is amended to include as an additional
> insured the person or organization shown in the schedule, but: (1) subject to the
> conditions therefore; and (2) only with respect to liability arising out of the
> Named Insured's operations or premises owned by or rented by the Named
> Insured.

properly, it did not elaborate, and, as such, there is no indication from the University's allegations regarding how or why the alarm system malfunctioned.

Moreover, and more importantly, there are no allegations indicating how the alarm system could have caused any of the property damage alleged in the underlying lawsuit. Nevertheless, Swinerton alleges that the installation of the security system could have "potentially" caused some of the property damage, including the water filtration problems, water intrusion, and the building's leak problems. However, mindful that the allegations in the underlying lawsuit are to be liberally construed, the Court is of the opinion that Swinerton's allegations that ETC's work could have "potentially" caused the property damage are based on mere speculations.[4] *D.R. Horton*, 300 S.W.3d at 778 (although facts alleged in the underlying petition are liberally construed, courts will "not read facts into the petition" and will not look outside of the petition, or "imagine factual scenarios which might trigger coverage"); *Indian Harbor Ins. Co. v. KB Lone Star, Inc*., No. H-11-CV-1846, 2012 WL 3866858, at *26 (S.D.Tex. Sept. 5, 2012) (merely "a conclusory statement that there was property damage" that was "caused" by the subcontractor's work "will not support a claim for coverage of an Additional Insured").[5]

---

[4]Although not necessary for the resolution of this case, the Court notes that while the University briefly mentioned the allegations regarding the alarm system in its original, First, Second, and Third Amended Petitions, it omits such allegations in the Fourth Amended (and final) Petition. Since, under Texas law, the Fourth Amended Petition supersedes and supplants the earlier ones, the fact that the University omits any allegations regarding the alarm system may be deemed an abandonment of those claims. *See Radelow-Gittens Real Prop. Manag. v. Pamex Foods*, 735 S.W.2d 558, 559-560 (Tex.App.-Dallas 1987, writ ref'd, n.r.e.) (an "amended pleading supercedes and supplants all previous pleadings; therefore, if a party fails to raise certain claims in an amended pleading, those claims are considered abandoned); *see also Randolph v. Walker*, 29 S.W.3d 271, 274-275 (Tex.App.-Houston [14th Dist.] 2000, pet. denied); *Lutich v. Puett*, 694 S.W.2d 452, 453 (Tex.App.-Eastland 1985, no writ). At the very least, the fact that the University made no complaint regarding the alarm system in its Fourth Amended Petition is an acknowledgment, as well as further indication, that the property damage complained of did not arise out of ETC's work and certainly was not caused by the installation of the alarm system.

[5]The Court finds unavailing Swinerton's additional claim that there is coverage because ETC's business involves "Heavy Manufacturing" and the University's allegations fall under the scope of Heavy Manufacturing.

In any event, even assuming that the property damage alleged in the underlying lawsuit arose out of ETC's operations, the Court is still of the opinion that Ace had no duty to defend because the Deductible Endorsement to the policy expressly states that Ace has no defense obligations:

> We agree with you that:
>
> 1. Our obligation to pay damages under this Policy applies only to sums for which an insured becomes legally obligated to pay as damages in excess of the Deductible Per Occurrence shown below:
>
>> Deductible Per Occurrence of $5, 000, 000 in damages under all coverages provided by this Policy arising out of one "occurrence".
>
> 2. You have entered into an agreement with a claims services organization, ESIS, Inc. (the "Claim Services Organization"), whereunder the Claim Services Organization shall provide investigation, administration, adjustment and settlement services, and shall provide for the defense of claims or "suits." **Accordingly, you agree with Us that We shall not have any duty to defend any such "suit"**, or to pay with respect to any claim or "suit" any expenses, costs and interest provided for under Section 1 - Coverages, Supplementary Payments - Coverages A and B of this Policy, or any other expenses, costs or interest incurred in connection with the defense of any "suit." You will not have to pay the salaries of Our employees who are involved in the investigation, administration, adjustment and settlement of claims, or the defense of such "suits" or any of Our general operating expenses.
>
> 3. **You** will pay:
>
>> (a)  all sums for which an insured becomes legally obligated to pay within the Deductible and
>>
>> (b) **all expenses**, costs and interest incurred in **connection with the** investigation, administration, adjustment, settlement or **defense of any claim or "suit"** (emphases added).

Therefore, based on the plain language of the above-mentioned endorsement, the Court finds that Ace had no duty to defend Swinerton in the underlying lawsuit, even if Swinerton were to be considered an additional insured under ETC's policy.[6]

**VI.    Conclusion**

Based on the foregoing discussion, the Court finds that Ace had no duty to defend Swinerton in the underlying lawsuit.[7] Accordingly, the Court DENIES Swinerton's motion for partial summary judgment.

It is so **ORDERED**.

SIGNED on this 28th day of February, 2013.

_____
Kenneth M. Hoyt
United States District Judge

---

[6]As Ace notes, although Swinerton has filed a reply brief, it glaringly fails to address the Deductible Endorsement, which specifically states that Ace has no duty to defend.  Therefore, Ace's argument that, under the Endorsement, it has no duty to defend remains unchallenged and undisputed.

[7]Since the Court finds that Ace had no duty to defend Swinerton based on the two alternative grounds discussed in this Opinion, it need not address Ace's other arguments that Swinerton's claim, in its current posture, is not justiciable, exclusions k and l in the policy preclude coverage for the cost of repairing or replacing ETC's work or product itself, and Swinerton incorrectly claims that it made a defense and indemnity demand on Ace shortly after the University filed suit in 2006.